*AUDILETT LAW PC*
335 NORTH WILMOT RD SUITE 500
TUCSON, ARIZONA 85711-2636
(520) 748-2440
Email: daa@audilettlaw.com

Daryl A. Audilett, Esq.
State Bar No. 009007; PCC No. 2036
Attorney for Defendants Nanos, Caudillo, Moseley and Pima County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Anna Christine Lewis and Bradley Lewis, as Personal Representatives of The Estate of Bradley Alexander Lewis, Anna Christine Lewis, Bradley Lewis, Helen Stricklen, Ralph Rust Stricklen, Jerlene Jones, and George Preston Lewis,

Plaintiffs,

vs.

Chris Nanos, individually and in his official capacity as Sheriff of Pima County, Arizona; Pima County Sheriff Deputy Gilbert Caudillo, Individually and in his official capacity as an employee of the County of Pima, Arizona, and his official capacity as Sheriff Deputy of the Pima County Sheriff's Department; and Pima County Sheriff Deputy Michael Moseley, Individually and in his official capacity as an employee of the County of Pima, Arizona, and his official capacity as Sheriff Deputy of the Pima County Sheriff's Office; and Pima County,

Defendants.

NO. CV 21-00557-TUC-RM

RULE 16 JOINT REPORT

(The Honorable Rosemary Marquez)

Pursuant to the Court's Order of January 11, 2023 (Doc. 24), the parties submit the following joint report to the Court:

**1. The nature of the case, setting forth in brief statements the factual and legal bases for Plaintiffs' claims and Defendants' defenses, and the relief sought;**

**Plaintiffs:** On January 20, 2021, Sheriff Deputy Gilbert Caudillo shot and killed Mr. Bradley Alexander Lewis by expelling deadly force at the scene of his grandparent's home, Mr. and Mrs. Ralph and Helen Sticklen. The Pima County Sheriff's Department overzealously attempted to contact Bradley Alexander Lewis to question him when the operation escalated from an investigatory contact to a deadly confrontation. While Defendant Moseley was in charge of the operation, both Caudillo and Moseley created the circumstances that lead to the death of Mr. Bradley Alexander Lewis for failing to utilize less than deadly force before resorting to the most lethal force possible against Mr. Bradley Alexander Lewis. Additionally, what should have solely been an investigatory contact by the sheriff's department, considering there was no arrest or search warrant issued against Mr. Bradley Alexander Lewis, resulted in further escalation when Sergeant Moseley requested ballistic shields be brought to the location and spikes to be set up in case the vehicle were to flee from the area. At the time these items were requested, the sheriff department had not confirmed Mr. Bradley Alexander Lewis was armed or that he posed any threat to the community, or the safety of the officers involved. In fact, Deputy Caudillo fired at Mr. Bradley Alexander Lewis when his hand was already raised as he attempted to squeeze sideways between the two vehicles, because the gap was too narrow to coordinate without one hand already being

raised where the officers could visibly see it. Though Mr. Bradley Alexander Lewis appeared to be of no threat considering he was unarmed and already exited the vehicle with his hands visible, Gilbert Caudillo immediately jumped out of his vehicle and opened fire by firing three shots and shot Mr. Bradley Alexander Lewis, not once, but twice. Furthermore, Gilbert Caudillo claims that Mr. Bradley Lewis exited his vehicle with a “black mass” in his hand as he ran full speed towards Caudillo. However, given his close proximity, approximately 8-12 inches, to the other truck on the driver’s side, it is implausible that Mr. Bradley Alexander Lewis could have been in full sprint towards Caudillo. It is further implausible that Caudillo would have been able to exit his squad car and draw and raise his weapon to fire at Mr. Bradley Alexander Lewis before reaching Gilbert Caudillo who stood only 5-8 feet away. Considering Gilbert Caudillo was only a few feet away from Mr. Bradley Alexander Lewis and his hands were visible and well lighted from the headlights of the patrol vehicles surrounding him throughout the entire altercation, we find it implausible that a key fob—or “black mass”— would have been perceived as a weapon given its size, shape, and color. Considering Deputy Gilbert Caudillo never expressed that he felt his life was threatened or that he feared for his life during an interview with Detective Siress or Jason Davila five days after the incident, as the attorney for the Plaintiffs, we strongly question why less lethal force, such as OC spray, tasers, a baton, or any other weapon was not utilized before discharging a deadly weapon. Furthermore, during Michael Moseley’s interview conducted on January 20, 2021 by Detective Siress and Rodriguez, Michael Moseley claimed that he did not shoot Mr. Bradley Alexander Lewis because he did not perceive him, or the black object in Mr. Bradley

Alexander Lewis' hands, as a threat. In fact, it is reasonable to conclude that Michael Moseley did not fire his weapon because Mr. Bradley Alexander Lewis did not pose a lethal threat and there was not sufficient justification to utilize deadly force. Mr. Bradley Alexander Lewis never displayed that he possessed a weapon, in neither interview with both officers did either state that they perceived the black object in his hand as a weapon. In neither interview did either officer describe Mr. Bradley Alexander Lewis' behavior as threatening, and neither officer discharged their weapon when they claimed Mr. Bradley Alexander Lewis rammed his vehicle into the squad car. In fact, it is reasonable to assume that the level of threat was extinguished the second Mr. Bradley Alexander Lewis vacated his vehicle because intentional ramming could no longer be evaluated as a threat. Yet, this is when Deputy Gilbert Caudillo chose to expel deadly force against Mr. Bradley Alexander Lewis. While it is alleged that Mr. Bradley Alexander Lewis rammed his vehicle into a patrol vehicle, if this is true, the crime ended the second Mr. Bradley Alexander Lewis exited his vehicle. Additionally, there was no indication that he had intentions of returning to his vehicle, which further provides evidence that Mr. Bradley Alexander Lewis did not pose a lethal threat at the time he was shot. To reiterate, during both interviews, neither Gilbert Caudillo nor Michael Moseley described aggressive or threatening behavior exhibited by Alex, nor was it indicated that he reached for a weapon. Mr. Bradley Alexander Lewis posed no imminent threat of deadly force, yet when Gilbert Caudillo shot Alex, he created the deadly circumstances. Furthermore, after Mr. Bradley Alexander Lewis was shot, both Deputy Caudillo and Moseley failed to immediately render medical aid and allowed Alex to bleed

out. Based on the circumstances and evidence, it is evident that neither Deputy Caudillo nor Deputy Moseley were properly trained, especially considering such aid would have prevented Mr. Bradley Alexander Lewis from bleeding out and dying. Additionally, Plaintiffs allege Pima County is complicit to the death of Mr. Bradley Alexander Lewis for not property training their officers to perform medical aid in a timely and reasonable manner, and for not strictly enforcing or requiring that body worn cameras and patrol vehicle dashboard cameras as necessary, because it ultimately encourages deputies to be less vigilant of their duties. This case challenges the Defendants' unreasonable seizure and the excessive and unconstitutional use of force that resulted in what has been ruled a homicide by the Pima County Medical Examiner's Office.

The independent Report of Autopsy performed by Dr. Michael Iliescu, M.D., dated January 28, 2021, states that the trajectory of the fatal shot corroborates that Mr. Bradley Alexander Lewis was turned sideways and that his arm was raised when he was shot. Defendant Pima County Sheriff Chris Nanos, Defendant Pima County Sheriff Deputy Gilbert Caudillo, and Defendant Pima County Sheriff Deputy Michael Moseley are being sued in an individual and official capacity for violating Bradley Alexander Lewis' constitutional rights by using excessive force, which ultimately provoked Alex's wrongful death. Lastly, Defendant Pima County, who employs the three Defendants listed above, is also being listed in the suit for failing to properly train, equip, and/or monitor the sheriff's department and other administrative agencies.

"Apprehension by deadly force is a seizure subject to the Fourth Amendment's

reasonableness requirement." Wilkinson v. Torres, 610 F.3d 546, 550 (2010) (citing Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Such reasonableness is determined by an assessment of the totality of the circumstances. Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

Therefore, the "determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." Headwaters Forest Def. v. County of Humboldt, 240 F.3d 1185, 1205-06 (9th Cir. 1997). The reasonableness of force is "ordinarily a question of fact for a jury." Liston v. County of Riverside, 120 F.3d 965,976 n.10 (9th Circ. 1997). "Whether a particular use of force was reasonable is rarely determinable as a matter of law". Chew v. Gates, 27 F.3d 1432, 1443 (9th Cir. 1994).

Plaintiffs seek civil liability and responsibility against Defendant. Unfortunately, due to the homicide of Plaintiffs' family member, the only remedy available now is monetary.

**Defendants:**

**Facts**: On January 20, 2021, at 0321 hours, deputies from Pima County Sheriff's Department Foothills Patrol District responded to a report of vehicle break-ins in progress in the area of 2000 W. Morning Jewel Place in Tucson. A single adult male was seen driving a truck around with no lights, exiting the truck and trying to open vehicle doors. Deputies suspected Bradley Lewis based on this activity and the vehicle description.

At approximately 0613 hours, Sgt. Moseley, coming on shift and familiar with Bradley Lewis and some of the investigations surrounding Lewis, drove to N. Paseo De Angel where

Lewis's grandparents lived. As Sgt. Moseley turned south on Paseo De Angel, he saw Bradley Lewis's truck parked on the side of the road.

Sgt. Moseley had prior knowledge of Lewis and his alleged use of violence. Sgt. Moseley's prior knowledge included a Probable Cause Alert for Assault with a Deadly Weapon, Lewis's suspected involvement with narcotics trafficking, Lewis's possession and use of a firearm. Sgt. Moseley requested additional units.

When the additional units arrived, deputies were briefed on a plan to approach Lewis's truck. Air support was requested. Road spikes were readied for deployment. Ballistic shields were brought to the scene.

Sgt. Moseley and Deputy Caudillo (SWAT member) formulated a plan to approach and contain the truck, not knowing at that time whether Lewis was in the truck. Deputy Caudillo drove his patrol vehicle past the parked truck, then U-turned to approach it at a slightly angled head-on direction, placing his patrol vehicle offset to the truck passenger side front bumper.

Deputy Caudillo was able to see Lewis hunched down behind the steering wheel and Caudillo alerted the other deputies on scene. Lewis backed up his truck and then aggressively drove forward around Caudillo's patrol vehicle, running over heavy desert vegetation. Lewis headed west on Paseo De Angel at a high rate of speed, towards his grandparents' home at 6671 N. Paseo De Angel.

Lewis drove his truck up the driveway of 6671 N. Paseo De Angel with Sgt. Moseley in pursuit. Lewis initially stopped his truck, then put it in reverse and rammed Sgt. Moseley's

patrol vehicle at least twice. Lewis then drove forward to the top of the driveway and stopped between the house and a parked pickup truck.

Deputy Caudillo drove around Sgt. Moseley's vehicle and stopped behind Lewis's truck to pin it in. Sgt. Moseley exited his vehicle and moved up along the driver's side of the other pickup truck, using that truck for cover. Sgt. Moseley saw Lewis exit his truck with something black in his right hand and run rapidly straight towards Deputy Caudillo.

Deputy Caudillo, still seated in his patrol vehicle, saw Lewis rushing toward him with the black object in Lewis's right hand, which Caudillo perceived to be a gun. Deputy Caudillo quickly exited his patrol vehicle and fired three rounds, striking Lewis twice in his upper body. Deputy Gilbert called out a code 998, officer-involved shooting, at 0644 hours. Deputies began lifesaving measures and immediately called for medical units. Lewis was transported to Banner UMC where he was pronounced deceased at 0724 hours.

**Legal Defenses:** Defendants contend that the Sheriff Department's response to the 911 calls which led to seeking and finding Lewis were objectively reasonable and appropriate, that there was probable cause to arrest Lewis and to pursue Lewis to the point wherein Lewis presented a deadly threat to Deputy Caudillo, who shot and killed Lewis. The tactical decisions made, including the decision to shoot Lewis were "discretionary" versus "purely ministerial" and entitle Defendants to "qualified immunity", "good faith immunity" on the state law claims, raising the legal standard from "simple negligence" to "gross negligence". The conduct of those defendants complied with Arizona statutes governing law enforcement use of force, including use of deadly force. On the federal claims, the conduct

of Defendants Nanos, Mosely, and Caudillo was objectively reasonable. Further, those individually named defendants are entitled to "qualified immunity" inasmuch as there was no constitutional violation, and there was no clearly established law defining their conduct as unconstitutional at the time of the events in question.

On the 4th Amendment claim, the conduct of Defendants was "objectively reasonable" and protected by qualified immunity. On the 14th Amendment claim, the conduct of the Defendants did not "shock the conscience", did not evidence "deliberate indifference", and did not evidence a "purpose to harm".

Defendants had no duty to retreat from the circumstances and events created by the conduct of Decedent Lewis.

On the state law claims, Decedent Lewis has total fault and/or comparative fault/contributory negligence inasmuch as he caused or contributed to his own injuries and demise through his own negligent conduct, grossly negligent conduct, intentional conduct, and willful and wanton conduct. By virtue of his conduct, Decedent Lewis assumed the risk of his injuries and demise. Decedent Lewis was under the influence of Cannabinoids, Delta-9-THC, THC-COOH. Decedent Lewis's conduct is imputed to Plaintiffs herein.

**2. A list of the elements of proof necessary for each count of the complaint and each affirmative defense. Where the burden of proof shifts, each party shall list the elements of proof that party must prove in order to prevail. The list of the elements of proof must contain citations to relevant legal authority (i.e., United States statutory and/or administrative law, United States Supreme court case law, Ninth Circuit Court**

**of Appeals case law, State of Arizona case law and statutory law, or other authority as dictated by the conflicts of law rules);**

**Plaintiffs:**

**<u>COUNT I: 4th Amendment Excessive Force</u>**: Plaintiffs Anna and Bradley Lewis as personal representatives of the Estate of Bradley Alexander Lewis must prove that the use of deadly force on Decedent Bradley Alexander Lewis by Defendant Gilbert Caudillo was not objectively reasonable under the totality of the circumstances. 42 U.S.C. § 1983; U.S. Constitution 4th Amendment; *Graham v. Connor*, 490 U.S. 386 (1989).

For a *Monell* claim against Pima County and Sheriff Nanos in his official capacity, Plaintiffs Anna and Bradley Lewis must prove the existence of a policy, custom, or practice that demonstrates deliberate indifference to the constitutional rights of citizens and that was a moving force in causing a violation of Decedent Lewis's 4th Amendment constitutional right to be free from excessive force. 42 U.S.C. § 1983; U.S. Constitution 4th Amendment; *Monell v. Dept. of Soc. Servs*., 436 U.S. 658 (1978).

**<u>COUNT II: 14th Amendment Violation of Substantive Due Process</u>**. Plaintiffs Anna and Bradley Lewis as surviving parents of Decedent Bradley Alexander Lewis must prove that the conduct of the Defendants that resulted in the death of Decedent Bradley Alexander Lewis "shocks the conscience" and evidences "deliberate indifference" and/or "purpose to harm". 42 U.S.C. § 1983; U.S. Constitution 14th Amendment; *Wilkinson v. Torres*, 610 F.3d 546 (9th Cir., 2010).

For a *Monell* claim against Pima County and Sheriff Nanos in his official capacity, Plaintiffs Anna and Bradley Lewis must prove the existence of a policy, custom, or practice that demonstrates deliberate indifference to the constitutional rights of citizens and that was a moving force in causing a violation of Anna Lewis's and Bradley Lewis's 14th Amendment constitutional right to not be deprived of their familial association with their son Bradley Alexander Lewis. 42 U.S.C. §1983; U.S. Constitution 14th Amendment; *Monell v. Dept. of Soc. Servs*., 436 U.S. 658 (1978).

**COUNT III: Wrongful Death**. Plaintiffs Anna and Bradley Lewis as surviving parents of Decedent Bradley Alexander Lewis must prove that Defendants' conduct related to the attempt to capture and arrest and including the shooting of Decedent Lewis by Gilberto Caudillo was wrongful inasmuch as that conduct was negligent and/or grossly negligent and/or intentionally wrongful and/or objectively unreasonable. (ARS §§ 12-611, 612.)

**COUNT IV: Loss of Consortium**. Plaintiffs Anna and Bradley Lewis as surviving parents of Decedent Bradley Alexander Lewis must prove that Defendants have liability through one or more of the legal theories set forth in Counts I through III for the death of Decedent Lewis and prove that said liability entitles them to damages for the loss of companionship/association of Decedent Lewis. *Pierce v. Casas Adobes Baptist Church*, 62 Ariz. 269, 272 (1989).

**COUNT V: Damage to Property**. Plaintiffs Ralph Stricklen and Helen Stricklen must prove that Defendants negligently, and/or grossly negligently, and/or objectively unreasonably, and/or intentionally, and without legal excuse, damaged their 2019 Ford F-150

pick-up truck. Plaintiffs Stricklen must also prove the value of the damage to their property and/or the cost of repair.

**Defendants:**

**Re: Defenses/Affirmative Defenses**

1. Qualified Immunity for State Law Claims: Defendants must prove that the tactical decisions made by Defendants Moseley and/or Caudillo were "discretionary" and not "purely ministerial" in order to advance the standard of proof from "simple negligence" to "gross negligence". *Spooner v. City of Phoenix*, 246 Ariz. 119 (2019); *Chamberlain v. Mathis*, 151 Ariz. 551 (1986); *Portnova v. Wilkinson*, 128 Ariz. 501 (1981).

2. Qualified Immunity for Federal Law Claims: Defendants Nanos, Moseley, and Caudillo in their individual capacity have qualified immunity. Qualified immunity protects all but the most incompetent officers or those who knowingly violate the law. Qualified immunity applies if their conduct did not violate a constitutional right of Plaintiffs or of Plaintiffs' decedent, and/or it was not clearly established at the time of the subject event that their conduct constituted a constitutional violation. Defendants contend that raising the qualified immunity defense shifts the burden of proof to Plaintiffs of disproving qualified immunity and to do that Plaintiffs must prove that at the time of Defendants' conduct, (1) that Defendants' conduct violated a constitutional right and (2) that the constitutional right in question was clearly established at the time of Defendants' alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223 (2009); *Romero v. Kitsap Cty*, 931 F.2d 624, 627 (9th Cir., 1991); *see*

*also Shafer v. Cty of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir., 2017; *see discussion in Wesbrock v. Ledford*, 464 F.Supp.3d 1094 (D. Arizona, 2020).

3. Punitive claims against defendants are precluded on the State Law claims by ARS §12-820.04.

4. Punitive damages against Defendants Pima County and Sheriff Chris Nanos in his official capacity are precluded on the Federal Law claims. *Mitchell v. Dupnik*, 75 F.3d 517 (9th Cir., 1996); *Megargee v. Wittman*, 550 F.Supp.2d (E.D. Calif., 2008); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

5. Justification for law enforcement use of force and use of deadly force: On the State Law claims, ARS §§ 409, 410 provide the elements of justification for law enforcement use of force and use of deadly force.

6. On the State Law claims, ARS § 12-712(A) provides that the finder of fact may find in favor of the defendants if Decedent Lewis was attempting to commit or committing or immediately fleeing from a felony criminal act and was at least fifty percent responsible for the events that caused his death. Decedent Lewis's conduct is imputed to Plaintiffs.

7. On the State Law claims, ARS § 12-716 provides that if a plaintiff (in this case decedent Lewis) is harmed while attempting to commit, committing or fleeing after having committed or having attempted to commit a felony criminal act, then the peace officer is presumed to be acting reasonably in threatening or using physical force, including deadly physical force to protect himself or others or to effect an arrest or prevent or assist in preventing a plaintiff's (in this case decedent Lewis's) escape. Further, under these

circumstances, pursuant to this statute, the law enforcement department (Sheriff Nanos and Sheriff's Department) is presumed to have reasonably hired and trained its peace officers to use physical force or deadly physical force. If the court grants a motion to dismiss or motion for summary judgment pursuant to this statute, the court shall award the moving party (Defendants in this case) costs and attorney fees.

8. ARS § 12-820.02(A)(11) provides that "gross negligence" is the standard of proof for an injury allegedly caused by a peace officer in rendering emergency care at the scene of an emergency. To the extent that Plaintiffs allege that Defendants rendered inadequate emergency care at the scene, Plaintiffs must prove that Defendants were grossly negligent.

9. On the State Law claims involving the defenses of Decedent Lewis's fault, i.e., comparative fault, contributory negligence, assumption of the risk, Defendants must prove that Decedent engaged in conduct constituting negligence, and/or gross negligence, and/or willful, wanton conduct, and/or intentional conduct that caused or contributed to his death. Decedent Lewis's conduct is imputed to Plaintiffs.

10. On the State Law claims, ARS § 12-711 provides that the finder of fact may find the defendants not liable if the defendants prove that the claimant, or the claimant's decedent was under the influence of an intoxicating liquor or a drug and as a result of that influence the decedent was at least fifty percent responsible for the event that caused the decedent harm. The Toxicology Report performed in conjunction with the autopsy on

Decedent Lewis revealed the presence in his blood of CANNABINOIDS, Delta-9-THC, THC-COOH.

**3. The factual and legal issues genuinely in dispute, and whether they can be narrowed by stipulation or motion;**

**Plaintiffs:** Plaintiffs do not believe that any factual and/or legal issues can be narrowed by stipulation.

Plaintiffs are confident they will establish that the Defendants' actions were not objectively reasonable pursuant to the Fourth Amendment as Bradley Alexander Lewis was unarmed at the time of the homicide. Graham v. Connor, 490 U.S. 386 (1989). Pursuant to the U.S. Constitution, Amendment 14, the homicide by law enforcement of an unarmed person shocks the conscience.

"Apprehension by deadly force is a seizure subject to the Fourth Amendment's reasonableness requirement." Wilkinson v. Torres, 610 F.3d 546, 550 (2010) (citing Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Such reasonableness is determined by an assessment of the totality of the circumstances. Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

Therefore, the "determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." Headwaters Forest Def. v. County of Humboldt, 240 F.3d 1185, 1205-06 (9th Cir. 1997). The reasonableness of force is "ordinarily a question of fact for a jury." Liston v. County of Riverside, 120 F.3d 965,976 n.10 (9th Circ. 1997). "Whether a particular use of force was

reasonable is rarely determinable as a matter of law". Chew v. Gates, 27 F.3d 1432, 1443 (9th Cir. 1994).

A.R.S. §§ 13-402, 403, 404, 406, 409, 410, 411, 412, 417, 421 are not applicable as Defendants used physical and deadly force against an unarmed citizen. Defendants' actions were unjustified.

Plaintiffs are entitled to the recovery of all costs expended or incurred in this matter pursuant to A.R.S. § 12-341.

**Defendants:** Defendants do not believe that any factual and/or legal issues can be narrowed by stipulation. Defendants filed a Rule 12 (b)(6) Motion to Dismiss Certain Parties and Certain Claims from Plaintiffs' Second Amended Complaint. The Court ruled that the claims of the four grandparent plaintiffs for damages for the death of their grandson Bradley Lewis are dismissed. The Court ruled that the two plaintiff parents Anna Lewis and Bradley Lewis have standing to pursue 14th Amendment claims for loss of familial relationship arising from the death of Lewis, and the two parent plaintiffs have standing to pursue an Arizona state law claim for wrongful death. The Court ruled that the two parents as personal representatives of the Estate of Bradley Alexander Lewis may pursue a claim for 4th Amendment excessive force on behalf of the Estate. The Court ruled that grandparents Stricklen, owners of a pickup truck that was struck by a bullet fired by Deputy Caudillo, may pursue a claim for property damage.

In terms of narrowing legal issues, Defendants intend to move for summary judgment on all post-Rule 12(b)(6) motion remaining claims in Plaintiffs' Second Amended Complaint.

Beyond that, Defendants do not believe any of the legal issues can be further narrowed.

Defendants' defenses include qualified immunity under federal and state law; contributory negligence, comparative fault and assumption of risk of decedent Lewis, all of which are imputed to Plaintiffs and the Estate of Bradley Lewis. Defendants contend that the conduct of the Defendants was "objectively reasonable" under *Graham v. Connor*, 490 U.S. 386 (1989). Defendants contend that there was "no duty to retreat" under *Reed v. Hoy*, 891 F.2d 1421, 1428 (9th Cir. 1989); See, *Tucker v. Las Vegas Metropolitan Police Dept*., 470 Fed. Appx. 627, **3, (9th Cir. 2012), Circuit Judge Tallman concurring opinion. Defendants contend that Plaintiffs are precluded from offering or arguing a "provocation theory". *County of Los Angeles v. Mendez*, 581 U.S. 420, 427 (2017).

Defendants contend that Plaintiffs cannot prove by a preponderance of evidence that the conduct of the Defendants "shocks the conscience" or is otherwise deliberately indifferent as required by the U.S. Constitution 14th Amendment standards.

Defendants contend that their actions were justified pursuant to ARS §§ 13-402, 403, 404, 405, 406, 409, 410, 411, 412, 417, 421. Defendants are entitled to invoke ARS § 12-711, allowing the jury to find in favor of Defendants if Lewis was under the influence of a drug or alcohol and at least 50 percent responsible for his injuries and death. The Autopsy Toxicology Report noted Cannabinoids, THC in Lewis's system. Defendants are entitled to invoke ARS § 12-712, allowing the jury to find in favor of Defendants because Lewis was attempting to commit or committing or immediately fleeing from a felony criminal act and was at least 50 percent responsible for the events that caused his injuries and death.

Defendants are entitled to the presumption that they acted reasonably, and that they were reasonably hired and trained, as provided in ARS § 12-716. Defendants are entitled to a "gross negligence" standard on the state law claims under ARS § 12-820.02(A)(11) regarding the provision of medical care to Lewis.

Pursuant to ARS § 13-420, Defendants are entitled to their attorney fees, costs, compensation for lost income and all expenses incurred by Defendants in the defense of this lawsuit.

**4. The jurisdictional basis of the case, citing specific jurisdictional statutes, and whether jurisdiction is disputed;**

This Court has jurisdiction over Plaintiffs' lawsuit under 28 U.S.C. § 1343(a)(3) and 28 U.S.C. § 1331, and supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367. Plaintiff's Complaint includes claims under 42 U.S.C. § 1983 for alleged violations of the United States Constitution 4th and 14th Amendments. Jurisdiction is not disputed.

**5. The parties, if any, that have not been served, as well as parties which have not filed an answer or other appearance. Unless counsel can otherwise show cause, the joint report shall be accompanied by a stipulation and a form of order dismissing any party which has not been served, or a motion seeking default on any non-appearing party;**

None. After the Ruling on Defendants' Rule 12(b)(6) motion, the caption does need to be amended. (Doc. 22)

**6. The names of parties not subject to the Court's jurisdiction;**

None.

**7. Whether there are dispositive or partially dispositive issues to be decided by pretrial motions, and the legal issues about which any pretrial motions are contemplated;**

Defendants will file motions for summary judgment on all claims. *See* response to No. 3 above.

**8. Whether the parties anticipate filing cross-motions for summary judgment and, if so, whether it is feasible to adopt an abbreviated briefing schedule consisting of: (1) a motion, (2) a response/cross-motion, (3) a response to cross-motion/reply and (4) a reply to cross-motion. If an abbreviated briefing schedule is feasible, the parties should propose page limitations and filing deadlines for each brief;**

**Plaintiffs:** Not applicable.

**Defendants:** Not applicable.

**9. Whether the case is suitable for reference to arbitration, to a special master or to a United States Magistrate Judge;**

The case is not suitable for arbitration or reference to a special master. The parties do not consent to a trial before a magistrate judge.

**10. The status of related cases pending before other judges of this court or before other courts, and whether it is appropriate for any matters to be consolidated pursuant to rule 42.1(a) of the Local Rules of Practice of the United Staes District Court for the District of Arizona ("LRCiv");**

None.

**11. Any proposed changes in the timing, form or requirements for Initial Disclosures under Fed. R. Civ. P. 26(a)(1), and any objection to Initial Disclosures;**

None known at this time.

**12. Suggested changes, if any, to the limitations on discovery imposed by the Federal Rules of Civil Procedure:**

None.

**13. The scope, nature, and location of discovery anticipated by the parties, including when discovery should be completed and whether discovery should be conducted in phases or should be limited to or focused upon particular issues;**

**Plaintiffs:** Plaintiffs anticipate requesting the depositions of all defendant parties, defense experts, if any, and other factual witnesses such as neighbors, who either saw the events of January 20, 2021 or have video or audio from their home surveillance camara(s).

Plaintiffs will engage in discovery regarding Defendants' work history, discipline history, employment history, employment individual personnel files, and the investigation of the homicide of Bradley Alexander Lewis, including: interviews, photographs, videos, and diagrams. Plaintiffs further anticipate discovery regarding the damage and repair of the patrol vehicle allegedly rammed by Bradley Alexander Lewis.

**Defendants:** Defendants anticipate taking the depositions of the plaintiffs, of witnesses listed by plaintiffs as damages witnesses, of plaintiffs' expert witnesses, of neighborhood witnesses that observed or retrieved home surveillance camera footage

showing Lewis trying to illegally enter parked vehicles and the movement of vehicles and personnel from the streets to the driveway where the shooting occurred.

Defendants will conduct discovery regarding decedent's history and criminal history.

Defendants anticipate that plaintiffs will take the depositions of deputy witnesses that observed the unfolding of events that led up to the shooting, and depositions of defense experts.

Defendants request a prompt and timely discovery schedule in order to file a dispositive motion as early as reasonably feasible.

**14. A discussion of any issues relating to disclosure or discovery of electronically stored information, including the form or forms in which it should be produced;**

The parties at this time do not anticipate issues relating to disclosure or discovery of electronically stored information.

**15. A discussion of any issues relating to claims of privilege or work product;**

The parties at this time do not anticipate issues relating to claims of privilege or work product.

**16. What evidentiary hearings, such as *Daubert* hearings, will be required and when such hearings shall be held;**

The parties at this time do not anticipate needing evidentiary hearings, such as *Dauber*t hearings.

**17. The estimated date that the case will be ready for trial, the estimated length**

**of trial, and any suggestions for shortening the trial;**

February 2024 or 30 days after rulings on dispositive motions. Estimated length of trial is eight days.

**18. Whether a jury trial has been requested, whether the request for jury trial is contested, and, if the request is contested, the reasons that a trial by jury is in dispute;**

A jury trial has been requested and is not contested.

**19. The prospects for settlement, including whether the parties wish to have a settlement conference before a Magistrate Judge and whether the parties seek the Court's assistance in facilitating settlement in any other way;**

**Plaintiffs:** Plaintiffs' counsel is amenable to engage in a settlement conference with a Magistrate Judge. Plaintiffs welcome the Court's assistance in facilitating settlement.

**Defendants:** Counsel for Defendants has no settlement authority at this time. It is too early to evaluate for settlement.

**20. In class actions, the proposed dates for class certification proceedings and other class management issues. Such certification will result in the case being reassigned to the complex track for case management purposes pursuant to LRCiv. 16.2.**

Not applicable.

**21. Any unusual, difficult, or complex problems affecting the conduct of the case or which would require the case to be placed on the complex track for case management purposes pursuant to LRCiv. 16.2;**

None known at this time.

**22. Any other matters which counsel feel will aid the Court in resolving this dispute in a just, expeditious, and efficient manner; and**

None known at this time.

**23. Proposed deadlines for:**

**a. Initial disclosures required by Fed. R. Civ. P. 26(a)(1) and pretrial disclosures under Fed. R. Civ. P. 26(a)(3);** February 17, 2023

**b. Addition of parties or amending pleadings;** April 14, 2023

**c. Disclosure of expert testimony pursuant to Fed. R. Civ. P. 26(a)(2):**

**(1) Plaintiffs' pretrial disclosure of witnesses and expert testimony pursuant to Rule 26(a)(2) and (3), FED.R.CIV.P.;** July 11, 2023

**(2) Defendants' pretrial disclosure of witnesses and expert testimony pursuant to Rule 26(a)(2) and (3), FED.R.CIV.P.;** August 15, 2023

**(3) Rebuttal expert disclosure:** September 12, 2023

**d. Discovery (if the parties believe that discovery will require more than 180 days, counsel must provide an explanation showing why, in the instant case, a lengthier period for discovery is necessary);** September 29, 2023

**e. Filing dispositive motions;** October 27, 2023

**f. Filing settlement status reports:** July 11, 2023 and every 30 days thereafter.

**g. Filing the Joint Proposed Pretrial Order;** November 15, 2023 or 30 days after the ruling on motions for summary judgment.

DATED this 3rd day of February, 2023.

CORONADO LAW FIRM PLLC

/s/ Eduardo H. Coronado, with permission

Eduardo H. Coronado
Attorneys for Plaintiffs

*AUDILETT LAW PC*

/s/ Daryl Audilett

Daryl A. Audilett
Attorney for Defendants Nanos, Caudillo, Moseley and Pima County

CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Eduardo H. Coronado, Esq.
CORONADO LAW FIRM, P.L.L.C.
4700 W. White Mountain Boulevard, Suite A
Lakeside, AZ 85929
**Attorney for Plaintiffs**

By /s/ Karen Audilett