*AUDILETT LAW PC*
335 NORTH WILMOT RD SUITE 500
TUCSON, ARIZONA 85711-2636
(520) 748-2440
Email: daa@audilettlaw.com

Daryl A. Audilett, Esq.
State Bar No. 009007; PCC No. 2036
Attorney for Defendants Nanos, Caudillo, Moseley and Pima County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anna Christine Lewis and Bradley Lewis, as Personal Representatives of The Estate of Bradley Alexander Lewis, Anna Christine Lewis, Bradley Lewis, Helen Stricklen, Ralph Rust Stricklen, Jerlene Jones, and George Preston Lewis,<br><br>Plaintiffs,<br><br>vs.<br><br>Chris Nanos, individually and in his official capacity as Sheriff of Pima County, Arizona; Pima County Sheriff Deputy Gilbert Caudillo, Individually and in his official capacity as an employee of the County of Pima, Arizona, and his official capacity as Sheriff Deputy of the Pima County Sheriff's Department; and Pima County Sheriff Deputy Michael Moseley, Individually and in his official capacity as an employee of the County of Pima, Arizona, and his official capacity as Sheriff Deputy of the Pima County Sheriff's Office; and Pima County,<br><br>Defendants. | NO. CV 21-00557-TUC-RM<br><br>AMENDED ANSWER OF DEFENDANTS NANOS, CAUDILLO, MOSELEY AND PIMA COUNTY TO SECOND AMENDED COMPLAINT<br><br>(The Honorable Rosemary Marquez)<br><br>Jury Trial Requested |

Defendants Nanos, Caudillo, Moseley and Pima County answer the Second Amended Complaint (Doc. 14) as follows:

## I. PRELIMINARY AND INTRODUCTORY STATEMENT

1. Defendants deny use of excessive force, unreasonable seizure, and/or violation of the U.S. Constitution. Defendants further deny claims of wrongful death, property damage and any tortious behavior recognizable as actionable under state or federal law. Defendants deny causing injury or damage that is actionable under state or federal law. Admit that Deputy Caudillo shot and killed Bradley Alexander Lewis, age 19, on January 20, 2021. The shooting was objectively reasonable and justified as a matter of law.

2. Defendants deny liability for all claims asserted under state law and/or federal law.

## II. JURISDICTION AND VENUE

3. Defendants admit that this Court has jurisdiction and that venue is proper.

4. Defendants admit that the subject shooting occurred in Pima County, Arizona on January 20, 2021. Defendants deny any fault, wrongdoing, tortious conduct, and/or violations of any appropriate and applicable standards and/or constitutional amendments or provisions.

## III. PARTIES

5. Without specific knowledge and information about the allegations contained herein and therefore deny the same.

6. Without specific knowledge and information about the allegations contained

herein and therefore deny the same.

7. Without specific knowledge and information about the allegations contained herein and therefore deny the same. And further state that a grandparent has no legally cognizable claim under state law or federal law arising from injury or death to a grandchild.

8. Without specific knowledge and information about the allegations contained herein and therefore deny the same. And further state that a grandparent has no legally cognizable claim under state law or federal law arising from injury or death to a grandchild.

9. Without specific knowledge and information about the allegations contained herein and therefore deny the same. And further state that a grandparent has no legally cognizable claim under state law or federal law arising from injury or death to a grandchild.

10. Without specific knowledge and information about the allegations contained herein and therefore deny the same. And further state that a grandparent has no legally cognizable claim under state law or federal law arising from injury or death to a grandchild.

11. Admit that Sheriff Nanos was at the time, and presently is, the duly elected Pima County Sheriff. Admit that Sheriff Nanos acts under color of state law when operating in the course and scope of his official duties. Affirmatively allege that the customs, practices, policies, and procedures conformed to professional standards and complied with state and federal law standards. Deny that Sheriff Nanos may be sued in his individual capacity in this lawsuit. Sheriff Nanos did not have personal involvement in the events leading up to and including the shooting of Lewis.

12. Admit that Deputy Caudillo was, at the time of the shooting, a law enforcement

officer certified by the Arizona Peace Officer Standards and Training Board (AZPOST), and that Deputy Caudillo served (and presently serves) as a Deputy Sheriff with the Pima County Sheriff's Department and at all relevant times was acting under color of state law and in the course and scope of his employment. Deputy Caudillo denies that he used excessive force against Lewis and further asserts that his conduct on that day was objectively reasonable and justified.

13. Admit that Sergeant Moseley was, at the time of the shooting, a law enforcement officer certified by Arizona Peace Officer Standards and Training Board (AZPOST), and that Sgt. Moseley served (and presently serves) as a Sergeant with the Pima County Sheriff's Department and at all relevant times was acting under color of state law and in the course and scope of his employment. Sgt. Moseley denies that he used excessive force against Lewis and further asserts that his conduct on that day was objectively reasonable and justified.

14. Pima County denies that it has operational control over the Pima County Sheriff's Department or that department's law enforcement staff. Pima County denies that it has respondeat (vicarious) liability for the conduct of the Sheriff or Sheriff's Department law enforcement staff. (See, *Fridena v. Maricopa County*, 504 P.2d 58 (Div. 1, 1972). Pima County denies that it failed to properly train, equip, and/or monitor Sheriff Nanos, Deputy Caudillo, and Sgt. Moseley.

## IV. <u>FACTUAL BACKGROUND APPLICABLE TO ALL CLAIMS</u>

15. Admit upon information and belief that Bradley Alexander Lewis was 19 years

old at the time that he was justifiably shot and killed by Deputy Caudillo on January 20, 2021.

16. Deny.

17. Deny.

18. Admit that Sgt. Moseley was the sergeant during the events leading up to and at the time of the shooting.

19. Deny that Sgt. Moseley created the circumstances that led to the death of Bradley Alexander Lewis. Bradley Alexander Lewis created the circumstances that led to his death. The decisions made and actions taken by Sgt. Moseley were sound, objectively reasonable, and appropriate under the circumstances.

20. Deny that Sgt. Moseley created the circumstances that led to the death of Bradley Alexander Lewis. Bradley Alexander Lewis created the circumstances that led to his death. The decisions made and actions taken by Sgt. Moseley were sound, objectively reasonable, and appropriate under the circumstances.

21. Deny that Sgt. Moseley created the circumstances that led to the death of Bradley Alexander Lewis. Bradley Alexander Lewis created the circumstances that led to his death. The decisions made and actions taken by Sgt. Moseley were sound, objectively reasonable, and appropriate under the circumstances.

22. Deny that Sgt. Moseley created the circumstances that led to the death of Bradley Alexander Lewis. Bradley Alexander Lewis created the circumstances that led to his death. The decisions made and actions taken by Sgt. Moseley were sound, objectively reasonable, and appropriate under the circumstances.

23. Deny. Commands by law enforcement were given to Lewis beginning from the time Lewis was initially parked on the side of the road. Bradley Alexander Lewis was aware of the efforts of the law enforcement officers to apprehend him and Bradley Alexander Lewis chose to attempt to evade those efforts and then chose to present a deadly threat to Deputy Caudillo, resulting in Deputy Caudillo shooting Lewis and in Lewis's death. The decisions and actions made by Deputy Caudillo were sound, objectively reasonable, and appropriate under the circumstances.

24. Deny that Deputy Caudillo created the circumstances that led to the death of Bradley Alexander Lewis, and affirmatively assert that Bradley Alexander Lewis created the circumstances that led to his death. The decisions and actions made by Deputy Caudillo were sound, objectively reasonable, and appropriate under the circumstances.

25. Deny that Deputy Caudillo created the circumstances that led to the death of Bradley Alexander Lewis, and affirmatively assert that Bradley Alexander Lewis created the circumstances that led to his death. The decisions and actions made by Deputy Caudillo were sound, objectively reasonable, and appropriate under the circumstances.

26. There was a probable cause alert for the arrest of Bradley Alexander Lewis for aggravated assault.

27. Deny. There was a probable cause alert for the arrest of Bradley Alexander Lewis for aggravated assault.

28. Deny allegations of overzealous actions by the law enforcement officers. Bradley Alexander Lewis was aware of the efforts of law enforcement to apprehend him, and

he fled in his truck to his nearby grandparents' house where he proceeded to purposely create and present a deadly threat to Deputy Caudillo.

29. Deny. Bradley Alexander Lewis was aware of the efforts of law enforcement to apprehend him, and he fled to his nearby grandparents' house where he proceeded to purposely create and present a deadly threat to Deputy Caudillo.

30. Deny to the extent that this description conflicts or contradicts the description of the scene by Deputy Caudillo. Bradley Alexander Lewis was aware of the efforts of law enforcement to apprehend him, and he fled to his nearby grandparents' house where he proceeded to purposely create and present a deadly threat to Deputy Caudillo. Moreover, Lewis ran at Deputy Caudillo, while looking directly at Deputy Caudillo, and while pointing a black object at Deputy Caudillo which Deputy Caudillo reasonably believed to be a gun.

31. Deny. Bradley Alexander Lewis, instead of complying with law enforcement efforts to apprehend him, fled from law enforcement, and when Lewis ultimately stopped his truck, instead of complying with being taken into custody, instead of further fleeing on foot away from law enforcement, Lewis ran towards Deputy Caudillo, looking directly at Deputy Caudillo, with a black object in Lewis's hand, which Deputy Caudillo reasonably believed to be a gun; Caudillo reasonably believed that his life was in danger.

32. Deny to the extent that this description conflicts with or contradicts the description of the scene by Deputy Caudillo. Bradley Alexander Lewis, instead of complying with law enforcement efforts to apprehend him, fled from law enforcement, and when Lewis stopped his truck, he backed his truck into Sgt. Moseley's patrol vehicle multiple times, then

pulled forward again and stopped, and instead of complying with being taken into custody, and instead of further fleeing on foot away from law enforcement, Lewis hurriedly exited his truck and, looking directly at Deputy Caudillo, ran fast towards Deputy Caudillo with a black object in Lewis's hand, placing Deputy Caudillo in fear for his life.

33. Deny. Bradley Alexander Lewis, instead of complying with law enforcement efforts to apprehend him, fled from law enforcement, and when Lewis stopped his truck, he backed his truck into Sgt. Moseley's patrol vehicle, pulled forward again and stopped; then instead of further fleeing on foot away from law enforcement, Lewis hurriedly exited his truck and, looking directly at Deputy Caudillo, ran fast towards Deputy Caudillo with a black object in Lewis's hand, placing Deputy Caudillo in fear for his life.

34. Deny. Sgt. Moseley's view of Lewis was momentary at best. Bradley Alexander Lewis, instead of complying with law enforcement efforts to apprehend him, fled from law enforcement, and when Lewis stopped his truck, he backed his truck into Deputy Moseley's patrol vehicle multiple times, then pulled forward again and stopped; then instead of complying, or further fleeing on foot away from law enforcement, Lewis hurriedly exited his truck, and while looking directly at Deputy Caudillo, ran fast towards Deputy Caudillo with a black object in his hand, placing Deputy Caudillo in fear for his life. At the time Lewis exited his vehicle and ran toward Caudillo, Sgt. Moseley had exited his own vehicle and was on the driver's side of Lewis's grandfather's parked pickup truck, using that truck for cover, between Moseley and Lewis in Lewis's vehicle. Sgt. Moseley only had a glimpse of part of Lewis's body as Lewis exited his vehicle and ran toward Caudillo.

35. Deny.

36. Deny. Lewis charged at Caudillo at full speed in attack fashion with a black object in his hand that Deputy Caudillo reasonably believed to be a gun.

37. Deny. The shooting of Lewis by Deputy Caudillo was objectively reasonable and justified under the circumstances.

38. Deny that there was time or opportunity to consider or to deploy less lethal means. Less lethal force was not appropriate at the time of the shooting or immediately before that.

39. Deny.

40. Deny.

41. Deny.

42. Deny.

43. Deny the suggestion or implication that Lewis did not pose a deadly threat to anyone. On page 21 of his interview, Sgt. Moseley stated that he maintained cover, thinking that Lewis was going to come out of the truck shooting. Upon exiting the truck, Lewis immediately turned his body to where he was running down the driver's side of his vehicle towards the rear bumper of the truck, and then disappeared from Sgt. Moseley's view.

44. Deny.

45. Deny.

46. Admit that Deputy Caudillo gave a recorded statement to detectives on January 25, 2021, which was transcribed and made available to counsel for the plaintiffs.

47. Admit that Deputy Caudillo gave a recorded statement to detectives on January 25, 2021, which was transcribed and made available to counsel for the plaintiffs.

48. Deny.

49. Without knowledge regarding the precise distance between the two trucks and affirmatively assert that Lewis charged full speed at Deputy Caudillo, looking directly at Deputy Caudillo, with a black object in Lewis's hand, that Deputy Caudillo reasonably believed to be a gun.

50. The term "sideways" is vague. Deputy Caudillo stated in his interview that Lewis charged at him full speed, while looking directly at Deputy Caudillo, with a black object in Lewis's hand, that Deputy Caudillo reasonably believed to be a gun.

51. The term "raised" is vague. Deputy Caudillo stated in his interview that Lewis had a black object that looked like a gun in his hand that was coming up.

52. The document quoted here speaks for itself. Defendants at this time do not admit to the veracity of the statements made therein and for now, at least, deny the same.

53. Deny.

54. Deny.

55. Deny.

56. Deny.

57. Deny.

58. Deny.

59. Deny.

60. Deny.

61. Deny.

62. Deny any and all statements of Sheriff Nanos taken out of context. Further deny the relevance of this allegation to any issue in the lawsuit.

63. Deny.

64. Deny.

65. Admit that Deputy Caudillo did return to work and further deny that there was anything inappropriate or unreasonable in so doing.

66. Admit that Deputy Caudillo did return to work and further deny that there was anything inappropriate or unreasonable in so doing.

67. Deny.

68. Deny any need for discipline.

69. Deny allegations that Sheriff Nanos stonewalls requests for public information.

70. Deny allegations that Sheriff Nanos stonewalls requests for public information. Deny remaining allegations.

71. Deny.

72. Deny.

73. Deny.

74. Deny.

75. Deny any unreasonable or actionable conduct regarding any repairs to vehicles.

76. Deny.

77. Deny.

78. Deny.

79. Admit that Defendants were served with a Notice of Claim.

80. Deny.

81. Deny that the conduct of the Defendants created an actionable state law wrongful death claim pursuant to ARS § 12-611.

82. Deny that the conduct of the Defendants created an actionable state law wrongful death claim pursuant to ARS § 12-611.

**COUNT I**
**USE OF EXCESSIVE FORCE**
**FOURTH AMENDMENT TO THE U.S. CONSTITUTION**

83. Defendants restate the above as though set forth below.

84. Deny.

85. Deny.

86. Deny.

87. Deny.

88. Deny.

89. Deny.

90. Deny.

91. Deny.

92. Deny.

93. Deny. Further deny that any of the plaintiffs other than the personal

representatives of the Estate of Bradley Alexander Lewis have standing to pursue a Fourth Amendment claim in this lawsuit. Moreover, any recovery on the appropriate Fourth Amendment claim is limited by the Arizona Survival Statute to economic damages only and does not extend to any alleged pain and suffering experienced by decedent Lewis.

94. Deny. Further deny that any of the plaintiffs other than the personal representatives of the Estate of Bradley Alexander Lewis have standing to pursue a Fourth Amendment claim in this lawsuit. Moreover, any recovery on the appropriate Fourth Amendment claim is limited by the Arizona Survival Statute to economic damages only and does not extend to any alleged pain and suffering experienced by decedent Lewis.

95. Deny. Punitive damages are precluded on the state law claims. Punitive damages are precluded against Pima County and Sheriff Nanos on the federal law claims.

## COUNT II
## SUBSTANTIVE DUE PROCESS
## FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION

96. Defendants restate the above as though set forth below.

97. Deny.

98. Deny.

99. Deny.

100. Deny.

101. Deny.

102. Deny.

103. Deny. Further, Plaintiffs Helen Stricklen, Ralph Rust Stricklen, Jerlene Jones,

and George Preston Lewis are grandparents of the decedent Bradley Alexander Lewis (age 19). Those individuals have no standing to pursue a U.S. Constitution Fourteenth Amendment claim arising from the death of Lewis. Neither do those individuals have standing as statutory beneficiaries for an Arizona state law wrongful death claim pursuant to ARS § 12-611 et seq.

**COUNT III**
**WRONGFUL DEATH**

104. Defendants restate the above as though set forth below.

105. Defendants deny breaching any duty owed to decedent Lewis or to any of the Plaintiffs in this lawsuit.

106. Deny.

107. Defendants Sheriff Nanos and Pima County deny breaching any duty owed to decedent Lewis or to any of the Plaintiffs in this lawsuit.

108. Deny.

109. Admit that on state law claims, Defendant Sheriff Nanos has respondeat superior liability for any wrongful and/or tortious conduct of Deputy Caudillo and Sgt. Moseley relevant to the shooting of decedent Lewis. Deny that Deputy Caudillo and/or Sgt Moseley engaged in any wrongful and/or tortious conduct related to the shooting of decedent Lewis. Deny that on state law claims, Pima County has respondeat superior (vicarious) liability for the conduct of Deputy Caudillo and Sgt. Moseley. (See, *Fridena v. Maricopa County*, 504 P.2d 58 (Div. 1, 1972).)

110. Deny. Further, Plaintiffs Helen Stricklen, Ralph Rust Stricklen, Jerlene Jones, and George Preston Lewis are grandparents of the decedent Bradley Alexander Lewis (age 19). Those individuals have no standing to pursue a U.S. Constitution Fourteenth Amendment claim arising from the death of Lewis. Neither do those individuals have standing as statutory beneficiaries for an Arizona state law wrongful death claim pursuant to ARS § 12-611 et seq.

111. Admit that Deputy Caudillo and Sgt. Moseley were acting in the course and scope of their employment with the Pima County Sheriff's Department at all relevant times.

112. Deny that Deputy Caudillo and Sgt. Mosely acted outside the course and scope of their authority and further affirmatively assert that they are entitled to qualified immunity under state and federal law.

113. The Shooting Board investigation culminated in a departmental ruling that the events leading up to the shooting and the shooting itself were deemed reasonable, appropriate, and justified. Defendants deny the characterizations of the conduct of Deputy Caudillo and Sgt. Moseley as being wrongful, tortious, unreasonable, or unjustified.

**COUNT IV**
**LOSS OF CONSORTIUM**

114. Defendants restate the above as though set forth below.

115. Admit upon information and belief that Anna Christine and Bradley Lewis are the parents of Bradley Alexander Lewis.

116. Admit upon information and belief that Ralph Rust Stricklen and Helen

Stricklen are the maternal grandparents of Bradley Alexander Lewis.

117. Admit upon information and belief that Jerlene Jones and George Preston Lewis are the paternal grandparents of Bradley Alexander Lewis.

118. Without sufficient knowledge and information to form a reasonable belief regarding the nature and extent of loss experienced by Anna Christine Lewis and Bradley Lewis and therefore deny the same. These Defendants further deny liability for any such alleged loss.

119. Without sufficient knowledge and information to form a reasonable belief regarding the nature and extent of loss experienced by grandparents Ralph Rust Stricklen, Helen Stricklen, Jerlene Jones, and George Preston Lewis and therefore deny the same. These Defendants further deny liability for any such alleged loss.

120. Deny liability for any damages claimed.

121. Deny liability for any damages claimed.

122. Deny.

123. Deny.

124. Deny liability for any and all damages claimed by any and all Plaintiffs.

**COUNT V**
**DAMAGE TO PROPERTY**

125. Defendants restate the above as though set forth below.

126. Admit upon information and belief that Ralph Rust Stricklen and Helen Stricklen are the owners of a 2019 Ford F-150 truck.

127. Deny that Defendants are liable or legally responsible for damage to the truck. The damage to the truck was caused by Bradley Alexander Lewis's unreasonable, illegal behavior that caused Deputy Caudillo to reasonably and justifiably respond to that behavior by firing his handgun.

128. Admit that the truck in question was damaged by a bullet or bullets. Deny that Defendants are liable or legally responsible for damage to the truck. The damage to the truck was caused by Bradley Alexander Lewis's unreasonable, illegal behavior that caused Deputy Caudillo to reasonably and justifiably respond to that behavior by firing his handgun.

**GENERAL DENIAL**

129. Defendants deny all statements, claims, and allegations of the Second Amended Complaint not specifically admitted herein.

**AFFIRMATIVE DEFENSES**

130. Qualified immunity under state and federal law. Good faith immunity under state and federal law.

131. Punitive damages are precluded against all Defendants under state law.

132. Punitive damages are precluded against Sheriff Nanos and Pima County under federal law.

133. Failure to state a claim against Defendant Pima County regarding the state law claims. Pima County does not have respondeat superior liability for the conduct of Deputy Caudillo and/or Sgt. Moseley on the state law claims. See, *Fridena v. Maricopa County*, 504 P.2d 58 (Div. 1, 1972).

134. The claims by decedent Lewis's grandparents, namely, Plaintiffs Helen Stricklen, Ralph Rust Stricklen, Jerlene Jones, and George Preston Lewis, fail to state a claim for which relief may be granted. Grandparents do not have a legally cognizable claim under state law or federal law arising from the death of a grandchild.

135. The conduct of the Defendants was justified pursuant to ARS §§ 13-402, 13-403, 13-404, 13-405, 13-406, 13-409, 13-410, 13-411, 13-412, 13-417, 13-421.

136. No civil liability for engaging in conduct otherwise justified pursuant to the statutes set forth in No. 135 above.

137. None of the Plaintiffs, except for the Estate of Bradley Alexander Lewis, have a legally cognizable claim under the Fourth Amendment to the United States Constitution. A Fourth Amendment claim is personal to the individual against whom the alleged violation occurred and not to others, including not to family members.

138. ARS § 14-3110, Arizona's Survival Statute, allows certain causes of action (such as a Fourth Amendment claim) to survive the death of the person entitled thereto, and that cause of action may be asserted by the personal representative of the decedent's estate, provided that upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed.

139. ARS § 12-712 (A) provides that the finder of fact may find in favor of the defendants if decedent Lewis was attempting to commit or committing or immediately fleeing from a felony criminal act and was at least fifty percent responsible for the events that caused his death. Decedent Lewis's conduct is imputed to plaintiffs.

140. ARS § 12-716 provides that if a plaintiff (in this case decedent Lewis) is harmed while attempting to commit, committing or fleeing after having committed or having attempted to commit a felony criminal act, then the peace officer is presumed to be acting reasonably in threatening or using physical force, including deadly physical force to protect himself or others or to effect an arrest or prevent or assist in preventing a plaintiff's (in this case decedent Lewis's) escape. Further, under these circumstances, pursuant to this statute, the law enforcement department (Sheriff Nanos and Sheriff's Department) is presumed to have reasonably hired and trained its peace officers to use physical force or deadly physical force. If the court grants a motion to dismiss or motion for summary judgment pursuant to this statute, the court shall award the moving party (Defendants in this case) costs and attorney fees.

141. ARS § 12-820.02 (A) (11) provides that unless a public employee, acting in the course and scope of his/her employment, intended to cause injury or was grossly negligent, neither a public entity nor a public employee is liable for an injury caused by a peace officer if the injury was caused by any act or omission while rendering emergency care at the scene of an emergency occurrence.

142. The conduct of the Defendants does not constitute conduct that "shocks the conscience," that constitutes "deliberate indifference," or that constitutes "purpose to harm," and thus the Second Amended Complaint fails to state a claim for violation of the Fourth Amendment to the United States Constitution.

143. The conduct of the Defendants was "objectively reasonable" and did not violate

the Fourth Amendment to the United States Constitution.

144. Under both federal and state law the Defendant law enforcement officers had no duty to retreat.

145. Decedent Lewis assumed the risk of injury and death by his own conduct. That assumption of risk is imputed to the Plaintiffs.

146. Decedent Lewis caused and/or contributed to causing his own death and is contributorily negligent and has comparative fault for his injury and death. That contributory negligence and comparative fault is imputed to the Plaintiffs.

147. Plaintiffs' COUNT IV, LOSS OF CONSORTIUM fails to state a claim for which relief may be granted. "Loss of consortium" is an element of damages and does not constitute a separate legally cognizable theory of liability.

148. Sheriff Nanos cannot be held liable in his individual capacity. Sheriff Nanos was not personally involved in the events leading up to and including the shooting of Lewis by Deputy Caudillo.

149. ARS § 12-711 provides that the finder of fact may find the defendant not liable if the defendant proves that the claimant, or the claimant's decedent was under the influence of an intoxicating liquor or a drug and as a result of that influence the decedent was at least fifty percent responsible for the event that caused the decedent harm. The Toxicology Report performed in conjunction with the autopsy on Lewis revealed the presence in his blood of CANNABINOIDS, Delta-9-THC, THC-COOH.

**150. The doctrine of necessity allows the defendants to damage or destroy**

**property in certain circumstances without paying compensation. This defense applies to the damage to Plaintiffs Stricklens' truck, damage related to Deputy Caudillo firing his handgun in self-defense.**

**151. The doctrine of duress allows the defendants to damage or destroy property in certain circumstances without paying compensation. This defense applies to the damage to Plaintiffs Stricklens' truck, damage related to Deputy Caudillo firing his handgun in self-defense.**

## REQUEST FOR ATTORNEY FEES

**152**. ARS § 13-420 provides that the court shall award attorney fees, costs, compensation for lost income and all expenses incurred by a defendant in the defense of any civil action based on conduct otherwise justified pursuant to this chapter (Title 13, Chapter 4) if the defendant prevails in the civil action.

## JURY TRIAL DEMAND

**153.** These Defendants demand a jury trial.

DATED this 28th day of June, 2023.

*AUDILETT LAW PC*

/s/ Daryl Audilett
___________________________________
Daryl A. Audilett
Attorney for Defendants Nanos, Caudillo, Moseley and Pima County

CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Eduardo H. Coronado, Esq.
CORONADO LAW FIRM, P.L.L.C.
4700 W. White Mountain Boulevard, Suite A
Lakeside, AZ 85929
**Attorney for Plaintiffs**

By /s/ Karen Audilett