*AUDILETT LAW PC*
335 NORTH WILMOT RD SUITE 500
TUCSON, ARIZONA 85711-2636
(520) 748-2440
Email: daa@audilettlaw.com
Daryl A. Audilett, Esq.
State Bar No. 009007; PCC No. 2036
Attorney for Defendants Nanos, Caudillo, Moseley and Pima County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anna Christine Lewis, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>Chris Nanos, et al.,<br><br>Defendants. | NO. CV 21-00557-TUC-RM<br><br>DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE (Doc. 75) TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 64)<br><br>(Oral Argument Requested)<br><br>(The Honorable Rosemary Marquez) |

## PLAINTIFFS' NON-COMPLIANCE WITH LRCiv 56.1(b) and LRCiv 7.2

### A. Plaintiffs did not file an LRCiv 56.1(b) Controverting Statement of Facts.

LRCiv 56.1(b) states that Plaintiffs:

> "…must file a statement, separate from that party's memorandum of law, setting forth; (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed."

Plaintiffs did not file a controverting statement of facts. In their section "In Direct Response to Defendants' SSOF," on pages 41 through 46 of Plaintiffs' PSSOF (Doc. 75-1), Plaintiffs do address, improperly, certain paragraphs, 184, 192, 194, 195, 245, 276, 280, 281, 375 and 389 of the DSSOF. Plaintiffs repeat what the Defendants' paragraph states, and then

provide unsupported explanations and arguments. Paragraphs 1 through 425 of Defendants' SSOF should be deemed admitted. *See Breeser v. Menta Group, Inc., NFP*, 934 F.Supp.2d 1150, 1153 (D. Ariz., 2013) ("Failure of the non-movant to comply with LRCiv 56.1(b) is ground for the Court to disregard a controverting statement of facts and deem as true the moving party's separate statement of facts in support of the motion for summary judgment. *Szaley v. Pima Cnty*., 371 Fed.Appx. 734, 735 (9th Cir. 2010).") In *Breeser, supra,* at 1155 the Court followed the Seventh Circuit's Rule 56.1 interpretation:

> "Opinion, suggested inferences, legal arguments, and conclusions are not the proper subject matter of a Local Rule 56.1 statement. Including legal arguments in a 56.1 statement is wholly improper, redundant, unpersuasive, and irksome; in short, it advances neither the interests of the parties nor of the court."

**B. <u>Plaintiffs' Additional Statements of Fact Lack Citations to the Record</u>.**

Plaintiffs also fail to comply with LRCiv 56.1(b)(2), which requires that Plaintiffs must file a statement containing:

> "(2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support."

Plaintiffs' PSSOF (Doc. 75-1) improperly mostly consist of explanations and arguments with only an occasional cite to the record. *See Puckett v. United States*, --- F.Supp.3d ---, *4, 2023 WL 8436565 (D. Ariz., December 5, 2023) (Court will refuse to consider explanations and arguments made in Plaintiff's statement of facts). The PSSOF contains separately numbered paragraphs with very few or no cites to the record or to page numbers, and with sections ending with a separate entry stating: "The above-referenced discussion is corroborated by the

following…". *E.g.,* PSSOF paragraphs 17, 83, 158, and 260. Statements of fact that do not properly cite to the record cannot be relied upon by the Court. *Radmacher v. DeJoy*, 2023 WL 27089918 (D. Ariz., March 30, 2023). The non-movant has the burden of showing a genuine dispute of material fact exists, and courts "rely on the non-moving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*, citing *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (requiring the district court to search the entire record: is "unfair" to both the court and the movant and results in the court acting as the non-movant's lawyer).

The arguments, opinions and explanations in Plaintiffs' PSSOF are also an attempt to circumvent the LRCiv 7.2(e) 17-page limit. LRCiv 7.2(i) provides this Court the discretion to deem Plaintiffs' non-compliance as consent to the granting of Defendants' Motion for Summary Judgment. Argument may be made in the response or reply brief on the motion for summary judgment, but within the page limits.

**C. Plaintiffs violate LRCiv 56.1(e) in their Response Brief (Doc.75)** by not including "citations to the specific paragraph in the statement of facts that supports assertions made in the memoranda regarding any material fact on which the party relies in support of or in opposition to the motion." In their Response brief, Plaintiffs only occasionally cite to *exhibit numbers* to their PSSOF, and in most cases expect counsel and the Court to determine locations and page numbers. "Judges need not paw over the files without assistance from the parties." *Orr v. Bank of America*, 285 F.3d 764, 775 (9th Cir. 2002). Because Plaintiffs did

not substantively comply with LRCiv 56.1(e), the Court should deem Defendants' facts to be undisputed in their entirety. *Lewis v. Dirt Sports LLC*, 259 F. Supp. 3d 1039, 1042-43 (D. Ariz. 2017); *Szaley v. Pima Cty*, 371 Fed.Appox. 734, 735 (9th Cir. 2010).

**MATERIAL FACTS NOT CONTESTED BY PLAINTIFFS' RESPONSE OR PSSOF**

Decedent Bradley Lewis ("Lewis") previously pointed a black handgun at two young men, telling them, "I've dropped ten bodies before, you're just a number to me. I'll do it again." (DSSOF 17.) That event led to a Probable Cause Alert being issued to advise deputies of the Assault With Deadly Weapon incident committed by Lewis and authorizing the arrest of Lewis. (DSSOF 77-84.) In the early morning hours of January 20, 2021, (day of the shooting), Lewis became a suspect for car burglaries. (DSSOF 88-90, 108.) Plaintiffs have never contested that on January 20, 2021, there was probable cause to arrest Lewis.

Sgt. Moseley spotted Lewis's blue pickup truck ("truck") sitting on the side of N. Paseo de Angel down the street from Lewis's grandparents' (Stricklens') house. (DSSOF 155-157.) Sgt. Moseley confirmed the PC Alert, requested backup and ballistic shields, and called Communications about the availability of PCSD air support. (DSSOF 157, 164, 168.) Deputies Berry and Gilbert arrived and the three officers conducted a "high risk stop" on the Lewis truck, loudly commanding Lewis (by name) to get out with his hands up. (DSSOF 165-166.) Deputy Caudillo arrived and pulled his vehicle close to the front of Lewis's truck. Lewis fled in his truck to his grandparents' driveway. (DSSOF 255-256, 176-180, 184.)

Lewis stopped his truck and Deputy Caudillo stopped his patrol car behind Lewis. (DSSOF 270-274.) Lewis exited his truck and advanced towards Deputy Caudillo, holding

a black object in his right hand that was sitting above Lewis's index finger, that looked square, that Deputy Caudillo thought was a Glock, a gun. Caudillo feared for his life. (DSSOF 280.)

**PLAINTIFFS DO NOT CREATE "MATERIAL" QUESTIONS OF FACT**

Plaintiffs' failures to cite specific portions of the record make it difficult for Defendants to demonstrate the absolute falseness of many of Plaintiffs' unsupported claims. In places, Defendants are able to cite to DSSOF or PSSOF. Defendants are also forced to submit a few additional exhibits. "[Mere] allegation and speculation do not create a factual dispute for purposes of summary judgment." *Hart v. City of Redwood City*, supra, at *9, (citing *Nelson v. Pima Cmty Coll*. 83 F.3d 1075, 1081-82 (9th Cir. 1996).

Plaintiffs' police expert William Harmening without foundation claims that the narrowest gap between the two trucks through which Lewis had to traverse to get to Caudillo was only 4.3 inches. (PSSOF 30.) Plaintiffs' expert Dr. Peles reconstructed the scene based on the LEICA (3D Scan) measurements. (PSSOF 32.) Dr. Peles's reconstruction determined the narrowest gap to be 8-9 inches (PSSOF 178-180; PSSOF Ex 15, Peles Rebuttal Report, p. 7, ¶¶ 11, 13.) Plaintiffs still falsely claim Peles and Harmening agree on 4.3 inches. (PSSOF 30, 32, 33.)

At the time that Lewis was shot, Plaintiffs' expert Dr. Peles puts Lewis at the Toyota's left rear corner maneuvering past the Ford F150's sideview mirror. (PSSOF Ex 15, p. 7, ¶ 11.) Dr. Peles's reconstruction still photos, Exhibit 1 to this Reply, also in PSSOF Exhibit 21) show the location of the Ford F150 sideview mirror to be rearward beyond the end of the Toyota truck bed. Dr. Peles puts the blood deposits where Lewis landed 2 feet rearward and

rightward of the Toyota's left rear corner. (Id., Peles Rebuttal Report, p. 7, ¶ 11; Reply Exhibit 2.) This puts Lewis, after being shot, landing on the ground only about 6.5 feet from Deputy Caudillo's location behind his patrol car door in the "V" formed by the door and the A pillar. (PSSOF Exhibit 8, Defendants' Crime Scene Reconstruction and Ballistics expert Noedel Report, p. 32; PSSOF 290; DSSOF 280.) Plaintiffs' ballistics expert Lucien Haag agrees with defense expert Noedel that Deputy Caudillo fired the three shots while positioned next to the driver's door of his patrol vehicle. (PSSOF Ex 13, Haag Rebuttal Report, p. 2.)

No one denies that Lewis was advancing towards Deputy Caudillo. No one denies that Lewis had a black object in his right hand. No one denies that there was a Probable Cause Alert out on Lewis for previously threatening two young men with a black handgun. No one denies that both Sgt. Moseley and Deputy Caudillo knew about Lewis's history before the shooting on January 20, 2021.

Plaintiffs' attempts to recreate the shooting event via the Peles "recreation" videos and Samir Lyons 3D animation videos fail for lack of foundation and relevance (F.R.E. 401, 402), and confusing and misleading the jury (403). They are not admissible. These sorts of demonstrations are required to depict the subject event under "substantially similar" conditions. *See*, detailed discussion of the required foundation in *Rios v. Ramos*, 2021 WL 2255050, **4-6, D. Kansas, (2021).

Moseley and Caudillo have described Lewis's movements exiting his truck and advancing towards Deputy Caudillo as very fast. Yet Plaintiffs' expert Dr. Peles created "recreation" videos that show a male actor moving slowly through the space between the

Stricklen Ford F150 and the Toyota. (PSSOF 186 and Exhibit 21 "Recreation Videos" folder.) The videos do not replicate the extreme physiological factors experienced by Lewis in his truck being held at gunpoint during the felony stop and then desperately driving away to escape, then advancing at Deputy Caudillo with a black object in his hand.

The Declarations of Caudillo and Moseley, Reply Exhibits 3 and 4, contain the numerous foundation failures that render Dr. Peles's recreation videos inadmissible. The Peles male model is a full 15 pounds heavier than the 140 lb. thin body type of Lewis. (PSSOF 218, citing Exhibit 18.) The recreation videos do not reflect a person in a hurry. The videos are filmed in daylight, not in darkness with white lights and red/blue flashing lights, and shadows. The windows of the exemplar Toyota are not tinted darkly enough, and the drivers' window is down. The videos are not filmed from Caudillo's point of view or eye level. The Dr. Peles recreation videos misrepresent what Caudillo saw under the conditions present at the time of the incident and lack foundation under Federal Rules of Evidence 401, 402, 403. (Reply Exhibit 3, Declaration of Gilberto Caudillo.) The videos are not admissible.

The same is true of Plaintiffs' expert Samir Lyons' 3D animation videos. (PSSOF 261-268, and Exhibit 32.) The animation videos do not capture Lewis's speed and agility. The videos do not depict Lewis as a person experiencing the physiological conditions involved in an extremely stressful, life-threatening event. Nor do they capture the environmental lighting conditions which contain some darkness, some bright lights, flashing red and blue lights, and areas of shadow. (Reply Ex.3, Declaration of Gilberto Caudillo, ¶¶ 10-19.) The videos do not capture Caudillo's point of view, through his eyes, at his eye level.

The Lyons animation videos show Moseley, gun in hand, tracking Lewis in slow motion as Lewis exits his truck and moves rearward towards Caudillo. There is no evidence that supports that slow motion movement. Moseley demonstrated during his video deposition the quick, split-second view he had of Lewis. (DSSOF 189; Reply Exhibit 5, Moseley video depo clip.) *See* also, Reply Exhibit 4, Declaration of Michael Moseley. Lt. Moseley had no time to decide whether to shoot, before Lewis moved out of view. The Lyons videos lack adequate foundation and are inadmissible under Federal Rules of Evidence 401, 402, and 403. In addition, Samir Lyons, Plaintiffs' 3D animation expert, never submitted an expert report required by F.R.Civ.P. 26(2). Neither did he submit any information detailing the data or methods he utilized to create the 3D animation videos. The videos are not admissible.

Plaintiffs claim, citing only in their Response to the PSSOF Ex 23 video, that "Neighbor eye witnesses corroborate the physical evidence on surveillance video that Mr. Lewis was shot as he was getting on the ground." (Response p. 2:13-15.) There is no such evidence or corroboration. At Response p. 7:22-24, Plaintiffs claim "In the Caruther's (sic) zoomed-in surveillance footage, Traci Caruther (sic) can be heard stating the following: 'They shot the kid as he was getting on the ground.'" That is false. Reply Exhibit 6 to this brief is the Declaration of Traci Caruthers, the next door neighbor to the shooting scene. Ms. Caruthers states that she has watched and listened to her surveillance footage from her house multiple times. She does not hear herself saying, "They shot the kid as he was getting on the ground." She has no recollection of saying that. (Reply Ex. 6, ¶12.) Traci Caruthers stated at the time and now that she was in bed when she heard two gunshots, ran to her daughter's

room, peeked out her daughter's window and saw cops everywhere already. Traci Caruthers then went to the front door with her husband, opened the door, and saw the kid on the ground and efforts being made to resuscitate him. (Reply Ex 6, ¶¶ 6-8.) The Caruthers, Traci, Dean and Aubree, were all in bed until they heard shots fired, they did not see the shooting.

Plaintiffs contend that Lewis was falling, diving, etc. when he was shot and not as Caudillo has described, that he believed that he was going to be in a chest-to-chest firefight with Lewis. Plaintiffs' contention does not create a "material" question of fact. "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). *See, e.g*., "While there are some discrepancies regarding the details of the incident, the material facts are not in dispute." *Hart v. City of Redwood City*, -- F.4th --- 2024 WL 1689092, *3, (9th Cir., April 19, 2024).

Plaintiffs agree that Lewis was in motion, constantly moving towards Deputy Caudillo. (PSSOF 10; PSSOF Ex 21 Peles Recreation Videos; PSSOF Ex 32 Samir Lyons 3D animation videos.) The undisputed fact remains that Lewis was in motion holding a black object, advancing on Deputy Caudillo holding what Caudillo reasonably believed to be a gun. That deadly threat is not extinguished by speculation that Lewis was falling or diving to the ground. Lewis still had the ability to shoot Caudillo. Lewis had not surrendered.

## PLAINTIFFS ARGUE AGAINST SUPREME COURT AND NINTH CIRCUIT PRECEDENT

**No Constitutional Violation:** Plaintiffs' expert Peles marks the time from when

Lewis exited his truck to arriving at the Stricklen F150 sideview mirror, where Lewis was shot, at 2.7 to 4 seconds. (DSSOF 390.) The Stricklen F150 sideview mirror is located beyond the end of the Tacoma truck bed, behind the tailgate. (Reply Ex 1, same as Photos from PSSOF Ex 21.) The blood on the ground where Lewis landed is just beyond the rear bumper of the Tacoma truck bed. (Reply Ex 2, Photo, also in PSSOF Ex 14, p. 9; PSSOF Ex 8, p. 32-33.) The import of Peles's analysis is that Deputy Caudillo had as few as 2.7 seconds to first observe Lewis advancing, to open his vehicle door, to step out of his vehicle with his left foot, to draw his handgun, to stand in the "V" between his open door and the "A" pillar (location not disputed by Plaintiffs, PSSOF 26-28), to observe a black object in Lewis's right hand that looked like a gun, to decide to shoot, and to fire his weapon three times. All that within as few as 2.7 to 4 seconds.

> "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments---in circumstances that are tense, uncertain, and rapidly evolving---about the amount of force that is necessary in a particular situation. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

In *Hart v. City of Redwood City*, --- F.4th ---, 2024 WL 1689092, **3-9, 10, 12 (April 19, 2024, the Ninth Circuit held objectively reasonable an officer shooting a suspect advancing with a knife within a 5 - 5.9 second timeframe, eventually ending up only a few feet from the officers. The officer did not violate the Fourth Amendment. The officer was entitled to qualified immunity (no clearly established law). *Id.*, at **10, 12.

**Both Prongs of Qualified Immunity apply:** Defendants are entitled to qualified immunity. Qualified immunity gives officers breathing room to make reasonable but mistaken judgments about open legal questions and protects "all but the plainly incompetent

or those who knowing violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) It is Plaintiffs' burden to show controlling authorities that would have put every reasonable officer on notice that the conduct of Defendants Moseley, Caudillo, and Nanos violated a constitutional right. *Waid v. County of Lyon*, 87 F.4th 383, 389 (9th Cir. 2023). Plaintiffs fail to satisfy that burden.

**No Monell Claim:** For their *Monell* claim against Sheriff Nanos and Pima County, Plaintiffs have proffered no official policies, customs, or practices that were a moving force in causing a constitutional violation. *Monell v. Dept. of Soc. Svs. of New York*, 436 U.S. 658, 690-94 (1978). There is no evidence of deliberate indifference or that any deficiency is closely related to a constitutional injury. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-91 (1989). The *Monell* claim fails.

**The Supreme Court Rejects Provocation:** Plaintiffs' suggestion that Defendants provoked a violent confrontation is of no legal moment. *County of Los Angeles, Calif., v. Mendez*, 581 U.S. 420, 423 (2017) ("The Ninth Circuit has adopted a 'provocation rule' that imposes liability in such a situation. We hold that the Fourth Amendment provides no basis for such a rule. A different Fourth Amendment violation cannot transform a later, reasonable use of force into an unreasonable seizure.")

**Officers have no duty to retreat.** *Reed v. Hoy*, 909 F.2d 324, 331 (9th Cir. 1989) (concluding duty to retreat would "be inconsistent with police officers' duty to the public".) Less intrusive alternatives to deadly force are not required. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1992) (the appropriate inquiry is whether the officers acted reasonably, not

whether they had less intrusive alternatives available to them); *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010) (a reasonable use of deadly force encompasses a range of conduct, and the availability of a less-intrusive alternative will not render conduct unreasonable.)

**No Delayed Medical Attention:** Plaintiffs' Response at pages 9-10 suggests that Defendants delayed medical attention, thereby causing Lewis's death. Plaintiffs have no medical expert to opine on that. Defendants' MSJ pp. 17-18 (Doc. 64) clearly laid out the promptness with which medical attention was summoned and CPR given by deputies and soon thereafter, the arrival of paramedics. A police officer who promptly summons medical care has acted reasonably for purposes of the Fourth Amendment. *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1099 (2006).

**CONCLUSION**

For all the reasons stated in Defendants' Motion for Summary Judgment and in the Reply brief, all Counts of Plaintiff's Second Amended Complaint should be dismissed with prejudice against all Defendants.

DATED this 22nd day of April, 2024.

*AUDILETT LAW PC*

/s/ Daryl Audilett

Daryl A. Audilett
Attorney for Defendants Nanos, Caudillo, Moseley and Pima County

CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Eduardo H. Coronado, Esq.
CORONADO LAW FIRM, P.L.L.C.
4700 W. White Mountain Boulevard, Suite A
Lakeside, AZ 85929
**Attorney for Plaintiffs**

By /s/ Karen Audilett