*AUDILETT LAW PC*
P O Box 12308
Tucson, AZ 85732-2308
(520) 349-5468
Email:  daa@audilettlaw.com
Daryl A. Audilett, Esq.
State Bar No. 009007; PCC No. 2036
Attorney for Defendants Nanos, Caudillo, and Pima County

HUMPHREY & PETERSEN, P.C.
6063 E. Grant Road
Tucson AZ 85712
(520) 795-1900
Email:  apetersen@humphreyandpetersen.com
Andrew J. Petersen, Esq.
State Bar No. 016699
Co-counsel for Defendants Nanos, Caudillo, and Pima County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anna Christine Lewis, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>Chris Nanos, et al.,<br><br>Defendants. | NO. CV 21-00557-TUC-RM<br><br>DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE DEFENDANTS' EXHIBITS PCSD 5671 - 6125, 6314 - 6862<br><br>(Doc. 137)<br><br>(The Honorable Rosemary Márquez) |

**INTRODUCTION**

Defendants respond to Plaintiffs' motion in limine seeking to exclude certain records of Bradley A. Lewis's prior contacts with law enforcement.  The law enforcement reports are admissible under Hearsay Exceptions FRE 803(6) Records of a Regularly Conducted Activity and (8) Public Records. The contents of the reports showing Lewis's criminal

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

behaviors are relevant to the objectively reasonable side of the equation as part of the "totality of the circumstances."  Even the "outside conduct" is relevant as it tends to prove Deputy Caudillo's version that Plaintiffs dispute.  The reports are relevant to the damages side of the equation based on overwhelming evidence that Lewis had chosen a life of crime, and life as a fugitive.

Attached here as Exhibit A is a list of the prior law enforcement records Defendants have listed in the Joint Proposed Pretrial Order (Doc. 102) to use as trial exhibits, Exhibits 570 – 604.  Plaintiffs' cited Bates-number range includes the prior law enforcement contact reports, and also includes Lewis's Pima County Jail Records.

Attached here as Exhibit B is Exhibit 2 to Bradley M. Lewis's deposition, a chronology of the reports, which has been used at Plaintiffs' depositions in the discovery, and which contains a brief summary of each of the reports.  The copy in Exhibit B is annotated to indicate which reports by Trial Exhibit number Bradley M. Lewis indicated that he was familiar with either the report or with the incident.

Plaintiffs' motion in limine to exclude the subject matters of official reports of Lewis's prior police encounters should be denied. Lewis's prior police reports clearly establish that Lewis was known to be armed and dangerous.  Moreover, Lewis's chosen life of crime and being a fugitive is relevant to the individual parent Plaintiffs' damages on wrongful death, and the Estate's damages on the 4th Amendment claim.  Here we will discuss:

1) the specific prior police reports and information from those incidents of which Moseley and Caudillo were aware prior to the shooting; and

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

2)   the fact that the other deputies who responded on the day of the shooting were aware that Lewis was known to be armed and dangerous; and

3)   the role this knowledge played in how the deputies responded to the high risk, felony stop scene on Paseo de Angel a few hundred yards from the Stricklen residence, and to the incident scene in the Stricklen driveway; and

4)   that Lewis's prior police contacts played a role in, and are relevant to, Lewis's own conduct during the events that led up to and included the shooting; and

5)   the fact that Lewis's parents and grandparents were aware of certain of the prior incidents, which is relevant to damages claimed by the parents and the Estate.

## DISCUSSION

**1)   The specific prior police reports and information from those incidents of which Moseley and Caudillo were aware prior to the shooting**

Sgt. Moseley had been actively looking for Lewis for approximately 33 days, after the department-wide Probable Cause Alert was issued on December 18, 2020.  The Probable Cause Alert (Exhibit 200) documented that Lewis had committed Assault With a Deadly Weapon (AWDW) on December 4, 2020.  An excerpt of Sgt. Moseley's Declaration concerning "Moseley's Prior Knowledge of Bradley Alexander Lewis's Criminal Activities" is attached hereto as Exhibit C.  The Declaration is trial Exhibit 525 and will be used to refresh recollection, Exhibit C here contains pp. 4 – 7, PCSD 07493 – 07496.  In the Declaration Moseley states he had been trying to locate Lewis for 3 to 5 weeks, that there had "been a rash of calls about Lewis starting in about the middle of 2020, up until November or

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

December of 2020, and then Lewis went off the radar."

In his Declaration, Moseley details his prior knowledge of the incidents in the reports. Additionally, Moseley reviewed the PC Alert and the case reports on the 12-4-20 AWDW incident. Trial exhibits from the 12-4-20 report are:

597.  PCSD 6625 – 6640  201204090 PCSD Report,  Bradley Lewis, no transcripts
598.  Report 201204090, Pool supplements at pp. 8-10 and p. 13, PCSD 6632-6634, 6637
599.  Report 201204090, Valdez Supplement, PCSD 6639 – 6640

Sgt. Moseley reviewed a 4-6-2020 report of shots heard, shots fired in the Catalina town area. When Deputies stopped Lewis's car, spent shell casings were found on the floorboard of Lewis's driver's seat. Guns and drugs were found in the car, and Lewis was arrested. Review of this case led to a home address for a known associate of Lewis's, which was one of the places where Moseley began looking for Lewis. Trial exhibits for this incident are:

581.  PCSD 6331 – 6529  200406304 PCSD Report and Files, Bradley Lewis – Big Wash Overlook
582.  PCSD 6346 – 6377 Excerpt of PCSD Report 200406304 – Big Wash Overlook from Moseley Declaration

Sgt. Moseley responded to and reviewed reports on an 11-2-2020 road rage, shots fired call, in which the shooter was reported to have come from W. Positano Way, close to N. Paseo de Angel (a side street to Positano) where Lewis's grandparents lived. Sgt. Moseley believed that Lewis may have been the suspect. Trial exhibits for this report are:

594.  PCSD 6641 – 6660  201102154 PCSD Report, shots fired near LA Fitness on Ina
595.  PCSD Report 201102154, excerpted, from Moseley Declaration

Sgt. Moseley responded to and reviewed reports on the 1-3-21 shots fired incident at

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

6661 N. Paseo de Angel, next door to the Stricklen residence where the Lewis shooting occurred on 1-20-21.  The Trial Exhibits for this incident are:

600.  PCSD 6865 – 6886 PCSD Report 210103235 Report Shots fired at 6661 N Paseo de Angel, next door to the Stricklen residence on 01-03-2021.

601.  PCSD Report 210103235, excerpted, from Moseley Declaration

As part of Sgt. Moseley's directed patrol activities, he reviewed reports involving Lewis, and "started seeing a disturbing trend of violent behavior, weapons involvement – things that told me that not only is this individual decreasing the quality of lives of the citizens in my community but is a potential danger to the citizens in my community." (Exhibit G: Moseley deposition, p. 173: 1-15.)  Sgt. Moseley developed a list of known associates of Lewis, and addresses where he could look for Lewis. These are detailed in his Declaration (Exhibit C, Moseley Declaration, pp. 6 - 7, PCSD 07495 – 07496).  These notes on the names, which provide details of weapons, threats, and drugs, refer to the following police reports, listed by Trial Exhibit number:

585.  PCSD 6530 – 6546  200727020 PCSD Report and Files, Bradley Lewis (PCSD)
586.  PCSD 5961-5969   08-06-2020      PCSD No. v20080216  (Oro Valley PD)
587.  PCSD 5970-5977   08-11-2020      PCSD No. 2008-0480 (Marana PD)
589.  PCSD 5995-6002   08-17-2020      PCSD No. 2008-0795 (Marana PD)

Deputy Caudillo had prior knowledge of reports on Lewis. (Exhibit D, Excerpt of Caudillo 9-25-23 Declaration, pp. 3 - 4 of Trial Exhibit 524.)  Before the shooting Caudillo had read the Probable Cause Alert (Trial Exhibit 200), and had looked up Lewis's mug shot and involvements (law enforcement contacts) on the PCSD Spillman data system.

The probable cause alert was based on the 12-4-2020 report, Trial Exhibits:

597.  PCSD 6625 – 6640  201204090 PCSD Report,  Bradley Lewis, no transcripts.

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

598. Report 201204090, Pool supplements at pp. 8-10 and p. 13, PCSD 6632-6634, 6637.

599. Report 201204090, Valdez Supplement, PCSD 6639 – 6640.

Deputy Caudillo had responded to the 11-2-2020 road rage incident in front of the LA Fitness gym at Ina and Shannon, and authored a supplement to that report:

594. PCSD 6641 – 6660  201102154 PCSD Report and Files, shots fired near LA Fitness on Ina

595. PCSD Report 201102154, excerpted, from Moseley Declaration

Caudillo responded to and authored a supplement to the 1-3-21 shots fired call at 6661 N Paseo de Angel next door to the Stricklen residence.  Report Trial Exhibits are:

600. PCSD 6865 – 6886 PCSD Report 210103235 Report Shots fired at 6661 N Paseo de Angel, next door to the Stricklen residence on 01-03-2021.

601. PCSD Report 210103235, excerpted, from Moseley Declaration

As stated in ¶ 21 of Caudillo's Declaration, (Exhibit D) when he and Moseley were at the call involving shots fired at 6661 N Paseo de Angel, they discussed "whether there was a chance that Lewis was the shooter at the LA Fitness gym road rage shooting incident. … Lewis's grandparents' house is approximately a mile south and east of the LA Fitness gym.

**2)   Other deputies who responded on the day of the shooting were aware that Lewis was known to be armed and dangerous**

PCSD Deputy Anthony Pool responded to back up Sgt. Moseley on January 20, 2021 at 0618 hours on the day of the shooting when Moseley first located Bradley Lewis in his blue Tacoma truck on Paseo de Angel.  After being briefed by Sgt. Moseley, Pool recalled Lewis. Deputy Pool was the investigating officer for the 12-4-20 AWDW incident which caused the PC Alert to be issued on Lewis.  Pool responded as the main investigating officer on 12-4-20 and talked to the two young men Lewis threatened with a gun.  They had been co-workers of Lewis's at MacDonald's and positively identified him. Pool took taped

6

statements from the two young men, and a fellow deputy took a taped statement from the off-duty TPD Officer Darren Williams who had witnessed the incident.  Trial Exhibits (reports and statements) concerning the 12-4-2020 AWDW incident are:

597.  PCSD 6625 – 6640  201204090 PCSD Report,  Bradley Lewis, no transcripts
598.  Report 201204090, Pool supplements at pp. 8-10 and p. 13, PCSD 6632-6634, 6637
599.  Report 201204090, Valdez Supplement, PCSD 6639 – 6640.
475.  PCSD 7967 – 7970  201204090 Frank, Chip, Interview Transcript 12-4-2020 (Defts' SDS 9; audio previously provided with Defendants' SDS 8 at PCSD 7611.)
476.  PCSD 7971 – 7972  201204090, Perry, Jeremy, Interview Transcript 12-4-2020 (Defts' SDS 9, audio previously provided with Defendants' SDS 8 at PCSD 7612.)
477.  PCSD 7973 – 7976  201204090, Stricklen, Ralph, Interview Transcript 12-16-2020 by Det. Valdez, (Defts' SDS 9, audio previously provided with Defendants' SDS 8 at PCSD 7613.)
478.  PCSD 7977 – 7978  201204090 TPD Williams, Darren, Interview Transcript 12-4-2020, (Defts' SDS 9, audio provided with SDS 8.)

Deputy Pool's entire Declaration with attachments was Exhibit 1 to Defendants' Separate Statement of Facts in Support of Summary Judgment (Doc. 65-2 pp. 1 – 38.)

The other deputies that responded to back up Moseley, Matthew Gilbert, Justin Berry, Caudillo, and Robles were also briefed that Lewis could be armed and was dangerous.

**3)  The role this knowledge played in how the deputies responded to the high risk, felony stop scene on Paseo de Angel a few hundred yards from the Stricklen residence, and to the shooting scene in the Stricklen driveway**

Upon locating the Lewis vehicle, Sgt. Moseley requested ballistic shields. He told Deputy Pool to prepare deployment of tire spikes to prevent Lewis from escaping back out of the neighborhood, and requested fixed-wing air support, which was not available yet that morning.  The deputies conducted a high-risk stop on Lewis's truck, taking cover behind Moseley's vehicle, calling out Lewis by name to surrender.  Deputy Caudillo drove by the truck attempting to see if Lewis was in it, with Deputy Robles carrying a ballistic shield in

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

the back seat of Caudillo's vehicle.  After Lewis took off to the grandparents' house, Moseley caught up and blocked Lewis's vehicle from exiting the driveway and fleeing.  In the driveway both Moseley and Caudillo feared that Lewis would jump out and shoot them through their windshields, so they got out of their vehicles as quickly as they could.

**4) Lewis's prior police contacts played a role in, and are relevant to, Lewis's own conduct during the events that led up to and included the shooting**

The prior law enforcement reports Plaintiffs are trying to preclude show that Lewis had a lot of experience being contacted by police, and with being stopped, questioned and arrested.  Lewis knew what he was supposed to do at the high risk felony stop location on Paseo de Angel when the deputies were calling him by name and telling him to get out with his hands up.  He had many opportunities to surrender, including when he exited his truck in the Stricklen driveway.  He never surrendered.  He never spoke to the deputies.

**5) Lewis's parents' and grandparents' knowledge of certain of the prior incidents are relevant to damages claimed by the parents and by the Estate**

In deposition (Exhibit E, Excerpt of Bradley M. Lewis Deposition), Bradley Marshall Lewis (father) testified he was familiar with the incidents that are reported in Trial Exhibits **570** (Id., pp. 109:20 – 112:14); **571** (Id., pp. 112:15 – 115:11); **573** (Id., pp. 118:16 – 121:16); **574** (Id., 122:12 – 123:17); **576** (Id., pp. 124:3 – 127:7; 127:23 – 128:23); **577** (Id., pp. 128:24 – 129:20); **581** (Id., pp. 136:10 – 142:7); **585** (Id., pp. 144:16 - 146:22; 152:5 – 153:25) and **593** (Id., pp. 163:19 – 165:25).  Bradley M. Lewis testified in deposition he read the 7-27-20 police report, Trial Exhibit 585, sent to him by Helen Stricklen, and he knew there was a hearing coming up.  (Id., pp. 144:16 - 146:22; Trial Exhibit 585, PCSD 5940 – 5960, PCSD

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

Report 200727020, updated to better copy PCSD 6530-6546 for Trial Exhibit.)  Regarding Trial Exhibit report 581, PCSD 5801 – 5879, Anna Lewis testified at deposition she was contacted regarding the incident on 4-6-20 when Lewis was arrested, spoke to the arresting officer, and she went to the scene to pick up Lewis's property.   (Exhibit F, Anna Lewis Deposition, pp. 50:9 – 52:5.)  PCSD deputies/detectives contacted the Stricklens at their home at least twice looking for Lewis, Helen on 11-20-20 and Ralph on 12-16-20.  (Reports, Trial Exhibits 596 (Helen) and 597 – 599 (Ralph).)

## LEGAL DISCUSSION

The law enforcement reports are admissible under Hearsay Exceptions FRE 803(6) Records of a Regularly Conducted Activity and (8) Public Records.

The primary issue here is whether Deputy Caudillo's shooting of Lewis was objectively reasonable.  The "objectively reasonable" analysis was recently reaffirmed by the Supreme Court in *Barnes v. Felix*, 145 S.Ct. 1353, 1356 (2025).

> A police officer's use of deadly force violates the Fourth Amendment when it is not "objectively reasonable." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). And that inquiry into reasonableness, we have held, requires assessing the "totality of the circumstances." Id., at 396, 109 S.Ct. 1865 (quoting *Tennessee v. Garner*, 471 U.S. 1, 9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).

Plaintiffs' argument for exclusion of law enforcement reports implicating Lewis in other incidents of gun violence and other crimes amounts to nothing more than a "moment of threat" analysis, now rejected by the Supreme Court:

> Most notable here, the "totality of the circumstances" inquiry into a use of force has **no time limit**. Of course, the situation at the precise time of the shooting will often be what matters most; it is, after all, the officer's choice in that moment that is under

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

review. But earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones. Or as the Federal Government puts the point, those later, "in-the-moment" facts "cannot be hermetically sealed off from the context in which they arose." Brief for United States as Amicus Curiae 14. Taking account of that context may benefit either party in an excessive-force case. Prior events may show, for example, why a reasonable officer would have perceived otherwise ambiguous conduct of a suspect as threatening. Or instead they may show why such an officer would have perceived the same conduct as innocuous. The history of the interaction, as well as other past circumstances known to the officer, thus may inform the reasonableness of the use of force. *Barnes v. Felix*, 145 S.Ct. 1353, 1358. (Emphasis added.)

Lewis's other law enforcement incidents are relevant under FRE 401 and 402. The *Barnes* court makes that clear. Moreover, as discussed extensively in *Boyd v. City and County of San Francisco*, 576 F.3d 938 (9th Cir. 2009) (a police shooting case) "other incidents" that go beyond what the shooting officer knew at the time are admissible where, as here, the Plaintiffs dispute what the officer perceived just prior to the shooting.

Officer Paine testified that he fired after Cammerin ignored police commands to surrender and instead sat down on the dashboard of the SUV and reached both hands inside, as if to grab something. In a case such as this, where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible. See *Graham*, 490 U.S. at 399 n. 12, 109 S.Ct. 1865 (indicating that a factfinder may consider outside evidence "in assessing the credibility of an officer's account of the circumstances that prompted the use of force"); *Billington v. Smith*, 292 F.3d 1177, 1180-82, 1184-85 (9th Cir.2002) (noting witness reports and the decedent's blood alcohol content in analyzing reasonableness in an excessive force case). *Boyd*, supra, at 944.

Plaintiffs dispute what Deputy Caudillo perceived prior to shooting Lewis. Plaintiffs contend that Lewis was not "charging at" or "attacking" Deputy Caudillo, as Deputy Caudillo claims. Plaintiffs contend that Deputy Caudillo did not perceive Lewis holding a gun, as

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

Deputy Caudillo claims. These disputes make Lewis's other criminal activities and other conduct relevant. When combined with Lewis's conduct in trying to avoid capture just before the shooting, his other criminal activities and current attempts to avoid capture are relevant. This is applicable also to Lewis's bragging to his father in text messages on 1-6-21 (Trial Exhibit 367) about "putting a gun to Chad's (mother's boyfriend's) head" wherein he also brags to his father that the cops are never going to get him, and to Lewis's text messages with his grandmother Helen Stricklen, telling her that he isn't coming to her house because there are cops sitting around her neighborhood all the time. All these other incidents involving criminal activities, threatening people with guns, shooting guns from his car, evading law enforcement, are consistent with, and tend to prove, Deputy Caudillo's description of events occurring at the time of the shooting. Per *Boyd*, supra, 576 F.3d 938 at 947-50, these other "outside" incidents and evidence, i.e., those not known to the shooting officer, that make Caudillo's version more credible are not barred by FRE 403 or 404(b). They are admissible.

**CONCLUSION**

Plaintiffs' motion in limine to exclude Lewis's other law enforcement reports should be denied. Some of the reports were specifically known to the deputies, including Deputy Caudillo, before the shooting. *Barnes v. Felix* holds that the "objectively reasonable" analysis requires consideration of the "totality of circumstances" which has "no time limit." *Boyd v. City and County of San Francisco* holds that a shooting subject's "outside" conduct, i.e., conduct not known to the shooting officer, is admissible where what the officer perceived just before shooting is in dispute.

11

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

DATED this 29th day of July, 2026.

*AUDILETT LAW PC*

/s/ Daryl A. Audilett

_____

Daryl A. Audilett
Attorney for Defendants Nanos, Caudillo, Moseley and Pima County

HUMPHREY & PETERSEN, P.C.

/s/  Andrew J. Petersen

_____

Andrew J. Petersen
Attorney for Defendants Nanos, Caudillo, Moseley and Pima County

CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Eduardo H. Coronado, Esq.
Coronado Law Firm, P.L.L.C.
4700 W. White Mountain Boulevard, Suite A
Lakeside, AZ 85929
**Attorney for Plaintiffs**

Andrew J. Petersen, Esq.
Humphrey & Petersen, P.C.
6063 E. Grant Road
Tucson, AZ 85712
**Co-counsel for Defendants**

By /s/ Karen Audilett