*AUDILETT LAW PC*
P O Box 12308
Tucson, AZ 85732-2308
(520) 349-5468
Email:  daa@audilettlaw.com
Daryl A. Audilett, Esq.
State Bar No. 009007; PCC No. 2036
Attorney for Defendants Nanos, Caudillo, and Pima County

HUMPHREY & PETERSEN, P.C.
6063 E. Grant Road
Tucson AZ 85712
(520) 795-1900
Email:  apetersen@humphreyandpetersen.com
Andrew J. Petersen, Esq.
State Bar No. 016699
Co-counsel for Defendants Nanos, Caudillo, and Pima County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anna Christine Lewis, et al., | NO. CV 21-00557-TUC-RM |
| Plaintiffs, | |
| | DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE DEFENDANTS' EXHIBIT PCSD 6895 – 6897 |
| vs. | |
| Chris Nanos, et al., | (Doc. 138) |
| Defendants. | (The Honorable Rosemary Márquez) |

Defendants Respond to Plaintiffs motion in limine to exclude "Defendants' Exhibit PCSD 6895-6897," which is three photos of defense expert Steve Ijames holding the evidence key fob and lanyard.  A copy of these photos is attached to this Response as Exhibit A.  They are Defendants' Trial Exhibits 374, 375 and 376 as listed in the Joint Proposed Pretrial Order,

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

Bates-numbered PCSD 6895, 6896, and 6897.

Plaintiffs' motion should be denied.  Plaintiffs' arguments go to the weight of the evidence, not to its admissibility. Deputy Caudillo has stated from the beginning that he perceived the black object in Lewis's right hand to be a gun.  Plaintiffs have claimed from the beginning that Deputy Caudillo either makes things up or is outright lying about what he saw and perceived.  Plaintiffs will no doubt continue that mantra throughout the jury trial. Plaintiffs' accusations do not render the evidence admissible.  The jury will decide.

In the motion, Plaintiffs falsely claim that "There was also no mention of Mr. Lewis holding his key fob in such a capacity until years later."  At Deputy Caudillo's January 25, 2021 detective interview, five days after the shooting, this transpired:

Q2    And you described, I believe, and correct me if I'm wrong, a, a black mass.

A    Well, it's a, a black thing and, and I could see it in between, um, on the inside of his index finger.

Q2    Okay.

A    I, I could see, that's what I saw.  I saw something here.

Q2    Okay.  And, and just for the recording you're kind of using your, your right hand and opening up as if maybe you were about to grab a cup.

A    Right.

Q2    Okay.

A    I could make out his …

A2    Yeah, I think you answered his question.

A    … okay.

(Exhibit B, Excerpt of Transcript of Gilbert Caudillo Interview, January 25, 2021, Trial Exhibit 458, p. 40:12 – 23.)  In the next lines further down on that same page, Deputy

2

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

Caudillo was asked about his mindset and he stated: "He's got a weapon in his hand, a gun in his hand, and he's coming to kill me." (Id. lines 24-25.)

That the Lewis key fob and black lanyard could be held in a way that could resemble a gun was later demonstrated by defense police expert Ijames in the photos attached to this Response, which are the photos that Plaintiffs seek to exclude. When Deputy Caudillo was shown the Ijames photos he immediately declared, "That's what I saw." In the Declaration of Gilberto Caudillo (September 25, 2023) ¶ 90, Deputy Caudillo states:

> 90. I was recently shown photographs of police expert Steve Ijames holding the key fob and lanyard. (Declaration Exhibit F) Upon seeing those photographs, I immediately recognized and stated out loud, "That's what I saw." By that I meant that's the way that Lewis was holding the black object that I perceived at the time to be a gun.

(Exhibit C, Trial Exhibit 524, Declaration of Gilbert Caudillo, p. 12, ¶ 90.)

Plaintiffs took a video deposition of Deputy Caudillo on November 15, 2023. Attached as Exhibit D is the video clip (approximately 5.5 minutes) from the video deposition. In that video clip, Mr. Coronado questions Deputy Caudillo about the key fob/index finger relationship. Deputy Caudillo explains and demonstrates what he was talking about in the January 25, 2021 detective interview. Deputy Caudillo demonstrates how the key fob was positioned and looked like a gun. Set forth below is the written transcript of that video clip, but the video clip (approximately 5.5 minutes) is much more demonstrative.

Q. Can you turn to page 40? It's at the top of the right-hand corner.

3

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

A.   What page again?

Q.   40, four-zero.  Tell me when you find it.

A.   I'm on page 40.

Q.   Okay.  So if you go to line 12, it's number 12.  You see it?

A.   Yes.  Line 12.

Q.   It's got question on line 12.  It's question 2 and then answer on line 13 and finishes on 14.  Can you read the answer?  It starts on line 13.

          MR. AUDILETT:  Read it out loud, he wants.

          THE DEPONENT:  "Well, it's a black thing, and I could see it in between, um, on the inside of his index finger."

BY MR. CORONADO:

Q.   Okay.  So you touched a little bit on that earlier.  You could see his index finger?

A.   No, I -- I used the word "index finger" as a point of reference, meaning the top of his – the top of his, I guess, would be a vertical hand.  If this would be vertical.  If someone would have had something sitting on top of that.

Q.   Okay.

A.   Assuming he had an index finger.  I did not see an actual individual index finger.

Q.   You say there, "on the inside of his index finger."  Isn't that what it says?

A.   When I'm describing that, I mean it as if my hands are this way.  This would be the inside of my index finger.  And if something's sitting on top of it, it would still be on the inside of my index finger.  That's how I described it, in my mind.

Q.   It's not on paper -- it's not on the transcript.

A.   It says, "inside index finger."  To me, that's what I'm describing.

Q.   Inside of his index finger, right?

A.   Correct.  But, again, if I knew he had it --  assuming that he has an index finger, I would think it would be there on -- this would be the inside of an index finger.

Q.   So you -- when you gave that interview on  the 25th of January of 2021, you were just using a  hypothetical?

4

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

A.   I was thinking that he had an index finger, and I was trying to describe where the position of the black mass/gun was at.

Q.   Okay.

A.   I'm just trying to describe -- I'm trying to be as descriptive as I can be, and that was the only way I could describe that location of a hand in relation to a hand to relation to what I was seeing.

Q.   In that whole page, is there anywhere where you make that distinction to the interviewer?

A.   No, I was describing it there at that moment.

Q.   Okay.  All right.  So you could not see his index finger?

A.   I couldn't tell you if I could see his pinky finger or index finger or individual finger.  I could see a black mass in a position of his hand as I could describe as probably being up above his or inside his index finger.

Q.   Okay.  You're trying to -- can you tell me what you were trying to explain?  You can use my fob.

MR. AUDILETT:  Well, wait a minute.  That's totally inappropriate that -- you don't have any sort of attachment to that fob.  You don't have a lanyard, like he had.  Like your --

MR. CORONADO:  I want -- I want to see --

MR. AUDILETT:  He can't do it with just -- with no attachment.  How can he?

MR. CORONADO:  Well, I want him to.  I want to see how he was holding --

THE DEPONENT:  Okay.

MR. AUDILETT:  I want to see how he was holding the -- the fob.

THE DEPONENT:  What I could see in that blurred, rapid assault that I was having, right?  A human is assaulting me, coming at me in this fashion.  What I could see -- that the black mass looked as if something is sitting like this.  If this was the fob.  Knowing now -- I don't know.  Was it the fob?  Was it the lanyard?  I don't know.  But I could see a black mass sitting above this portion of his hand in a normal -- like this.  You see it?  Like

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

that.  What would be -- I don't know.  Is it like this?  I don't -- it could be.  I don't know.  But it was -- in this, a hand like this, with or without index finger.  Right here.  Above this portion.

Q.  And -- and it had a lanyard?

A.  I couldn't tell.  I saw a black thing that  I thought was a gun.  It looked like a gun.  A black thing.

(Exhibit E, Gilbert Caudillo Deposition, pp. 78:10 to 82:7.)

Plaintiffs state in their motion in limine that "During the deposition of Expert Ijames, he stated that he had not read anything that mentioned the *exact* positioning of the key fob in Mr. Lewis's hand.  (emphasis added)  The portion of defense expert Steve Ijames' deposition to which Plaintiffs' motion in limine refers could be pp. 23:16 to 24:16:

Q  (By Mr. Coronado)  Okay.  All right.  Can you point to a document

that you reviewed prior to that day that shows how Alex Lewis was holding the

fob?  Document, including written statements, emails, photographs?

A  I don't believe that I ever had one.  I don't believe, that I'm aware of,

that Deputy Caudillo had a clear indication of *exactly* what positioning any item

was, to give an *exact* answer to your question.  The description that I had from

statements and reports was this black object in the hand that had square features.

There was no definitive answer to your question.  What you're asking me about

in this picture in this position here in my report was in response to, I believe, one

reference that your expert said, there is no way that a fob could be held to look

like a gun.  (emphasis added)

6

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

And I'm simply giving the example of ways that that particular fob could be held to give an appearance of a firearm, not the way, because I don't think anyone knows definitively how Alex was, in fact, holding that object that night. No one knows for certain, and I don't think I've read anything where Deputy Caudillo has said for certain, or Moseley, for certain, the exact positioning in the split seconds that they saw that object in his hand, how it was being held.

(Exhibit F, Deposition of Steve Ijames, pp. 23:16 to 24:16.)

In summary of police expert Ijames's deposition testimony, the key point is that he demonstrated that the key fob could be held in a position to resemble the contours (square features) of a gun, consistent with what Caudillo has described in the split-second before he shot. Plaintiffs' police expert Harmening had opined there was no way a fob could be held "that would even remotely make it resemble a weapon." The Ijames photos holding the key fob and lanyard prove Harmening wrong.

## CONCLUSION

The photos of defense police expert Ijames demonstrating how the key fob can be held to resemble a gun, particularly in a very fast moving, fluid, dynamic event, are admissible. Defense expert Ijames is also entitled to demonstrate that in the courtroom. Deputy Caudillo is entitled to testify at trial that the Ijames photos demonstrate what he saw regarding the black object in Lewis's hand. Deputy Caudillo is entitled to demonstrate the black object/index finger relationship to the jury the same way he demonstrated in the video deposition.

7

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

These matters are relevant and admissible under FRE 401 and 402. Plaintiffs' arguments that this evidence is barred by FRE 403 lack merit. Plaintiffs' arguments may go to the weight of the evidence, but not its admissibility.

///

DATED this 29th day of July, 2026.

*AUDILETT LAW PC*

/s/ Daryl A. Audilett

_____
Daryl A. Audilett
Attorney for Defendants Nanos, Caudillo, Moseley and Pima County

HUMPHREY & PETERSEN, P.C.

/s/ Andrew J. Petersen

_____
Andrew J. Petersen
Attorney for Defendants Nanos, Caudillo, Moseley and Pima County

CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Eduardo H. Coronado, Esq.
Coronado Law Firm, P.L.L.C.
4700 W. White Mountain Boulevard, Suite A
Lakeside, AZ 85929
**Attorney for Plaintiffs**

8

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

Andrew J. Petersen, Esq.
Humphrey & Petersen, P.C.
6063 E. Grant Road
Tucson, AZ 85712
**Co-counsel for Defendants**

By /s/ Karen Audilett