*AUDILETT LAW PC*
P O Box 12308
Tucson, AZ 85732-2308
(520) 349-5468
Email: daa@audilettlaw.com
Daryl A. Audilett, Esq.
State Bar No. 009007; PCC No. 2036
Attorney for Defendants Nanos, Caudillo, and Pima County

HUMPHREY & PETERSEN, P.C.
6063 E. Grant Road
Tucson AZ 85712
(520) 795-1900
Email: apetersen@humphreyandpetersen.com
Andrew J. Petersen, Esq.
State Bar No. 016699
Co-counsel for Defendants Nanos, Caudillo, and Pima County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anna Christine Lewis, et al.,<br><br>            Plaintiffs,<br><br>vs.<br><br>Chris Nanos, et al.,<br><br>            Defendants. | NO. CV 21-00557-TUC-RM<br><br>DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION IN LIMINE (TO EXCLUDE VARIOUS EXHIBITS CONTAINING TEXT MESSAGES)<br><br>(Doc. 139)<br><br>(The Honorable Rosemary Márquez) |

Defendants respond to Plaintiffs' motion in limine to "preclude Defendants, their counsel, and any witnesses from mentioning, referencing or offering evidence" regarding a long laundry list of texts and emails.  These materials were produced by Plaintiffs during discovery.  These are materials that Plaintiffs listed as exhibits in the Joint Proposed Pretrial

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

Order filed with the Court. The entire contents of these materials total approximately 1474 pages. Plaintiffs attach none of the 1474 pages of materials for the Court to review and to determine admissibility.

Defendants anticipated objections to some of this material; it does not portray Plaintiffs or Plaintiffs' decedent in a very good light. That is why Defendants filed Motions in Limine Nos. 15, 16 and 17, (Docs. 122, 123 and 124) identifying specific pages of the text messages that Defendants intend to use at trial. Those text messages are included in the texts/emails that Plaintiffs' Motion in Limine seeks to exclude.

The pertinent Defendants' Motions in Limine are:

**Defendants' Motion in Limine No. 15 (Doc. 122): To Deem Admitted Into Evidence Lewis's Email/Text Exchanges with His Father, Wherein Lewis Disparages His Mother**

This Defendants' Motion in Limine addresses Defendants' Trial Exhibit 366, Exhibit G to Defendants' First Request for Admissions to Plaintiffs (attached as Exhibit A to Defendants' Motion in Limine No. 15, at Doc. 122-2, pp. 1-6). This 5-page exhibit is extracted from the text/emails that Plaintiffs seek to exclude. This exhibit contains text messages between Lewis and his father wherein Lewis makes many disparaging remarks about his mother, Plaintiff Anna (Anita) Christine Lewis. Lewis says Anita is "batshit," "her and Chad (boyfriend) are DRUG DEALERS, "they can f**k themselves," "I'm done with her completely and entirely for good," "she's been nothing but a tornado of destruction in my life," "that bitch is crazy," "I don't hate her I just can't have her in my life whatsoever because she is toxic," "she's controlling manipulative and deceptive."

2

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

These statements are not inadmissible hearsay, or hearsay at all. They are party admissions. (FRE 801(d)(2) (Statements That Are Not Hearsay; An Opposing Party's Statement.) Decedent Lewis in the form of the Estate is a party to whom the party admission rule applies. Moreover, Decedent Lewis's conduct, including statements, are imputed to the parents, who are wrongful death beneficiaries. Even if Lewis's statements are considered hearsay, those statements are admissible pursuant to hearsay exception FRE 803(3) (Then-Existing Mental, Emotional, or Physical Condition). Lewis's statements are offered to show Lewis's feelings, attitude, or state of mind toward his parents (e.g., estrangement, hostility, lack of closeness). That evidence is both non-hearsay, and/or a hearsay-exception use.

The Lewis statements about his mother are relevant evidence of their dysfunctional, destructive, toxic relationship (and/or lack of relationship). The statements are relevant to Plaintiff Anna Christine Lewis's claim for damages for the wrongful death of her son Bradley Alexander Lewis. The statements are relevant to the Estate's claim for damages for the 4th Amendment excessive force claim. The Estate's claim for damages is grounded in, and derives from, a determination of what kind of person Lewis was. On the damages issue, the jury is required to evaluate what kind of person Lewis was, a person that would speak so horribly and disparagingly about his own mother.

**Defendants' Motion in Limine No. 16 (Doc. 123): To Admit into Evidence Lewis's Text Exchanges About Guns, About Putting Gun to Chad's Head, About Lewis Knowing the Police Are After Him**

This Defendants' Motion in Limine 16 (Doc. 123) addresses the contents of Defendants' Trial Exhibit 367, Exhibit H to Defendants' First Request for Admissions to

3

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

Plaintiffs (attached to the Defendants' Motion in Limine No. 16 as Exhibit A, at Doc. 123-2, pp. 1-3.)  That exhibit contains statements by Lewis about leaving Arizona, "I put a gun to chads head and he called the cops on me and they've been tryna pull me in for questioning ever since for other shit they found out when they started stiring shit Bc of him", "they go to my moms and grandparents every week at least once", "Pulled up 12 deep the other day for my birthday", (note: Lewis's birthday was January 4, 2021), "I go to Mexico for work sometimes I have a permit down there for a handgun that I got wasn't that hard."

Lewis's statements are relevant evidence about his engagement in criminal activities, involving gun violence.  Lewis's statements evidence his knowledge that law enforcement is after him, going by his mother's and grandparents' house regularly.  That is what Sgt. Moseley has stated when describing his search for Lewis in the weeks preceding the shooting. These statements demonstrate that Lewis is a dedicated criminal and a dedicated fugitive. The fact that Deputy Caudillo did not know about these texts is irrelevant.  The "totality of circumstances" "with no time limit" allow consideration of "outside incidents" into the objectively reasonable analysis.  *Graham v. Connor*, 490 U.S. 386, 396 (1989) (totality of circumstances); *Barnes v. Felix*, 145 S.Ct. 1353, 1358 (2025) (with no time limit); *Boyd v. City and County of San Francisco*, 576 F.3d 938, 944 (9th Cir. 2009) (outside incidents).

Lewis's statements are also relevant to the Estate's claim for damages for 4th Amendment excessive force.  The Estate's claim for damages derive from a jury determination of what kind of person Lewis was.  There is a big difference in damages between Lewis being a dedicated criminal engaged in gun violence, a dedicated fugitive,

4

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

versus Lewis being a moral, conscientious, wage-earner, or a student with great potential, or an athlete with potential to join professional sports, etc.

**Defendants' Motion in Limine No. 17 (Doc. 124):  To Admit into Evidence The Lewis/Helen Stricklen Text Exchange on January 19 and 20, 2021**

Defendants' Motion in Limine No. 17 (Doc. 124) addresses the photo image of the January 19 and 20, 2021, phone text exchange between Helen Stricklen and Lewis. Defendants listed this as Trial Exhibit 324.  It is attached as Exhibit A to Defendants' Motion in Limine No. 17 (Doc. 124-2, pp. 1, 2).  Defendants' Trial Exhibit 343 is a foamboard enlargement of  Trial Exhibit 324.

This phone text exchange is part of the materials Plaintiffs seek to exclude. The text exchange reads:

| | |
|---|---|
| Helen Stricklen: | Today's mail.  There is a lot of mail here for you.  When you coming home to get it and package that is here? |
| | (Jan 19, 2021 at 4:55 PM) |
| Lewis | There are cops sitting around ur neighborhood all the time<br>I'll come in my own time<br>That's why I haven't<br>I love you I'll come when I can |
| | (Jan 20, 2021 3:48 AM) |
| Lewis | Whenever you wake up I can come over<br>I'm staying in the neighborhood to be able to come by |

This text exchange is admissible as non-hearsay under FRE 801(d)(2) and 803(3). This text exchange occurred the afternoon of the day before the shooting and in the 3:00 a.m.

5

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

hour timeframe the morning of the 6:44 a.m. shooting.  The 3:48 a.m. text from Lewis saying he is in the grandparents' neighborhood coincides with and is just after the timing of the reporting and investigation of the Morning Jewel Place attempted car burglaries just four miles away.  That connects Lewis to those attempted car burglaries (in addition to Lewis and his truck matching the images in the Morning Jewel neighbor surveillance videos.) That connects Lewis to the burglary crimes (and other crimes) from which he was fleeing, which in turn, implicates the application of ARS § 12-712.  ARS § 12-712 allows a jury to find in favor of a defendant in a civil action for injury to or death of a person committing or fleeing from a criminal act when the person is at least 50 percent at fault.

This text exchange is also relevant to Lewis's state of mind, (FRE 803(3)) inasmuch as he knows he is being sought by law enforcement and that he is actively hiding from law enforcement.  He is a dedicated criminal and a dedicated fugitive intent on avoiding capture.  That is relevant to proving the deputies' descriptions of how recklessly and dangerously Lewis fled the high risk felony traffic stop scene.  It is relevant to tending to prove Sgt. Moseley's description of Lewis ramming Sgt. Moseley's car in the driveway, and Deputy Caudillo's descriptions of Lewis charging at him, including Deputy Caudillo's perception of Lewis advancing and attacking him.

This text exchange is relevant to the Estate's claim for damages for 4th Amendment excessive force.  Those damages derive from a jury's determination of what type of person Lewis was, what were his character traits.  (See FRE 404(b)(2).  The jury is entitled to evaluate whether Lewis was a dedicated criminal and dedicated fugitive and therefore what

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

damages, if any, the Estate should be awarded. The same goes for the parents' claims for damages for wrongful death. The jury is entitled to evaluate what damages, if any, the parents are entitled to for losing a son who is a dedicated criminal and a dedicated fugitive.

**Defendants' Trial Exhibit 362 – Guns, trading in guns for profit, Sig Sauer and Ruger handguns, Exhibit C to Defendants' first Request for Admissions to each Plaintiff, PLTF RRFP 01349 – 01359 Text messages.**

Defendants' Trial Exhibit 362 falls within the panoply of texts/emails Plaintiffs are seeking to exclude. Exhibit 362 is attached here as Exhibit A for the Court's convenience. These text exchanges begin on 3/28/20. There are 11 pages that are marked at the bottom center with Defendants' Bates Numbering System: PLTF RRFP (number). The Bates letters describe that these are material produced by Plaintiffs in response to Defendants' Request for Production. Page PLTF RRFP 01349 contains Lewis's statements on 3/28/20 that: "I have guns…I always have…even when I lived with you…I have a glock and a 12 gauge." On Page PLTF RRFP 01353 (carryover from prior page dated 4/4/20) Lewis states: "at 18 in Arizona I can sell firearms private sale to other adults and it's completely legal…I can also open carry…anywhere in public…I could become a legal arms dealer…a gun king…when the world goes to shit…I'll have grenades and shit…world war X up in this bitch…I just bought a ruger." Continuing on page PLTF RRFP 01354 Lewis continues: for 100$...and a sig p320 m17…for 180…and men your age…want to buy from me because of the epidemic…I've been asked when doing doordash if im military and if I can get them guns…like 20 times…and it's completely legal to buy a gun and sell it via private sale…both of those…worth way more than that…ruger like 500-700…the sig im getting 1350 for…I've

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

made 700$ while I've been gone from moms for 4 days and I've been eating food for free and I still have to sell these and get another 1500 and they're not registered to me or connected to me legally at all…private sale…no bonding paperwork…in the state of Arizona." Lewis's buy/sell for profit gun business violates federal law.  18 U.S.C. § 923 makes it unlawful to engage in the business of dealing in firearms without first obtaining a Federal Firearms License (FFL).

On page PLTF RRFP 01355, dated 4/4/20, Lewis posts a photo of a Ruger handgun Model SR9 and says: "want me to mail you one?...for free…ruger sr9 9mm full size I can send it with a holster that goes inside of your pants or shorts or anything…I talked to a sheriff about it today…completely legal…I know my shit for once it seems…btw…legal side hustle."

These text messages demonstrate that Lewis was involved in illegally buying and selling guns for profit without the required Federal Firearms License, once again proving Lewis to be a dedicated criminal.  It is also illegal for a private citizen to mail a gun to someone across state lines.   The core federal statute governing the mailing or shipping firearms across state lines is found in 18 U.S.C. Chapter 44.  Federal law prohibits interstate firearm transfers to anyone not legally allowed to receive it, and requires that interstate transfers to non-licensees go through a Federal Firearms Licensee (FFL), making it illegal for private individuals to mail guns directly to each other across state lines.  (18 U.S.C. § 922.) Handguns are generally nonmailable through the U.S. Postal Service except by Federal

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

Firearms Licensees (FFL).  A mailed/shipped gun has to be sent by a licensed federal firearms dealer to a licensed federal firearms dealer.

Once again, this sort of illegal, criminal behavior, combined with the Probable Cause Alert for Assault With a Deadly Weapon, bragging about killing people, and bragging about putting a gun to Chad's (mom's boyfriend's) head tends to prove that the deputies were dealing with someone armed and extremely dangerous, requiring ballistic shields, high risk felony stop protocols, tire spikes to prevent escape, and to be on guard and ready for a deadly threat from Lewis.  These are the quintessential "totality of the circumstances," "with no time limit," with proper consideration of "outside incidents."

These texts are relevant to the Estate's claim for damages for 4th Amendment excessive force, and to the parents' claims for damages for the alleged wrongful death of their son.   If a jury finds liability it must have a factual basis on which to determine damages, if any.  That factual basis involves a dedicated criminal being a dedicated fugitive.

**Defendants' Trial Exhibit 365 – Lewis text exchanges with his father that contain Lewis's very hateful, obscene, denigrating, disparaging statements about both his parents, Exhibit F to Defendants' First Request for Admissions to each Plaintiff, PLTF RRFP 01519 - 01529**

Defendants' Trial Exhibit 365 contains 11 pages of text messages between Lewis and his father that are contained in the panoply of text/email materials that Plaintiffs seek to exclude.  The time stamp on the first page sets the start time at 9/6/20, 5:08 AM.  The pages are numbered PLTF RRFP 01519 through 01529.  Trial Exhibit 365 is attached here as Exhibit B for the Court's convenience.

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

For context, these text exchanges are occurring in New York state, where Lewis's father was living at the time, and where Lewis was visiting him. Lewis delivered marijuana from Arizona to his father, who apparently refused to pay Lewis for it. At the beginning, Lewis's father acknowledges Lewis's criminal activities that have resulted in cases against him. "I read all the court reports and 5 cases since you got out of the Army. 7 months. Your are in a steep slope and the fuzz is going to shake you till you fall to the bottom if you don't get off that cliff."

Lewis wants the father to pay him the $400 for the marijuana he delivered. On page PLTF RRFP 01520 Lewis says to his father: "u never have and never will be considered my parent in my eyes just someone who f****ed my bat shit crazy mother and u two happened to give birth to me." On page PLTF RRFP 01521, Lewis's father brings up the incident where deputies caught Lewis beating on cars with a baseball bat, when Lewis was "wasted and had a loaded gun." On page PLTF RRFP 01522 Lewis tells his father: "not even your own son can stand you" and "get the f**k out of my life." On page PLTF RRFP 01524 Lewis says: "you used me for drugs…as a f**king drug mule…"and "…you had ur son, WHO HAS MULTIPLE ACTIVE COURT CASES!!! transport drugs for you just bc you've been getting shitty shit bc ur such an asshole no one wants to sell u their good shit."

On page PLTF RRFP 01525, Lewis's father talks about a 15-page police report. Lewis says: "after I leave im never contacting you again…you're lower than my mother…I have zero respect for u…and I have no love left for you…you and anita (sic) (mother) are the worst people I've ever met in my entire life." On page PLTF RRFP 01528, Lewis says: "just stay

10

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

out of my life."  Lewis's father says: "I read the report.  You couldn't find a loaded pistol in your pocket.  It's in black and white."  On page PLTF RRFP 01529, there is discussion about Lewis threatening his father with brass knuckles.

The contents of Defendants' Trial Exhibit 365 is relevant and admissible evidence of the relationship between Lewis, his father, and his mother.  This information is relevant to their claim for damages for wrongful death.  This information is relevant and admissible to the Estate's claim for damages for an alleged claim of 4th Amendment excessive force.

## CONCLUSION

Plaintiffs' motion in limine paints with too broad a brush and should be denied.  They produced the texts and emails in response to Defendants' Requests for Production.  Plaintiffs do not identify with any specificity any text or email.  Defendants' Motions in Limine 15, 16 and 17 identify specific texts that Defendants seek to have admitted into evidence.  Defendants' Response herein identifies additional specific texts that they seek to have admitted into evidence, the relevancy, and legal support.

///

DATED this 29th day of July, 2026.

*AUDILETT LAW PC*

/s/ Daryl A. Audilett

_____

Daryl A. Audilett
Attorney for Defendants Nanos, Caudillo, Moseley
and Pima County

11

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

HUMPHREY & PETERSEN, P.C.

/s/  Andrew J. Petersen

_____

Andrew J. Petersen
Attorney for Defendants Nanos, Caudillo,
Moseley and Pima County

CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Eduardo H. Coronado, Esq.
Coronado Law Firm, P.L.L.C.
4700 W. White Mountain Boulevard, Suite A
Lakeside, AZ 85929
**Attorney for Plaintiffs**

Andrew J. Petersen, Esq.
Humphrey & Petersen, P.C.
6063 E. Grant Road
Tucson, AZ 85712
**Co-counsel for Defendants**

By /s/ Karen Audilett