*AUDILETT LAW PC*
P O Box 12308
Tucson, AZ 85732-2308
(520) 349-5468
Email:  daa@audilettlaw.com
Daryl A. Audilett, Esq.
State Bar No. 009007; PCC No. 2036
Attorney for Defendants Nanos, Caudillo, and Pima County

HUMPHREY & PETERSEN, P.C.
6063 E. Grant Road
Tucson AZ 85712
(520) 795-1900
Email:  apetersen@humphreyandpetersen.com
Andrew J. Petersen, Esq.
State Bar No. 016699
Co-counsel for Defendants Nanos, Caudillo, and Pima County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anna Christine Lewis, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>Chris Nanos, et al.,<br><br>Defendants. | NO. CV 21-00557-TUC-RM<br><br>DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE DEFENDANTS' EXHIBITS PCSD 7393 – 7396, 2457-2459, 5667, 5668, AND 6296-6297<br><br>(Doc. 141)<br><br>(The Honorable Rosemary Márquez) |

Defendants respond to Plaintiffs' Motion in Limine to Exclude Defendants' Exhibits PCSD 7393-7396, 2457-2459, 5667, 5668, and 6296-6297.  Plaintiffs' failure to identify the specific items by Defendants' Trial Exhibit numbers from the Joint Proposed Pretrial Order creates a level of confusion and complexity that should not be necessary.

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

The items that Plaintiffs seek to exclude pertain to Lewis being identified as the suspect in car burglaries (also known as "car busts") on Morning Jewel Place in Tucson in the 3:00 a.m. timeframe of January 20, 2021, before the 6:44 a.m. shooting. Plaintiffs further move to preclude any mention, reference or offers of evidence during trial regarding the Morning Jewel Place incidents.

Plaintiffs' motion is not well taken. Lewis is the male image in the Morning Jewel surveillance videos trying to open car doors in the 3:00 a.m. timeframe a few hours before he was shot. Plaintiffs' motion does not outright deny that Lewis is the male image in the car burglary videos. Plaintiffs' motion, page 2 at lines 9-10 states: "The images in the videos are grainy, and may or may not depict Mr. Lewis." In reality, there is no question but that the male image in the videos is Lewis. (See attached still photo, Exhibit A, excerpted from video.) The male's physical build (height/weight) matches Lewis. The male's clothing matches the clothing Lewis was wearing when he was shot a few hours later. The blue truck in the videos matches Lewis's truck. The fact that Lewis was found in his blue truck in his grandparents' neighborhood, four miles from Morning Jewel a few hours later, corroborates Lewis's Morning Jewel involvement. Lewis's 3:48 a.m. text message to his grandmother Helen Stricklen saying he is in the neighborhood further corroborates his Morning Jewel involvement.

Plaintiffs argue that the Morning Jewel incidents and associated videos and investigation that determined Lewis to be the suspect are not relevant because Deputy Caudillo did not know about them. That argument is wrong on the facts and wrong on the

2

law.  Deputy Caudillo was aware that Lewis had been identified as the suspect in the Morning Jewel car busts.  Deputy Caudillo was aware of the call about suspicious activity on Morning Jewel occurring before Sgt. Moseley located Lewis and started calling for backup and ballistic shields and road spikes.  (Exhibit B, trial Exhibit 458, Caudillo detective interview, p.3:1-27.)  When Deputy Caudillo arrived at the scene and talked with Sgt. Moseley, "I hear something to the effect that midnights has been looking for this guy so there was something that he was involved with in, with midnight shift."  (Exhibit B, trial Exhibit 458, Caudillo detective interview, p. 5:31 - 35.)

The Morning Jewel investigation precipitated the series of events that culminated in the Lewis shooting.  Morning Jewel is part of the "totality of circumstances" (*Graham v. Connor*, 490 U.S. 389, 396 (1989)), "with no time limit" (*Barnes v. Felix*, 145 S.Ct. 1353, 1358 (2025)).  Defendants are entitled to tell the whole story, not just the portions cherry-picked by Plaintiffs.  The jury is entitled to hear the whole story.  With Lewis identified as the suspect on Morning Jewel, Sgt. Moseley immediately began searching for Lewis.  It was not a casual patrol car randomly cruising looking for Lewis.  It was a targeted search for a specific target, Lewis.  When Sgt. Moseley announced that he found Lewis, the district deputies knew immediately they were dealing with a very dangerous fugitive known for gun violence.

Plaintiffs' argument that Deputy Caudillo did not know of Lewis's involvement at Morning Jewel, even if true, would not undermine Morning Jewel's relevance.  *Boyd v. City and County of San Francisco*, 576 F.3d 938 (9th Cir. 2009), an officer involved shooting case,

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

makes clear that where an officer's account of what he perceived immediately before the shooting that called for the use of lethal force is disputed, "other evidence" not known to the officer, but that is associated with the decedent's wayward conduct prior to the shooting, is relevant and admissible when it tends to corroborate the officer's version. *Boyd, supra*, at 943-45. Here, the Morning Jewel incident evidences Lewis's continued dedicated criminal activity and dedicated fugitive status. Lewis texted his grandmother the afternoon before the shooting, telling her "There are cops sitting around ur neighborhood all the time I'll come in my own time." Then, at 3:48 a.m. Lewis texted her "Whenever you wake up I can come over…I'm staying in the neighborhood to be able to come by." Lewis was hiding out in the neighborhood, determined not to get caught, not to go to jail. That corroborates the very dangerous and bizarre conduct Lewis engaged in, including charging at Deputy Caudillo, instead of trying to run away on foot. This is particularly important in the face of Plaintiffs' assertions that Lewis may have been trying to surrender when he was shot. In short, Morning Jewel is consistent with Lewis's basic character traits associated with being a dedicated criminal and a dedicated fugitive, all of which tends to make Deputy Caudillo's version of events credible. Morning Jewel is not barred by FRE 401, 402, 403, or 404(b). *See, Boyd v. City and County of San Francisco*, 576 F.3d 938 (9th Cir. 2009).

There is yet another reason that the videos and still photos from Morning Jewel are relevant and admissible. Plaintiffs claim that in the Stricklen driveway the horizontal gap between the grandfather's parked F150 and Lewis's truck was too narrow for Lewis to move through rapidly towards Deputy Caudillo as Deputy Caudillo describes. *See* Exhibit C,

4

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

ground level photo of gap, Trial Exhibit 226.  The Morning Jewel videos depict a young, tall, skinny Lewis moving with great agility.  The still photo, Exhibit A above, captures Lewis's physical features.  These images are recorded a mere 3.5 – 4.0 hours before the shooting.  There are no other videos or still photos of Lewis of this nature, and this close in time to the shooting, to present to the jury.  Whether, and how fast, a young, tall, skinny, adrenaline-loaded Lewis could get through the gap is something that the jury is entitled to evaluate in the totality of the circumstances.  It is fundamentally unfair to prevent Deputy Caudillo from presenting this evidence to the jury.

The Morning Jewel physical evidence in the form of Trial Exhibits that Defendants intend to present includes the following:  (*See,* also, Defendants' MIL 11, Doc. 118 and Exhibits B and C.)

The videos and still photos pertaining to Morning Jewel are Defendants' Exhibits 291 – 293; 315, 316, 339, 340, 608 – 613 in the Joint Proposed Pretrial Order (Doc. 102).

**Morning Jewel Videos**

291.   PCSD 7394 Surveillance video from 2133 W Morning Jewel, Michelle Stewart, 50 seconds, male attempting car burglaries.

292.   PCSD 7395 Surveillance video from 2202 W Morning Jewel, Emelinda De Senney, 13 seconds, male attempting car burglaries.

293.   PCSD 2863 L1K70084 from 2202 W Morning Jewel, Emelinda De Senney, 26 seconds, male attempting car burglaries.

5

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

**Morning Jewel Still Photo and Foamboard Exhibits**

315.   PCSD 6295  General Area Overview, aerial Morning Jewel to Paseo de Angel

316.   PCSD 6296-6297 Initial Report Location Aerial View, Morning Jewel

339.   Foamboard, 35 by 47, General Area Overview, PCSD 06295, streets, Initial Report area, OIS scene labeled.  Approximate Driving distance from the Area of Initial Report to OIS scene is 4.2 miles.  (Foamboard of Exhibit 315.)

340.   Foamboard, 35 by 47, Initial Report Location, Morning Jewel, Aerial View, PCSD 6296, 6297  (Foamboard of Exhibit 316.)

608.   Still photo 1 from video at Morning Jewel, PCSD 7395

609.   Still photo 2 from video at Morning Jewel, PCSD 7395

610.   Still photo 3 from video at Morning Jewel, PCSD 7395

611.  Foamboard of Still photo 1 from video at Morning Jewel, PCSD 7395 (Foamboard of Exhibit 608.)

612.  Foamboard Still photo 2 from video at Morning Jewel, PCSD 7395  (Foamboard of Exhibit 609.)

613.  Foamboard Still photo 3 from video at Morning Jewel, PCSD 7395  (Foamboard of Exhibit 610.)

The Morning Jewel testimonial evidence that Defendants intend to present at trial includes:

1.  Deputy Baird's testimony about responding to the call at Morning Jewel, talking to the neighbors, gathering the surveillance videos, determining the

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

suspect was Lewis, putting out an Attempt to Locate on Lewis's blue truck, looking for Lewis, talking to Marana PD about Lewis, talking to Sgt. Moseley when Moseley came on shift around 6:00 a.m.  *See* Declaration of Deputy Baird, Exhibit A to Defendants' Motion in Limine 11, Doc. 118, at pp. 118-2, pp. 1 – 14.

2.  Sgt. Moseley's testimony about hearing about the Morning Jewel activity caused him to immediately begin searching for Lewis at various addresses, finally locating Lewis on Paseo de Angel near the grandparents' house.

3.  Deputy Caudillo's testimony about hearing there was suspicious activity on Morning Jewel involving Lewis, hearing Sgt. Moseley's call for backup, ballistic shields, went to the scene to assist.

## CONCLUSION

Defendants request that the Court deny Plaintiffs' motion in limine to exclude the Morning Jewel Place incident, investigation, videos, and still photos.  These matters are relevant to the totality of the circumstances that precipitated the series of events that culminated in the shooting.  The Morning Jewel matters are also relevant to the Estate's claim for damages based on Lewis's character as a dedicated criminal and dedicated fugitive.  The Morning Jewel matters are relevant to Lewis's parents' wrongful death claim for damages.

///

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

DATED this 29th day of July, 2026.

*AUDILETT LAW PC*

/s/ Daryl A. Audilett

_____

Daryl A. Audilett
Attorney for Defendants Nanos, Caudillo, Moseley and Pima County

HUMPHREY & PETERSEN, P.C.

/s/  Andrew J. Petersen

_____

Andrew J. Petersen
Attorney for Defendants Nanos, Caudillo, Moseley and Pima County

CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Eduardo H. Coronado, Esq.
Coronado Law Firm, P.L.L.C.
4700 W. White Mountain Boulevard, Suite A
Lakeside, AZ 85929
**Attorney for Plaintiffs**

Andrew J. Petersen, Esq.
Humphrey & Petersen, P.C.
6063 E. Grant Road
Tucson, AZ 85712
**Co-counsel for Defendants**

By /s/ Karen Audilett

8