*AUDILETT LAW PC*
P O Box 12308
Tucson, AZ 85732-2308
(520) 349-5468
Email: daa@audilettlaw.com
Daryl A. Audilett, Esq.
State Bar No. 009007; PCC No. 2036
Attorney for Defendants Nanos, Caudillo, and Pima County

HUMPHREY & PETERSEN, P.C.
6063 E. Grant Road
Tucson AZ 85712
(520) 795-1900
Email: apetersen@humphreyandpetersen.com
Andrew J. Petersen, Esq.
State Bar No. 016699
Co-counsel for Defendants Nanos, Caudillo, and Pima County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anna Christine Lewis, et al., | NO. CV 21-00557-TUC-RM |
| Plaintiffs, | DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE THE DECEMBER 2020 PROBABLE CAUSE ALERT |
| vs. | |
| Chris Nanos, et al., | (Doc. 142) |
| Defendants. | (The Honorable Rosemary Márquez) |

Defendants respond to Plaintiffs' motion in limine to preclude the Defendants, their counsel, and any witnesses from mentioning, referencing or offering evidence during trial regarding the Probable Cause Alert issued December 18, 2020 regarding Bradley A. Lewis. The Probable Cause Alert is trial Exhibit 200 listed in the Joint Proposed Pretrial Order. It is attached here as Exhibit A, for the Court's convenience.

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

Defendants request that the Court review this motion in limine in conjunction with Defendants' Motion in Limine No. 3 (Doc. 110), in which Defendants seek to admit into evidence the Probable Cause Alert. Defendants incorporate by reference herein the contents of Defendants' Motion in Limine No. 3. However, in an abundance of caution to preserve the record, and for the convenience of the Court, Defendants may repeat here much, if not all, of the contents of Defendants Motion in Limine No. 3.

Plaintiffs' motion to exclude the Probable Cause Alert should be denied, and the Court should grant Defendants' Motion in Limine No 3: To Admit into Evidence the Probable Cause Alert (Exhibit 200) And To Allow Its Use in Opening Statement.

The crux of Plaintiffs' argument to exclude the Probable Cause Alert is "There is no evidence that Deputy Caudillo was aware, at the time that he fatally shot Mr. Lewis, that this alert had been issued a month earlier." That statement is so patently false that some consideration should be given to whether and to what extent that statement violates F.R.Civ.P. 11, and whether sanctions are warranted. The evidence is overwhelming that Deputy Caudillo was fully aware of the Probable Cause Alert at the time of the shooting, that he had previously looked it up in PCSD's Spillman program, and that he had previously reviewed Lewis's mugshot and involvements, all prior to the shooting.

## FACTS

At the time of the shooting, Deputy Caudillo knew about the Probable Cause Alert (created December 18, 2020) and its contents. (Exhibit A: Probable Cause Alert, Defendants' Trial Exhibit 200.) The Probable Cause Alert arose from an incident that occurred on

2

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

December 4, 2020. That day it was reported that decedent Lewis brandished a black handgun, pointed it at, and threatened two young men (former co-workers who identified him) on a residential street in broad daylight. Lewis told them: "I've dropped ten bodies before you're just a number to me. I'll do it again." The stated reason for the Probable Cause Alert was: "Aggravated Assault w/ Deadly Weapon 13-1204A2." (AWDW)."

The Probable Cause Alert was created and issued department-wide on December 18, 2020, by Detective Valdez. The Probable Cause Alert stated, among other things:

ON 12/4/2020, MR. FRANK WAS WALKING IN THE NEIGHBORHOOD OF N THORNWODD RD & W MEADOW BRAIR DR. WITH HIS FRIEND MR. WILLIAMS, WHEN A BLUE TOYOTA TACOMA PULLED UP NEXT TO THEM. THE MALE IN THE TRUCK WAS BRADLEY LEWIS. MR. LEWIS STARTED ARGUING WITH MR. FRANK. AT ONE POINT THE VERBAL ARGUMENT ESCALATED AND MR. LEWIS GOT OUT OF THE TRUCK AND PULLED OUT A **BLACK HANDGUN** AND POINTED IT AT MR. FRANK. MR. LEWIS TOLD MR. FRANK, **"I'VE DROPPED TEN BODIES BEFORE YOU'RE JUST A NUMBER TO ME. I'LL DO IT AGAIN.** THEN MR. LEWIS DROVE AWAY. THERE WAS AN OFF DUTY TPD OFFICER IN THE AREA WHO WITNESSED THE INCIDENT AND WAS ABLE TO PROVIDED (sic) A STATEMENT WHICH WAS SIMILAR TO BOTH MR. FRANK AND MR. WILLIAMS STATEMENT. (Emphasis added.)

3

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

Prior to, and on the day of the Lewis shooting, January 20, 2021, Sgt. Moseley and Deputy Caudillo were aware of the Probable Cause Alert and its contents, as were other deputies at the Lewis shooting event. Sgt. Moseley had been searching for Lewis for several weeks, since the Probable Cause Alert was issued by Detective Valdez on December 18, 2020.

When Sgt. Moseley located Lewis's truck beside the road on Paseo De Angel in the pre-dawn hours, Sgt. Moseley knew he was dealing with a dangerous person with a history of gun violence. Sgt. Moseley called for ballistic shields. Sgt. Moseley called for air support, but air support was not yet operational. Sgt. Moseley instructed Deputy Pool to set up tire spikes to prevent Lewis escaping. For many minutes, Sgt. Moseley and two other deputies deployed felony stop protocol, ordering Lewis (by his formal name Bradley Lewis) to get out of the truck with hands up. Instead of surrendering, Lewis sped away in his truck, launching it over desert brush, puncturing at least one truck tire.

Deputy Caudillo was keenly aware of Lewis's prior Assault With A Deadly Weapon (AWDW), the description of which was detailed in the Probable Cause Alert. Deputy Caudillo knew that the weapon Lewis used in the AWDW was a "black handgun." The Probable Cause Alert specifically identified that Lewis used a "black handgun" in the AWDW.

In his January 25, 2021 detective interview, Deputy Caudillo recounted the following:

P. 2:   I heard Sergeant Moseley say something about that he was on Paseo de Angel and a blue Tacoma……Immediately I knew what he was talking about

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

because Sergeant Moseley's briefed me on this blue Toyota Tacoma pickup that he's been looking for four, five, six weeks. (Doc. 65-8, p. 33 of 87.)

P.3:    …the driver that is wanted in shootings, he's been up to some violent crimes, he's a suspect in violent crimes and there's a **probable cause alert** for that suspect. (Emphasis added.) (Doc. 65-8, p. 34 of 87.) (Emphasis added.)

P. 5:    I knew who we were dealing with, Bradley Lewis. And I knew that he was dangerous and that … there was **a probable cause alert** for some types of violent crimes…" (Emphasis added.)

I knew who we were dealing with … a violent person known to be shooting or carry guns. So that … definitely put me on a very high alert. We weren't dealing with a regular random suspicious person … it was a specific person that I knew had involvement with guns and that there was a probable cause alert on, a felony **probable cause alert**. (Emphasis added.) (Doc. 65-8, p. 36 of 87.)

P. 10:    I felt this person is very dangerous, and him being loose in public in that vehicle is, to me, … a huge danger to everybody around us. (Doc 65-8, p. 41 of 87.)

P. 12:    I had pulled his Spillman record, um, after that first investigation next door…Where I knew M-, I knew Sergeant Moseley was checking on that house, I had no face to put with the name. I, I looked him up, just looked up his, I just wanted to look up his mug shot. So I looked at him and looked at his

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

involvements.  But, um, so when I recognized him I was like, that's the same guy.

P. 43:  Discussion: A week or two before the shooting, Deputy Caudillo was at a scene where he was briefed by Sergeant Moseley and some of the people from Robbery/Assault about the suspect Bradley Lewis, and that he was connected to other violent crimes involving guns and that he was wanted, there was a **probable cause alert** for him.  (Emphasis added.)  (Doc. 65-8, p. 74 of 87.) (Emphasis added.)

In Deputy Caudillo's Declaration filed with the Defendants' Separate Statement of Facts in Support of the Motion for Summary Judgment, Deputy Caudillo stated under oath:

P. 3, ¶14. Before and at the time of the shooting, I was aware of what Lewis looked like, and I was aware that Lewis was alleged to have been involved in other criminal activities involving guns, and that Lewis possessed a gun or guns.  I had previously looked up Lewis's mug shot and involvements (law enforcement contacts) on the PCSD Spillman data system via my Mobile Data Computer that I have access to at all times while on patrol.  (Doc. 65-8, p. 4 of 87, ¶ 14.)

P. 3, ¶15.  I was aware that there was a **probable cause alert** out on Bradley Alexander Lewis.  A **probable cause alert** is issued when there is probable cause to physically arrest the subject of the alert, in this case, Bradley Alexander Lewis. (Emphasis added.) (Doc. 65-8, p. 4 of 87, ¶ 15.) (Emphasis added.)

6

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

P. 3, ¶ 16:  I was aware that the **probable cause alert** was generated from an allegation that Lewis had pointed a gun at and threatened a person or persons, which constitutes Assault with a Deadly Weapon (AWDW).  I had previously read the contents of the **probable cause alert**.  The description of the AWDW incident contained the description that Lewis had pulled out a black handgun and pointed it at a man and said, "I've dropped ten bodies before you're just a number to me.  I'll do it again.  (Emphasis added.)  (Doc. 65-8, p. 4 of 87, ¶ 16.) (Emphasis added.)

In his deposition on November 15, 2023, Plaintiffs' counsel asked Deputy Caudillo "What made this small black mass deadly?  Caudillo answered:

A.  Well, from the beginning, we have to rewind all the way back and the whole history behind how the Sheriff's Department got involved in this, where Mr. Lewis was a suspect in pointing a black handgun at some individuals, threatening them with death.  "I've dropped ten bodies" or something like that, making claims of killing people.

Forward that into an investigation, forward that into **probable cause alert**, and into the events of that morning where Sergeant Moseley found the vehicle.  I believe I was dealing with a suspect that was very dangerous, that had a **probable cause alert**, that is known to threaten people with those firearms that he has the probable cause alert for.  (Emphasis added.)  (Exhibit B, Deposition of Gilbert Caudillo, pp. 152:4 – 18.)

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

Counsel states in reference to the December 4, 2020 Lewis AWDW that gave rise to the Probable Cause Alert: "In fact, the actual incident was not investigated until over a month after Mr. Lewis's death." (Plaintiffs' Motion in Limine re: December 2020 Probable Cause Alert, Doc. 142, p. 1:28-29.) Once again a patently false statement. PCSD Deputy Pool responded to and fully investigated the AWDW on December 4, 2020, the very day it occurred. (Declaration of Deputy Pool, Exhibit 1 to Defendants' Separate Statement of Facts in Support of Defendants' Motion for Summary Judgment, Doc.65-2, pp. 1 - 38.) Deputy Pool completed a full official report and took statements. (Id.) The case was further investigated by Detective Chamonix Valdez, PCSD Robbery/Homicide, including interviewing Ralph Stricklen (grandfather) on 12-16-20 and issuing the AWDW alert on 12-18-20. Attempts to locate Lewis were made by Sgt. Moseley, up until the shooting on January 20, 2021. The investigation was closed on 1-26-21 by Detective Valdez due to Lewis being deceased. The victim was contacted. (Declaration of Detective Valdez, Exhibit 2 to Defendants' Separate Statement of Facts in Support of Defendants' Motion for Summary Judgment, Doc.65-3, pp. 1 – 16).

## LEGAL DISCUSSION

In *Barnes v. Felix*, 145 S.Ct. 1353 (2025) the U.S. Supreme Court held:

"A police officer's use of deadly force violates the Fourth Amendment when it is not "objectively reasonable." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). And that inquiry into reasonableness, we have held, requires assessing the "**totality of the circumstances**." *Id*., at 396, 109

8

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

S.Ct. 1865 (quoting *Tennessee v. Garner*, 471 U.S. 1, 9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). (Emphasis added.)   The question here is whether that framework permits courts, in evaluating a police shooting (or other use of force), to apply the so-called moment-of-threat rule used in the courts below. Under that rule, a court looks only to the circumstances existing at the precise time an officer perceived the threat inducing him to shoot. Today, we reject that approach as improperly narrowing the requisite Fourth Amendment analysis. To assess whether an officer acted reasonably in using force, a court must consider all the relevant circumstances, including facts and events leading up to the climactic moment."  (Emphasis added.)

This  most recent pronouncement reaffirming the "totality of circumstances" analysis in police use of force cases applies here.  The Probable Cause Alert is an inseparable part of the totality of circumstances. *Barnes v. Felix* is controlling authority for the admissibility of the Probable Cause Alert.  The Probable Cause Alert greatly influenced the conduct of the deputies encountering Lewis in the pre-dawn hours of January 20, 2021.

The Probable Cause Alert is relevant to Deputy Caudillo's state of mind.  Based on his knowledge of the Probable Cause Alert, he knew he was dealing with a very dangerous individual who had previously brandished a black handgun and threatened two young men, essentially stating that he had already murdered ten people, that they are just a number to him, and that he would do it again.

In *Gallagher v. City of West Covina*, 141 Fed.Appx. 577, 2005 WL 1793397 (2005),

9

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

the 9th Circuit stated: "We conclude that the barred evidence was clearly relevant to Gallagher's 'excessive force' claim because it explained why the responding officers entered the house with weapons drawn and immediately rolled Gallagher from the sofa to the floor to handcuff him. Evidence of the responding officers' knowledge and state of mind is relevant and admissible to determine the propriety of their actions in effecting his arrest. See, *Miller v. Clark County*, 340 F.3d 959, 965 & n. 9 (9th Cir.2003). This includes the (sic) their knowledge of the underlying 911 complaint. See, e.g., *Blanford v. Sacramento County*, 406 F.3d 1110, 1116 (9th Cir.2005); *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir.), cert. denied, 545 U.S. 1128, 125 S.Ct. 2938, 162 L.Ed.2d 866 (Jun 20, 2005).

Police officers are entitled to explain not just ***what*** they did, but ***why*** they did what they did. It is the "why" that drives their decision-making processes that ends up with "what" they did, or did not do. Police conduct in a trial like this cannot be viewed in a vacuum. A determination of the reasonableness must take into consideration the reasons, the state of mind, of the officers at the time they acted.

A police officer must have the right to take the witness stand and testify that "This is what I did, because based on the information that was coming in, this is what was going through my mind, and this is what I was thinking, and this is what I was concerned about, and this is why I did what I did."

For example, "Where polygraph examinations of witnesses are conducted as part of a police investigation prior to the instigation of criminal proceedings, such evidence is admissible at trial ***to show the state of mind of police officers*** who are defending against a

10

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

claim of malicious prosecution."  (Emphasis added.) Criss v. Springfield Tp. 564 N.E. 440 (SC Ohio, 1990).

Defendants intend to elicit testimony from the officers, about what they were thinking, about what was going through their minds, about why they took the actions that they took. That evidence is relevant and admissible.

**CONCLUSION**

The Probable Cause Alert is relevant and material to the totality of the circumstances leading up to the shooting of Lewis.  The Probable Cause Alert is relevant and material to the states of mind of the deputies at the scene, and particularly to the state of mind of Deputy Caudillo during his encounter with Lewis and at the time that he shot Lewis.  Defense counsel should be allowed to discuss the Probable Cause Alert in opening statement and to display the Probable Cause Alert document to the jury during opening statement.  The Probable Cause Alert is also relevant to the Estate's claim for damages for 4th Amendment excessive force, demonstrating Lewis's lifestyle dedication to gun violence and being a fugitive.  The Probable Cause Alert is also relevant to Lewis's parents' wrongful death claim for damages for the loss of a son that has chosen a life of crime.

///

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

DATED this 29th day of July, 2026.

*AUDILETT LAW PC*

/s/ Daryl A. Audilett

_____

Daryl A. Audilett
Attorney for Defendants Nanos, Caudillo, Moseley
and Pima County

HUMPHREY & PETERSEN, P.C.

/s/  Andrew J. Petersen

_____

Andrew J. Petersen
Attorney for Defendants Nanos, Caudillo,
Moseley and Pima County

CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Eduardo H. Coronado, Esq.
Coronado Law Firm, P.L.L.C.
4700 W. White Mountain Boulevard, Suite A
Lakeside, AZ 85929
**Attorney for Plaintiffs**

Andrew J. Petersen, Esq.
Humphrey & Petersen, P.C.
6063 E. Grant Road
Tucson, AZ 85712
**Co-counsel for Defendants**

By /s/ Karen Audilett

12