*AUDILETT LAW PC*
P O Box 12308
Tucson, AZ 85732-2308
(520) 349-5468
Email: daa@audilettlaw.com
Daryl A. Audilett, Esq.
State Bar No. 009007; PCC No. 2036
Attorney for Defendants Nanos, Caudillo, and Pima County

HUMPHREY & PETERSEN, P.C.
6063 E. Grant Road
Tucson AZ 85712
(520) 795-1900
Email: apetersen@humphreyandpetersen.com
Andrew J. Petersen, State Bar No. 016699
Co-counsel for Defendants Nanos, Caudillo, and Pima County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anna Christine Lewis, et al., | NO. CV 21-00557-TUC-RM |
| Plaintiffs, | DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION IN LIMINE RE: BODY WORN CAMERAS |
| vs. | |
| Chris Nanos, et al., | (Doc. 143) |
| Defendants. | (The Honorable Rosemary Márquez) |

Defendants respond to Plaintiffs' motion in limine requesting an Order from the Court "permitting Plaintiffs to refer to the fact that neither Sergeant Moseley nor Deputy Caudillo was wearing an operating body camera at the time leading up to and including the shooting of Mr. Lewis."

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

Defendants request that the Court review this motion in limine in conjunction with Defendants' Motion in Limine No. 6, To Preclude Mention of, Reference to, or Discussion about the Lack of Body-Worn Cameras or Vehicle Dash Cameras, or that After the Shooting PCSD Uses Body-Worn Cameras. (Doc. 113.) Defendants incorporate by reference herein that motion and its exhibits in their entirety.

Plaintiffs' motion states: "The Pima County Sheriff issues body cameras to its personnel. For whatever reason, the cameras were not operating at a critical moment in this case. No explanation for this has been provided. Obviously the footage would have been helpful to sort out what happened." (Plaintiffs' Motion in Limine re: Police Body Cameras, Doc. 143, p. 1:26-29.) The suggestion that at the time of this incident, the deputies in question had been issued body cameras, but they were not turned on during this incident, is a patently false statement.

A claim against a department for not providing its officers body/dash cameras clearly falls under the rubric of *Monell* claims involving "policy, custom, or use" and/or "training and supervision." Those claims were all dismissed in the Court's Order ruling on Defendants' Motion for Summary Judgment. (*See* Doc. 85, pp. 31-36.)

Plaintiffs argue that people on the jury will know that police wear body cameras and will ask about that. When Courts advise the jury that jurors may ask questions, the jury is typically told that a question may not be answered because of court rulings or rules of evidence. If a juror has a question about cameras, a common Court response to a question about a subject that has been precluded is simply to advise the jury that they must consider

2

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

the case based on the evidence that is presented, or to tell the jury that it won't be answered due to court rulings. Another way to approach the question is to tell the jury the deputies did not have body worn cameras, that the Pima County Sheriff's Department was not using body worn cameras at the time. And then stop the camera discussion in its tracks right there. Prohibit Plaintiffs' counsel from any further discussion of cameras. Prohibit Plaintiffs' counsel from asking any witnesses about cameras. Prohibit Plaintiffs' counsel from suggesting or implying or arguing that having cameras would have helped understand what happened.

The fact is that the deputies had not been provided body cameras at the time of this January 20, 2021 shooting incident. Nor did dashboard mounted cameras exist in the patrol units. Plaintiffs' counsel has known this from the beginning. In the Second Amended Complaint, (Doc. 14), Plaintiffs alleged:

61.    Pima County Sheriff Nanos has been adamant, until after Alex's death, that body worn cameras and patrol vehicle dashboard cameras are unnecessary. This encourages deputies to be less vigilant regarding their duties to the community. Therefore, deputies are not constrained to act as reasonable prudent law enforcement officers would act. It is unconscionable that in 2021, The Pima County Sheriff's Department, the seventh largest sheriff's department in the United States, does not provide and require body worn cameras for its deputies.

62. Pima County Sheriff Chris Nanos, on or about January 30, 2015, while the Chief Deputy for the Pima County Sheriff's Department, rationalized that body worn cameras were unnecessary because, he said, "If you're buying cameras to make your staff comply with the rules, you have bigger problems."

(Second Amended Complaint, Doc. 14, ¶¶ 61, 62.)

3

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

Plaintiffs' desire to cross-examine the deputies about body cameras and/or dashboard mounted cameras is a classic example of "cross-examination by insinuation" which Defendants requested be precluded in Motion in Limine No. 26: To Preclude Counsel from Injecting Personal Belief or Testimony and Engaging in Cross-Examination by Insinuation (Doc. 133).    Asking deputies about cameras that had not been issued, and suggesting that having them would have been helpful, is solely designed to insinuate a failing on the part of PCSD.    That cannot serve as a basis for liability in this case.    Asking about cameras deceptively implies that not having cameras was remiss or that cameras were purposely withheld from deputies in order to hide deputy misconduct. That is deceitful and should not be permitted. FRE 403 precludes mention or reference to cameras or lack of cameras.  Any probative value (there is none) is substantially outweighed by unfair prejudice, confusing the issues, and misleading the jury.

There is no police expert testimony in this case that law enforcement standard of care requires officers to have body-worn cameras or dash-mounted cameras.  Plaintiffs' police expert Harmening does not opine that.  Defendants' police expert Steve Ijames discussed cameras in his report, because in the Second Amended Complaint, Plaintiffs stated that the failure to provide deputies with body worn cameras is "unconscionable" and suggested that the lack of cameras encourages deputies to be less vigilant. (Doc 14, ¶¶ 61-62.)  Defense police Steve Ijames therefore addressed those contentions in his written expert report as follows:

4

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

**Opinion eight**:

The failure to provide deputies with body worn cameras (BWC) is not "unconscionable", and it does not encourage deputies to be less vigilant regarding their duties to their community

**Opinion eight is based on the following information:**

Body worn cameras are in use to some degree by over 50% of the police agencies nationwide, and objective studies have shown varying degrees of benefit when compared to the significant costs involved. A 2022 report from the National Institute of Justice noted the following:

"Body-worn cameras are widely used by state and local law enforcement agencies in the United States. They are worn principally by officers in the performance of duties that require open and direct contact with the public. Despite their widespread and growing adoption, the current evidence regarding the effectiveness of body-worn cameras is mixed. Some studies suggest that body-worn cameras may offer benefits while others show either no impact or possible negative effects. The mixed results of these studies strongly imply that additional research is needed. In particular, more studies employing randomized control trials are needed."

According to a 2018 BJS (Bureau of Justice Statistics) report, the main reasons that local police and sheriffs' department acquired body-worn cameras were to improve officer safety, increase evidence quality, reduce civilian complaints, and reduce agency liability. Agencies not using body-worn cameras stated that cost (hardware acquisition, video storage, system maintenance) was the primary disincentive.

Body-worn cameras systems (initial purchase, storage, system maintenance) are very expensive, and many law enforcement agencies do not have adequate funding to acquire them. Other agencies, in consideration of the

5

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

yet to be objectively proven benefits compared to the cost, have considered competing financial priorities and more pressing operational needs, and decided against acquiring body-worn camera systems at this time. This does not mean the agency has made an "unconscionable" decision. This means that the agency has considered their operational needs and fiscal reality, and made a decision they believe is in the best interest of the organization and community they serve at that time.

There is no national standard that requires law enforcement agencies to use body worn cameras and as referenced above, a significant number of agencies do not use them or consider them worth the cost when compared to other items. It is important to note that at the time of this incident the "premier" law enforcement agencies in the United States (FBI, DEA, Secret Service, US Marshals) did not use body-worn cameras, and generally prohibited local task force officers from using their host agency BWC on joint operations. I am a graduate of the FBI National Academy and have served as a commissioned US Marshal on various task forces. I have in depth knowledge of the referenced agencies, and I am confident they would not withhold equipment from their agents that would "encourage them to be less vigilant regarding their duties to their community". I likewise found nothing in the material reviewed to suggest or indicate that the lack of body-worn cameras in Pima County encouraged deputies to be less vigilant regarding their duties to their community.

(Exhibit A to Defendants' Motion in Limine 6, To Preclude Mention of, Reference to, or Discussion About the Lack of Body-worn Cameras or Vehicle Dash Cameras, or That After the Shooting PCSD Uses Body-Worn Cameras, Steve Ijames expert report, pp. 29-30 (Doc 113-2, pp. 1-4.))

6

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

The fact is that since the Lewis shooting, starting sometime afterwards, PCSD has begun to use body-worn cameras. That evidence is precluded by Rule of Evidence 407 – Subsequent Remedial Measures. It states in part: "When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence, culpable conduct."

### CONCLUSION

The lack of body-worn cameras or vehicle dash-mounted cameras is not relevant and is precluded by Rules of Evidence 401 and 402. There is no expert testimony that the use of these cameras is required by law enforcement standard of care. Any mention of, reference to, or presentation of lack of cameras is precluded by Rule of Evidence 403. Any probative value (there is none) is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time. Rule of Evidence 407 Subsequent Remedial Measures bars evidence that PCSD now uses body worn cameras. Defendants request that the Court preclude any mention of, reference to, or presentation of cameras, or the lack of body worn cameras or vehicle dash-mounted cameras. Defendants also request that the Court preclude any mention of, reference to, or presentation of evidence that PCSD now uses body-worn cameras.

///

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

DATED this 29th day of July, 2026.

*AUDILETT LAW PC*

/s/ Daryl A. Audilett

_____

Daryl A. Audilett
Attorney for Defendants Nanos, Caudillo, Moseley
and Pima County

HUMPHREY & PETERSEN, P.C.

/s/  Andrew J. Petersen

_____

Andrew J. Petersen
Attorney for Defendants Nanos, Caudillo,
Moseley and Pima County

CERTIFICATE OF SERVICE

I hereby certify that on July  29, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Eduardo H. Coronado, Esq.
Coronado Law Firm, P.L.L.C.
4700 W. White Mountain Boulevard, Suite A
Lakeside, AZ 85929
**Attorney for Plaintiffs**

Andrew J. Petersen, Esq.
Humphrey & Petersen, P.C.
6063 E. Grant Road
Tucson, AZ 85712
**Co-counsel for Defendants**

By /s/ Karen Audilett

8