*AUDILETT LAW PC*
P O Box 12308
Tucson, AZ 85732-2308
(520) 349-5468
Email: daa@audilettlaw.com
Daryl A. Audilett, Esq.
State Bar No. 009007; PCC No. 2036
Attorney for Defendants Nanos, Caudillo, and Pima County

HUMPHREY & PETERSEN, P.C.
6063 E. Grant Road
Tucson AZ 85712
(520) 795-1900
Email: apetersen@humphreyandpetersen.com
Andrew J. Petersen, Esq.
State Bar No. 016699
Co-counsel for Defendants Nanos, Caudillo, and Pima County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anna Christine Lewis, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>Chris Nanos, et al.,<br><br>Defendants. | NO. CV 21-00557-TUC-RM<br><br>DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION IN LIMINE RE: VIDEO ANIMATION<br><br>(Doc. 144)<br><br>(The Honorable Rosemary Márquez) |

Defendants respond to Plaintiffs' motion in limine for an Order from the Court "permitting the introduction into evidence at trial of a computer-generated animation video that depicts Mr. Lewis's movements from the time he exited his vehicle until he was shot and fell to the ground."

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

**<u>Untimely F.R.Civ.P. 26 (a)(2)(B)(i) – (vi) Expert Disclosure Precludes the Animations</u>**

Plaintiffs' failure to comply with the expert witness rule, F.R.Civ.P 26(a)(2)(B) precludes the animation videos. Plaintiffs' expert witness disclosure deadline was September 15, 2023. (Doc. 33.)  The rebuttal expert deadline was November 30, 2023.  (Doc. 49.) Plaintiffs added Samir Lyons to their list of expert witnesses in their First Supplemental Disclosure Statement dated September 15, 2023. That September 15, 2023 disclosure contained Mr. Lyons' CV as Exhibit 59, and an Exhibit 60, Trajectory Stills from Trial Ready Pro, pp. 002290 – 002303, 13 pages of computer-created animation-like still photos. Plaintiffs did not disclose a written expert report, case list, or fee schedule as required by Rule 26(a)(2)(B).

Mr. Lyons' animations were disclosed by Plaintiffs as Exhibits 79 through 86 in Plaintiffs' Fifth Supplemental Disclosure Statement dated January 4, 2024, the day before the discovery deadline in the case, January 5, 2024.  (Doc. 49.) That disclosure was approximately 3.5 months after Plaintiffs' expert deadline.  No Rule 26 written expert report, case list, or fee schedule was disclosed.

Plaintiffs finally disclosed Mr. Lyons' "Rule 26 Report," case list, and fee schedule, on April 23, 2026, over two and one-half years after their expert deadline and over two years past the final discovery deadline. A copy of the Report is attached hereto as Exhibit A.

An expert witness who has not been timely disclosed will not be permitted to testify unless the party offering such witness demonstrates that: (a) the necessity of such expert witness could not have been reasonably anticipated at the time of the deadline for disclosing

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

such expert witness; (b) the Court and opposing counsel or unrepresented party were promptly notified upon discovery of such expert witness; and (c) such expert witness was promptly proffered for deposition. See *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005). None of the exceptions apply here.

Case Management Order deadlines and deadline extensions allowed by the Court are firm, real, and to be taken seriously by the parties and their counsel. A district court does not abuse its discretion in excluding an expert witness report filed six weeks late, where the plaintiff did not seek an extension and failed to justify his disregard for the court's scheduling order. *Quevedo v. Trans-Pac. Shipping, Inc.*, 143 F3d 1255, 1258 (9th Cir. 1998).

Sanctions for violation of Rule 26(a) are set forth in Rule 37(c), which provides that when a party fails to make the disclosures required by Rule 26(a), the party is not allowed to use the witness to supply evidence on a motion, at a hearing, or at trial, unless it establishes that the failure was substantially justified or is harmless. *Pineda v. City and County of San Francisco*, 280 F.R.D. 517, 520 (2012). *See also, Carr v. Deeds*, 453 F.3d 593, 602 (4th Cir. 2006) and *Yeti by Molly Ltd. V. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-1107 (9th Cir. 2001).

Plaintiffs' failure to comply with F.R.Civ.P. 26(a)(2)(B)(i) – (vi) is neither justified nor harmless. Plaintiffs never asked the Court for extensions, in which justifications were stated. The expert exhibits, i.e., computer generated animations and computer-generated stills, can be very powerful tools of persuasion if the jury is allowed to see them. Their untimeliness eliminated Defendants' opportunities to challenge them with opposing experts.

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

**The Animations Do Not Fairly and Accurately Depict the Shooting**

Computer animations can be admissible, if the proper foundation is laid. *See, Friend v. Time Mfg. Co.* , No. 03-343-TUC-CKJ, 2006 WL 2135807, at *20 (D. Ariz. July 28, 2006) (citing *Byrd v. Guess* , 137 F.3d 1126 (9th Cir. 1998) ). "At a minimum, the animation's proponent must show the computer simulation **fairly and accurately depicts what it represents**, whether the computer expert who prepared it or some other witness who is qualified to so testify, and the opposing party must be afforded an opportunity for cross-examination." Id. *Krause v. County of Mohave*, 459 F.Supp. 1258, 1271 (D. Ariz. 2020). (Emphasis added.)

The standard, "**fairly and accurately depicts what it represents**", must be strictly enforced to safeguard fundamental fairness.  That standard is necessary to satisfy FRE 401, 402, 403, and 702. Defendants identify below many disparate and inaccurate features of the animations that demonstrate a failure to fairly and accurately depict the shooting event.

The persuasive power of animations commands that they be carefully examined and scrutinized for proper foundation, relevancy and the potential for undue prejudice. The trial judge should review the video outside of the jury's hearing. *Brandt v. French*, 638 F.2d 209, 212 (10th Cir.1981).

The animations' inaccuracies include:

1.      Lewis's speed is slower (some level of slow motion) than the frantic, full-out sprint described by Sgt. Moseley and Deputy Caudillo.  This was a very high stress, adrenaline driven, rapidly fluid, dynamic event.  There is no indication that any of those

4

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

factors were incorporated into Lewis's movements in the video. It is obvious to any viewer that they were not.

2.      Lewis's physical build does not match Lewis's 6-foot tall, 140-pounds described in the autopsy report, and depicted in the Morning Jewel surveillance videos.

3.      Lewis is "shirtless" in some of the videos, but was wearing a t-shirt at the shooting, the same t-shirt worn in the Morning Jewel videos.

4.      Lewis is wearing long pants in the animations. Lewis was wearing black shorts at the shooting, matching the shorts Lewis wore in the Morning Jewel videos.

5.      The animations do not show events through Deputy Caudillo's eyes.

6.      The Sgt. Moseley animations contain the same clothing errors, physical build errors, speed errors, lighting errors. They do not show events through Sgt. Moseley's eyes.

7.      The animations do not depict Lewis's arm movements that Deputy Caudillo described.

8.      The lighting is not accurate. Both Sgt. Moseley's and Deputy Caudillo's car roof-mounted red and blue flashing lights were on at the time of the shooting, creating flashes of colored light and shadow. That is true even if the white light "take down" lights on the car roof-mounted light bar were illuminated.

9.      None of the animations depict the key fob and lanyard being held in Lewis's right hand the way that Deputy Caudillo has described from the beginning in his January 25, 2021 statement. At his deposition, Deputy Caudillo demonstrated how he saw the "black object" (key fob) sitting on the index finger and thumb of Lewis's right hand.

5

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

10. The animations suggest that Deputy Caudillo saw Lewis exit his truck. Caudillo did not see that. That occurred while Caudillo was still sitting in his driver's seat. The angle of Caudillo's vehicle parked behind Lewis's truck prevented Caudillo from seeing Lewis exit his truck. The animation demonstrating that Caudillo saw Lewis exit his truck, extends twofold the timeframe that Caudillo observed Lewis. Caudillo had one-half the time shown by the animation to react to Lewis.

When Plaintiffs produced the animations in question, Deputy Caudillo reviewed them and executed a "DECLARATION OF GILBERTO CAUDILLO" on April 15, 2024. In the Declaration, Caudillo also critiqued Plaintiffs' expert Peles's live person video reenactments, and had some of the same criticisms of the Samir Lyons animations.

The Declaration of Gilberto Caudillo is attached here as Exhibit B. It states:

1. My name is Gilberto Caudillo. I am a 23-year deputy (now Sergeant) with the Pima County Sheriff's Department. On January 20, 2021 I shot Bradley Alexander Lewis (hereafter "Lewis") with my Pima County Sheriff Department issued Glock 17 9mm handgun. At the time that I shot Lewis, I believed that the black object in his hand was a handgun. I was in genuine fear of losing my life. I believed at that time that Lewis posed a threat of death or serious bodily harm to me and to others in the vicinity.

2. I am a defendant in the lawsuit captioned Lewis, et al v. Chris Nanos, et al, No. CV-21-00557-TUC-RM.

3. I am aware that reconstruction videos created by Plaintiffs' expert Dr. Joseph Peles (Plaintiffs' PSSOF Ex 21) attempt to depict what I saw in the moments before I fired three gunshots at Bradley Alexander Lewis ("Lewis") on January 20, 2021.

4. The Dr. Peles reconstruction videos do not demonstrate what I saw and experienced. None of the videos show what I saw when I saw Lewis moving rapidly toward me, leaping and twisting to get through the gap between the vehicles.

6

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

5. The Dr. Peles videos do not replicate the darkness interspersed with other bright lights and shadow areas and flashing red and blue lights from my patrol vehicle.

6. The Dr. Peles videos do not show the fast speed at which Lewis came at me. The actor in the videos appears to be moving much slower, taking his time moving from the truck door to the narrowest gap between the two trucks.

7. The actor in the Dr. Peles videos does not have the same weight and body type that Lewis had. The actor weighs 155 pounds according to the information provided by Dr. Peles. Lewis weighed 140 pounds according to the Autopsy performed on January 21, 2021, and the Autopsy Report prepared by Pima County Forensic Pathologist Dr. David Winston.

8. The weight and body type of Lewis on January 20, 2021 is more accurately depicted in the videos of Lewis engaged in the car burglary attempts that morning prior to the shooting.

9. Lewis was tall, very thin, and very light on his feet, as depicted in the car burglary videos. This would have enabled him to move through the area between the two trucks very smoothly, very quickly, very athletically and virtually effortlessly. The actor in the Dr. Peles videos moves slowly, at a slow pace, with no sense of urgency. The Dr. Peles videos misrepresent what I saw.

10. I have reviewed the Samir Lyons 3D Animation Videos (Plaintiffs' PSSOF Ex 32), Those videos do not accurately depict what I saw and experienced in the moments before firing three gunshots at Lewis.

11. As with the Dr. Peles videos, the Samir Lyons animation videos do not capture the speed or fluidity of Lewis's movements advancing towards me.

12. Lewis appeared much thinner in body type than the animation model. Lewis advanced on me at greater speed, more athletically, more smoothly, and more effortlessly in a leaping motion through the area between the two trucks.

13. The Samir Lyons animation video clips that show Sgt. Moseley with his firearm slowly following/tracking Lewis demonstrate the inaccuracy of the animation video clips. I have recently reviewed the portion of Sgt. Moseley's videotaped deposition where Moseley stood up and demonstrated the very brief view he had of Lewis when Lewis exited his truck and bolted toward me. The Samir Lyons videos show Sgt. Moseley holding his gun and following/tracking Lewis in slow motion. Sgt. Moseley's videotaped demonstration shows Sgt. Moseley's movement being at best a split second or less.

14. Sgt. Moseley's demonstration of his movement in his videotaped deposition is consistent with the speed at which I perceived Lewis advancing toward me.

7

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

15.    The Samir Lyons animation video clips that show Lewis to be shirtless do not represent what I saw.  Lewis was not shirtless.

16.    The Samir Lyons animation video clips do not capture the environment associated with an area that all at the same time contains darkness, some bright lights, flashing red and blue lights, and areas of shadow.

17.    The Samir Lyons videos do not accurately represent what I experienced in the moments before the shooting and at the time I fired three gunshots at Lewis.

18.    The Samir Lyons 3D animation videos do not accurately depict my actions immediately after I fired the three shots.  The videos show me immediately approaching Lewis.  I did not.  I immediately retreated to the rear of my patrol vehicle for cover, followed by giving commands for Lewis to show me his hands.

19.   None of the Dr. Peles reconstruction videos or the Samir Lyons 3D animation videos depict my point of view, that is, the event as seen through my eyes at my eye level and position.

## CONCLUSION

Plaintiffs' motion should be denied.  The animations are not admissible. Plaintiffs failed to timely disclose their animation expert documents.   Plaintiffs fail to meet the minimum foundation required for admitting the animation into evidence.  FRE 401, 402, and 403 preclude the evidence due to a substantial danger of unfair prejudice, confusing the issues, and misleading the jury.

DATED this 29th day of July, 2026.

*AUDILETT LAW PC*

/s/ Daryl A. Audilett

_____

Daryl A. Audilett
Attorney for Defendants Nanos, Caudillo, Moseley and Pima County

8

*Lewis v. Nanos, et al.*
United States District Court No. CV 21-557-TUC-RM

HUMPHREY & PETERSEN, P.C.

/s/  Andrew J. Petersen

_____
Andrew J. Petersen
Attorney for Defendants Nanos, Caudillo,
Moseley and Pima County

CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Eduardo H. Coronado, Esq.
Coronado Law Firm, P.L.L.C.
4700 W. White Mountain Boulevard, Suite A
Lakeside, AZ 85929
**Attorney for Plaintiffs**

Andrew J. Petersen, Esq.
Humphrey & Petersen, P.C.
6063 E. Grant Road
Tucson, AZ 85712
**Co-counsel for Defendants**

By /s/ Karen Audilett