# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anna Christine Lewis, et al.,<br>Plaintiffs,<br>vs.<br>Chris Nanos, et al.,<br>Defendants. | NO. CV 21-00557-TUC-RM<br><br>AMENDED JOINT PROPOSED FINAL PRETRIAL ORDER<br><br>(The Honorable Rosemary Márquez) |

Pursuant to the Court's 4-10-2026 Order (Doc. 96) and the attached Form of Pretrial Order, the parties submit the following Amended Joint Proposed Final Pretrial Order to be considered at the Pretrial Conference.

## A. TRIAL COUNSEL FOR THE PARTIES

Plaintiffs: Eduardo H. Coronado, Esq.
Coronado Law Firm, P.L.L.C.
4700 W. White Mountain Boulevard, Suite A
Lakeside, AZ 85929
928-532-4529 phone
928-532-0753 fax
eduardocoronado@frontier.com
coronadolawfirmaz@gmail.com

Defendants: Daryl Audilett, Esq.
Audilett Law PC
P O Box 12308
Tucson AZ 85732-2308
520-349-5468 phone
daa@audilettlaw.com

Andrew J. Petersen, Esq.
Humphrey & Petersen, P.C.
6063 E. Grant Road
Tucson, AZ 85712
520-795-1900 phone
apetersen@humphreyandpetersen.com

**B. STATEMENT OF JURISDICTION**

Among the remaining claims in the Second Amended Complaint is the Estate of Bradley Lewis's Fourth Amendment excessive force claim in Count One against Defendant Caudillo. This Court has original jurisdiction over Plaintiffs' lawsuit under 28 U.S.C § 1343(a)(3) and 28 U.S.C. § 1331. Plaintiffs have state law claims. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**C. STIPULATIONS AND UNCONTESTED FACTS AND LAW**

**I. Material facts admitted by the parties and will require no proof:**

1. Bradley Alexander Lewis was 19 years old at the time of the fatal shooting in the pre-dawn hours of January 20, 2021.

2. The shooting occurred in the driveway of a residence owned by Ralph and Helen Stricklen.

3. The Stricklen residence address is 6671 N. Paseo De Angel in Tucson, Pima County, Arizona.

**II. Material facts that, although not admitted, will not be contested at trial by evidence to the contrary:**

1. On January 20, 2021, Bradley Alexander Lewis was in possession of a new

blue in color Toyota Tacoma with paper plates attached to the rear bumper.

2. The residence at 6671 N. Paseo De Angel is the home of Bradley Lewis's grandparents Ralph and Helen Stricklen.

3. On or about December 18, 2020, PCSD Detective Chamonix Valdez created the contents of, and issued, and distributed a "Probable Cause Alert" authorizing the arrest of Bradley Lewis for Assault With A Deadly Weapon (AWDW) based on an incident on December 4, 2020.

4. At approximately 6 a.m. on the morning of January 20, 2021, Sgt. Michael Moseley, Deputy Gilberto Caudillo, and other PCSD deputies began their duty shift.

5. Sgt. Moseley located Mr. Lewis's blue Toyota Tacoma truck with paper plates parked on the side of Paseo de Angel, a residential street.

6. Mr. Lewis's blue Toyota Tacoma truck was parked a few hundred yards from his grandparents', Ralph and Helen Stricklens', residence, off to the left side of the street facing the oncoming traffic lane.

7. At this time, predawn darkness existed, and there was no street lighting.

8. The blue Toyota Tacoma truck's engine was not running, nor were any truck lights illuminated.

9. The truck cab windows were darkly tinted, preventing the ability to see inside the truck.

10. Additional deputies arrived.

11. Sgt. Moseley and two deputies were positioned behind Mr. Lewis's truck, and used felony stop protocol. With their weapons drawn and using a patrol vehicle for cover, they commanded Lewis, using his name, to get out of his truck with his hands up.

12. Deputy Gilberto Caudillo arrived and discussed tactics with Sgt. Moseley.

13. Mr. Lewis started his truck, reversed it to create space from Deputy Caudillo's patrol unit, then drove forward around Deputy Caudillo's patrol unit, driving on N Paseo De Angel in the direction of the residence of his grandparents, the Stricklens.

14. Driving forward around the front of Deputy Caudillo's patrol unit, Mr. Lewis drove over and through desert brush, puncturing his left rear tire in the process.

15. Sgt. Moseley immediately drove his patrol unit in pursuit of Mr. Lewis.

16. Mr. Lewis drove into the Stricklens' driveway, then stopped near the bottom of the driveway and reversed his truck.

17. Sgt. Moseley drove his patrol unit forward to block Mr. Lewis from reversing out of the driveway.

18. In doing so, Sgt. Moseley's patrol unit contacted the rear of Mr. Lewis's truck.

19. Mr. Lewis then drove his truck further up the driveway with Sgt. Moseley following closely.

20. Mr. Lewis stopped in between his grandfather's Ford 150 pickup truck and the garage. At its narrowest point, the gap between Mr. Lewis' Toyota and Mr. Stricklen's Ford was 8 inches.

21. Sgt. Moseley exited his patrol car and moved up the driver's side of Ralph Stricklen's Ford F150 pickup truck that was parked parallel to Mr. Lewis's truck.

22. Sgt. Moseley positioned himself on the F150 driver's side.

23. Sgt. Moseley saw Mr. Lewis exit his truck through the driver's door and head to the rear of his blue truck.

24. Sgt. Moseley's view of Mr. Lewis was fleeting, just a flash, a split second or less, and then Mr. Lewis was out of Sgt. Moseley's view, which was blocked by the F150 truck cab and camper shell.

25. When Sgt. Moseley saw Mr. Lewis exit the vehicle he shouted to deputies "Watch out! Watch out!" and did not fire his weapon.

26. When Mr. Lewis exited his truck, Deputy Caudillo had already stopped his patrol unit several feet behind Mr. Lewis's truck.

27. While still seated, Deputy Caudillo saw Mr. Lewis coming toward him.

28. Deputy Caudillo was aware that Mr. Lewis had prior contacts with law enforcement.

29. Deputy Caudillo was aware of the Probable Cause Alert for Assault with a Deadly Weapon (AWDW).

30. Deputy Caudillo opened his door, stepped his left foot onto the ground, while unholstering his handgun, stood and pointed his handgun through the "V" formed by the edge of the driver's door and the "A" pillar.

31. Deputy Caudillo fired three rounds at Mr. Lewis from Deputy Caudillo's Glock

9mm handgun.

32. Deputy Caudillo had extensive training in the use of a Glock 9mm handgun and had trained other law enforcement personnel in the use of a Glock 9mm handgun.

33. One of the rounds hit Mr. Lewis in the lateral aspect of his right shoulder.

34. One of the rounds hit Mr. Stricklen's vehicle.

35. One of the rounds grazed Mr. Lewis' left forearm.

36. Deputy Caudillo dragged Mr. Lewis to a more open area alongside Sgt. Moseley's patrol unit to render aid.

37. Mr. Lewis landed on top of his right hand. He was ordered to show his hands and he pulled his right arm out from underneath him. A black key fob with a lanyard was in his right hand.

38. After showing his hands, Mr. Lewis lost consciousness.

39. Deputies administered CPR while waiting for Northwest Fire and medical personnel to arrive. Efforts to revive him were unsuccessful.

40. Mr. Lewis died as a direct and proximate result of a bullet fired by Deputy Caudillo that entered his body through his right shoulder area.

**III. Issues of law that are uncontested and stipulated to by the parties:**

1. The 4th Amendment to the United States Constitution: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.

2. *Graham v. Connor*, 490 U.S. 386 (1989) holds that in the law enforcement use of force context, the issue is whether the officer's use of force was "objectively reasonable" under all the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. The question is whether the totality of the circumstances justifies a particular sort of seizure. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.

In the deadly force context, the Court cannot simply accept what may be a self-serving account by the police officer." *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014). "When a suspect is killed and cannot himself provide an account of what took place, we must examine whether the officers' accounts are consistent with other known facts." *Longoria v. Pinal Cnty*., 873 F.3d 699, at 708.

3. Qualified Immunity protects police officers from liability for all but the plainly incompetent or those who knowingly violate the law. The Qualified Immunity analysis involves two prongs. Prong 1 requires finding whether a constitutional violation has in fact occurred. If no constitutional violation occurred, there is no liability. If a constitutional violation occurred, then Prong 2 requires determining whether the unconstitutional conduct

was "clearly established" by law existing at the time of the conduct. If the law was not clearly established, there is no liability. General pronouncements of the law are not sufficient to satisfy the "clearly established law" standard. The clearly established law must be "beyond debate" and the underlying facts must be sufficiently similar to put every reasonable officer on notice that his conduct is unconstitutional. *Saucier v. Katz*, 533 U.S. 194 (2001); *Pearson v. Callahan*, 555 U.S. 223 (2009).

There "need not be a prior case directly on point, so long as there is precedent placing the statutory or constitutional question beyond debate." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1140–41 (9th Cir. 2019). The long-established principle that a "police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). "Few things in our case law are as clearly established as the principle that an officer may not seize an unarmed, nondangerous suspect by shooting him dead in the absence of probable cause to believe that the fleeing suspect poses a threat of serious physical harm, either to the officer or to others." *Torres v. City of Madera*, 648 F.3d 1119, 1128 (9th Cir. 2011).

4. Officer Caudillo had a right to qualified immunity for his actions unless he acted in violation of existing law of which he was aware at the time he acted. The Qualified Immunity analysis involves two prongs. Prong 1 requires finding whether a constitutional violation has in fact occurred. If no constitutional violation occurred, there is no liability. If a constitutional violation occurred, then Prong 2 requires determining whether the

unconstitutional conduct was "clearly established" by law existing at the time of the conduct. If the law was not clearly established, there is no liability.

5. Arizona recognizes common law qualified immunity, sometimes referred to as "discretionary immunity" for an officer's deliberate choice. *Spooner v. City of Phoenix*, 246 Ariz. 119, 124 ¶ 10 (2018) ("a police officer performing a discretionary act encompassed within her public duties is shielded from liability for simple negligence"). Arizona common law qualified immunity protects officers from tort liability if their discretionary acts involve judgment and deliberation, however brief. See, *Ryan v. City of Tempe*, 190 Ariz. 129 (Ct. App. 1997).

6. ARS § 13-409 states that a police officer is justified in using physical force when they reasonably believe it is necessary to make an arrest, detain a person, or prevent an escape from custody.

7. ARS § 13-410 states that a police officer may use deadly physical force when they reasonably believe it is necessary to defend themselves or a third person from the actual or imminent use of deadly physical force; to effect an arrest or prevent the escape of a person whom the officer has probable cause to believe has committed, attempted to commit, or is committing a felony involving the use or threatened use of a deadly weapon; apprehend a person who is attempting to escape by using a deadly weapon; apprehend a person who, through past or present conduct, is known to the officer to be likely to endanger human life or inflict serious bodily injury unless apprehended without delay.

8. If the Defendants violated Plaintiff's constitutional rights while acting under

color of state law, they are civilly liable for damages caused by such violation pursuant to 42 USC Section 1983.

9. Officer Caudillo had a right to qualified immunity for his actions unless he acted in violation of existing law of which he was aware at the time he acted.

10. If the Defendants violated Lewis's constitutional rights while acting under color of state law, they are civilly liable for damages caused by such violation pursuant to 42 USC Section 1983.

**D. CONTESTED ISSUES OF FACT AND LAW**

**I. Issues of fact to be tried and decided:**

Issue 1: Whether at some time before the shooting, Anna Christine Lewis (aka Anita) warned next door neighbor Traci Caruthers to have her daughter avoid Anna's son Bradley Alexander Lewis because he was bad news.

Plaintiffs contend: This issue is irrelevant and Plaintiff will object to any evidence being introduced on the subject at trial.

Defendants contend: Traci Caruthers reported in a post-shooting interview with detectives that this conversation occurred on an occasion before the shooting. Traci reported that Anna Lewis (aka Anita) said Traci needed to tell her daughter to be careful and to watch out, that Bradley Alexander Lewis was bad news. Relevant to familial relationships and damages.

Issue 2: The speed at which Mr. Lewis was advancing on Deputy Caudillo.

Plaintiffs contend: Due to the narrow space between the Lewis vehicle and the Stricklen vehicle, and Mr. Lewis' size, it would have been impossible for him to "charge" in Deputy Caudillo's direction as established by Plaintiff's experts. Also Deputy Caudillo did not see Mr. Lewis when he first exited the Toyota.

Defendants contend: Sgt. Moseley described Mr. Lewis exiting the truck lightning fast and sprinting rearward. Deputy Caudillo described Mr. Lewis "flying at me;" "he was pushing his body at top speed." Plaintiffs' biomechanical expert Peles opined that 2.4 to 4 seconds elapsed between the time Mr. Lewis exited his truck and the time that he arrived at the left rear corner of the Toyota truck bed.

Issue 3: Mr. Lewis's body positions during the pre-shooting and shooting event.

Plaintiffs contend: At the time Deputy Caudillo fired, one of Mr. Lewis' hands was raised. The bullet's trajectory into and through Lewis's torso indicate that Lewis was falling forward, diving, or otherwise moving toward the ground when the fatal bullet was fired, as established by the autopsy and Plaintiffs' experts.

Defendants contend: Mr. Lewis was in constant rapid motion from the time he exited his truck as he advanced toward Deputy Caudillo. The fatal bullet entered the lateral aspect of Mr. Lewis's right shoulder at a slight downward angle. Mr. Lewis may have been ducking under the right side exterior rearview mirror of the Stricklens' Ford F150, or leaning forward to clear the gap between the two trucks.

Issue 4: Why Mr. Lewis advanced on Deputy Caudillo instead of running away from Deputy Caudillo and Sgt. Moseley.

Plaintiffs contend: Plaintiff's experts have established that Mr. Lewis did not see Deputy Caudillo when he exited the Toyota so he would not have chosen between "advancing" and "running away." Further, Sgt. Moseley testified that he had never seen a suspect flee (as Mr. Lewis did) and then suddenly change course and attack. When Mr. Lewis exited the Toyota, his only clear path to run away was rearward; he would have had to stop and close the driver's side door before he could run away toward the front of the Toyota.

Defendants contend: Only Mr. Lewis knows why he ran at Deputy Caudillo instead of running away from Deputy Caudillo. Mr. Lewis's conduct caused Deputy Caudillo to reasonably believe that he was under attack by Mr. Lewis. In all their years in law enforcement and pursuing suspects, neither Sgt. Moseley nor Deputy Caudillo had ever experienced a suspect being pursued suddenly turn and advance toward them.

Issue 5: Whether Sgt. Moseley felt in fear for his life during the pursuit of Mr. Lewis.

Plaintiffs contend: He did not, as he indicated during an initial/original interview. Moseley said in the original interview that Lewis never posed a deadly threat to him. Moreover he only saw Mr. Lewis for a brief moment, shouted "Watch out", and did not fire his own weapon. Additionally, upon exiting his vehicle, Mr. Lewis never acknowledged Sgt. Moseley or looked at him. Mosely never warned anyone that Mr. Lewis posed a threat to him or anyone else. He never used his weapon to safeguard him or any other deputy present

at the scene. This issue is irrelevant because, at the time he shot Mr. Lewis, Deputy Caudillo could not have known Sgt. Moseley's mental state.

Defendants contend: Sgt. Moseley stated in his interview by detectives that when he saw Mr. Lewis exit his truck with a black object in his right hand, "I absolutely at that moment felt the fear of my life." Sgt. Moseley also told detectives that when Mr. Lewis reversed his truck and rammed the patrol unit Sgt. Moseley feared that there was a high probability that Mr. Lewis was going to get out of his truck and start shooting through Sgt. Moseley's windshield. Sgt. Moseley told detectives, "I know this guy's used deadly force, on people in the past. I know he's been armed multiple times. His driving, ramming, all of those things tell me that this is a highly motivated and/or desperate individual that would probably do anything to get away from us. To include killing a cop."

Issue 6: The context in which Sgt. Moseley stated in his detective interview that Mr. Lewis may have been trying to get into the Stricklens' house.

Plaintiffs contend: No context is needed to understand this plain statement by Sgt, Moseley. His attempts to explain it away are self-serving. See Issue #5 above.

Defendants contend: When Mr. Lewis's truck stopped and Sgt. Moseley arrived at the driver's side hood of the F150, he anticipated that Mr. Lewis would jump out of the blue truck and run away to the backyard and contiguous desert area. But Mr. Lewis exited through his driver's door with a black object in his right hand and ran the opposite direction, running toward Deputy Caudillo's position and towards the driveway where other officers were arriving. The context of the statement in the detective interview is Moseley

saying what all his thoughts were at the time, thinking Lewis might jump out and run into the desert, Moseley didn't know if Lewis would go out the driver's or the passenger door, Moseley thought if Lewis was coming out the driver's door it should already be open, Moseley speculated Lewis was trying to make it into the house. It is irrelevant what Moseley thought Lewis might do, because it was Caudillo at whom Lewis was running with a black object in his hand. Moseley was not in a position to see what Caudillo saw coming at him.

Issue 7: Whether and/or to what extent commands were given to Mr. Lewis and/or heard by the Stricklens and other witnesses in the vicinity.

Plaintiffs contend: Mr. Lewis was given no warnings or commands that would have affected his behavior when parked at his grandparents' house. He was given commands when stopped on the street prior to driving to his grandparents' house. No law officer testified as to any specific commands given. Statements by other witnesses indicate that possibly multiple conflicting commands were given, creating more confusion at the scene. This is more evident due to such commands were given to Mr. Lewis after he was shot and he was on the ground wounded.

Defendants contend: Helen Stricklen told detectives that she heard the officers calling out, saying "Hands in the air" and in her deposition she testified that she heard those words before she heard the gunshots. Ralph Stricklen told detectives he heard someone say "Stop, put it down" and that it wasn't Mr. Lewis's voice. Mr. Stricklen confirmed this at his deposition. Neighbor Jeffrey Garrett told detectives and testified in deposition that he heard a command "Show me your hands" and then heard three consecutive gunshots.

Issue 8: Whether and to what extent Deputy Caudillo reasonably believed that Mr. Lewis was armed with a black handgun and reasonably feared for his life.

Plaintiffs contend: The belief was not reasonable, especially given Deputy Caudillo's extensive training and experience with handguns and the dissimilarity between a key fob and a handgun. Deputy Caudillo stated during his interview that he saw a black object. He never stated he saw a weapon until subsequent interviews and verified statements. He stated that he thought the black object looked like a Glock. It is difficult to believe that him having a Glock as his service weapon, he could have mistaken a fob for a Glock. The deputy's statements to the contrary are self-serving. Pursuant to *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014), in the deadly force context, the court should not simply accept what may be self-serving account by the police officer.

When a suspect is killed and cannot himself provide an account of what took place, the Court must examine whether the officer's accounts are consistent with other known facts. *Longoria v. Pinal Cnty*., 873 F.3d 699, (9th Cir. 2013).

The Supreme Court used a balancing test to assess the intrusive nature of the force used against the governmental interests at stake. *Graham v. Connor*, 490 U.S. 386. *Graham* lists three factors to consider when evaluating the strength of the government's interest in the force used: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Id.

The first *Graham* factor, the severity of the crime at issue, turns in part on whether "a

significant period of time had elapsed between the commission or attempted commission of these crimes and the point at which deadly force was used." *Hyer v. City &Cnty. of Honolulu*, 118 F.4th 1044, 1061 (9th Cir. 2024). Lewis's suspected firearm crimes are serious, but they occurred weeks before Caudillo shot Lewis. *See id.* at 1052–54, 1061 (finding that a significant period of time had elapsed when officers used deadly force while responding to a crime committed approximately ten hours earlier).

As to the second *Graham* factor, Caudillo's testimony that he perceived Lewis as posing a threat to his life is undermined by evidence that Lewis was unarmed, well-illuminated, not charging, not making a threatening gesture, and falling to the ground when the fatal shot was fired.

Moreover, there are inconsistencies between Caudillo's testimony and the physical evidence. This may cast doubt on Caudillo's perception.

And for the third *Graham* factor, Lewis's attempt at evasion (driving to his grandparents' driveway) was brief, and Caudillo suggested that he did not perceive that to be a threat to public safety.

Defendants contend: Deputy Caudillo was aware of Mr. Lewis's history of law enforcement contacts involving guns and drugs. Deputy Caudillo was aware of the Probable Cause Alert which described in detail Mr. Lewis threatening two men with a black handgun and saying that he had dropped ten bodies before, that he would do it again, that the two men were just a number to Mr. Lewis. Prior to the shooting, Mr. Lewis fled in his truck in a very dangerous and violent manner. After he stopped, Mr. Lewis advanced rapidly toward Deputy

Caudillo with a black object in his right hand that Deputy Caudillo reasonably perceived to be a gun. Deputy Caudillo reasonably feared for his life and fired his gun in self-defense.

Issue 9: Whether Mr. Lewis reversed rearward and rammed Sgt. Moseley's patrol unit in the Stricklens' driveway.

Plaintiffs contend: He did not, as established by Plaintiff's expert Dr. Peles who analyzed the Vehicle Control History (VCH) the police Ford "rammed" the Toyota. The Toyota was backing up at less than 2.5 mph and turning away from the police Ford when the Ford struck the Toyota.

Defendants contend: At the bottom of the driveway, Mr. Lewis suddenly reversed his truck in an apparent attempt to back out of the driveway and onto the street. Sgt. Moseley drove his patrol unit forward to block Mr. Lewis's escape and made contact with Mr. Lewis's truck. Mr. Lewis then drove further up the driveway with Sgt. Moseley in pursuit. About half-way up the driveway, Mr. Lewis again suddenly stopped, reversed his truck and rammed backwards into Sgt. Moseley's patrol unit. Lewis then drove to the top of the driveway where Mr. Lewis stopped his truck. This sequence of events was established by Defendants' expert reconstructionist Mike Kuzel, based on an analysis of the vehicle data and damage.

Issue 10: The specific location where Mr. Lewis collapsed onto the ground from the fatal gunshot wound to the lateral aspect of his right shoulder.

Plaintiffs contend: Lewis was turned facing his Toyota when he was shot as the narrow gap between the Ford F-150 and Lewis's vehicle required him to squeeze sideways,

which is consistent with the shot to his right shoulder. Given the location of the bullet defects in the Ford F150, Expert Harmening believed it is reasonable to conclude that as Lewis fell after being shot, Caudillo fired a second and third time. One shot grazed his left arm while the other missed and struck the F-150. Lewis after being shot collapsed to the ground, just clearing the Toyota's bumper (Harmening Second Export Report 5-24-21).The blood deposit located approximately 2.5 feet south of the back corner of the Toyota truck with the bulk of his body still in the 'wedge', and approximately 6.5 feet forward of Caudillo (Declaration of Lucien Haag, 3-7-24).

Defendants contend: Mr. Lewis collapsed to the ground approximately 2.5 feet south of the back corner of the Toyota truck and approximately 6.5 feet forward of Deputy Caudillo's position. This location is beyond the gap between the F150 and the Toyota Tacoma. In other words, Lewis had made it through the gap, had cleared the gap, when the fatal bullet struck the lateral aspect of his right shoulder. The bloodstain on the ground at this location is different from the bloodstain further south on the driveway where deputies dragged Lewis after the shooting to be able to effectively render aid to him. Defense ballistics expert Matt Noedel will testify it is impossible to know the sequence in which the bullets were fired, the one that grazed Lewis's left arm, the one that struck the Ford F150 truck, and the one that struck Lewis's right shoulder.

Issue 11: The width of the gap between the Stricklens' Ford F150 pickup truck and the bed of Mr. Lewis's blue Toyota pickup truck at its narrowest point.

Plaintiffs contend: The width of the gap is approximately 8 inches.

Defendants contend: The width of the gap is approximately 8 inches, using the data points from the 3d laser scanner. This measurement is contained in defense expert Kuzel's report. Plaintiffs' expert Peles does not dispute that measurement in Peles's rebuttal report.

Issue 12: Whether and to what extent Bradley Marshall Lewis, Anna Christine Lewis, Ralph Stricklen, and Helen Stricklen were aware that Bradley Alexander Lewis was engaged in criminal activity involving drugs and guns.

Plaintiffs contend: This issue is irrelevant and Plaintiff will object to any evidence being presented at trial on the subject.

Defendants contend: The above-named plaintiffs were aware of the events that occurred at Big Wash Overlook on 4-6-2020 wherein Bradley Alexander Lewis was arrested on charges involving drugs and guns. The car Lewis was driving was seized and impounded. Forfeiture proceedings on the car were initiated by the Pima County Attorney's Office. Lewis was the subject of criminal court proceedings that the above-named became aware of when Helen Stricklen opened mail addressed to Lewis, took photos of it and emailed them to Bradley Marshall Lewis and Bradley Alexander Lewis when they were in New York. Plaintiff Bradley Lewis became aware of the 7-27-20 baseball bat property damage incident involving Lewis carrying a loaded firearm, hitting cars with the baseball bat, being impaired by some substance. Discussion of this event occurs in the text message exchanges between Lewis and his father Bradley Lewis. Ralph Stricklen was interviewed at his front door by Detectives Valdez and Houston on 12-16-20 and told detectives needed to speak with Lewis,

that the reason they needed to speak to him was not going to go away. Relevant to familial relationships and damages.

Issue 13: Whether Bradley Marshall Lewis was aware that Lewis was buying and selling firearms as a for-profit business without a Federal Firearms License.

Plaintiffs contend: This question is based on facts not in evidence. Moreover, it has not been shown that Deputy Caudillo had any knowledge or suspicion about this subject at the time he fired three shots at Mr. Lewis; therefore the issue is irrelevant and Plaintiff will object at trial to the introduction of any evidence on the subject.

Defendants contend: Bradley Marshall Lewis was aware that Lewis was engaged in possessing guns, buying guns and selling those guns to people without having a Federal Firearms License required by law. Lewis bragged to Bradley Lewis about this in text messages between Lewis and his father Bradley Lewis. In a text message dated April 4, 2020, from Lewis to Bradley Lewis, Lewis bragged about buying a Ruger 9mm and a Sig Sauer 320 and that he was going to sell them for a profit. Two days later, Lewis was arrested in the Big Wash Overlook incident and those two weapons were seized and a forfeiture process was initiated by Pima County. In that same text message string, Lewis bragged about making $700 over the past four days. Relevant to familial relationships and damages.

Issue 14: Whether and to what extent Lewis provided his father Bradley Marshall Lewis with marijuana at a time when Bradley Marshall Lewis did not have a medical marijuana card/permission to possess marijuana.

Plaintiffs contend: The issue is irrelevant and Plaintiff will object to any evidence being introduced on the subject.

Defendants contend: Lewis, upon his father's request, provided his father Bradley Marshall Lewis with marijuana at a time when his father did not possess a medical marijuana card and was not entitled to legally possess marijuana. This occurred when Lewis visited his father Bradley M. Lewis in New York where Bradley M. Lewis was living with his father George Preston Lewis, as evidenced by text messages between the two. They had arguments about this and about the father's failure to pay Lewis for the marijuana that Lewis provided to Bradley Lewis. Relevant to familial relationships and to damages.

Issue 15: Whether and to what extent, prior to the shooting of January 20, 2021, the plaintiffs Anna Christine Lewis, Bradley Marshall Lewis, Ralph Stricklen, and Helen Stricklen were aware that the Sheriff's Department was trying to locate Lewis in reference to criminal activities.

Plaintiffs contend: The issue is irrelevant and Plaintiff will object at trial to the introduction of any evidence on the subject.

Defendants contend: The Sheriff's Department contacted one or more of the plaintiffs on November 20, 2020, looking for Lewis in reference to criminal activities (burglary) that had occurred on Nightflower Street in Tucson. Sheriff's Department Detectives Valdez and Houston went to the Stricklen residence looking for Lewis in reference to the December 4, 2020 Assault with a Deadly Weapon incident. On that date, the detectives inquired of Ralph Stricklen about Lewis's location and Ralph Stricklen claimed not to know

where Lewis was located. The day before the shooting, on January 19, 2021, at 4:55 pm, Lewis texted a response to Helen Stricklen's text about there being mail for Lewis. Lewis responded: "There are cops sitting around ur neighborhood all the time I'll come in my own time That's why I haven't I love you I'll come when I can". At 3:48 am on January 20, 2021, the day of the shooting, Lewis texted to Helen "Whenever you wake up I can come over I'm staying in the neighborhood to be able to come by." In the morning before the shooting, Lewis called Ralph Stricklen at his house and told him, "You need to get out of there." Mr. Stricklen testified in his deposition that when he left his house, he knew that Lewis was in trouble. Mr. Stricklen got in his truck and drove away from his house. Deputy Caudillo in his patrol unit encountered Mr. Stricklen in his truck and ordered him to go back, telling Stricklen that there was a man with a gun in a car. Shortly after Mr. Stricklen arrived at the top of his driveway, Lewis's truck entered the driveway, then Sgt. Moseley's patrol unit arrived, then Deputy Caudillo's patrol unit arrived, just before the shooting occurred. Additionally, text messages between Lewis and his father Bradley M. Lewis indicate that Lewis knew that law enforcement was after him, trying to take him into custody. In text messages, Lewis told his father Bradley Lewis that he was leaving Arizona, that he had put a gun to Chad's (Anna's boyfriend) head and Chad called the cops and they've been trying to bring him in for questioning ever since and for other stuff they (cops) found out because of Chad. Lewis told his father Bradley M. Lewis that the cops go to his mother's house and his grandparents' (Stricklens') house every week at least once looking for him, that the cops pulled up "12 deep" the other day on his January 2 birthday (probably because of January 3,

2021 shots fired at the house next door to the Stricklens' house). Helen Stricklen testified the Stricklens had Lewis over for his birthday; it is unknown if that was on January 2, or January 3, 2021. Relevant to familial relationships and damages.

Issue 16: Whether Deputy Caudillo's conduct was objectively reasonable.

Plaintiffs contend: It was not, as it was not reasonable for an officer in his position to reasonably believe that Mr. Lewis was armed or was coming toward him to attack him given the totality of the circumstances. A reasonable officer would not have feared for his life and would not have used deadly force to subdue Mr. Lewis.

As Plaintiffs contend in Issue 8, his conduct was not reasonable, especially given Deputy Caudillo's extensive training and experience with handguns and the dissimilarity between a key fob and a handgun. Deputy Caudillo stated during his interview that he saw a black object. He never stated he saw a weapon until subsequent interviews and verified statements. He stated that he thought the black object looked like a Glock. It is difficult to believe that him, having a Glock as his service weapon, could have mistaken a fob for a Glock. The deputy's statements to the contrary are self-serving. Pursuant to *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014), in the deadly force context, the court should not simply accept what may be self-serving account by the police officer.

When a suspect is killed and cannot himself provide an account of what took place, the Court must examine whether the officer's accounts are consistent with other known facts. *Longoria v. Pinal Cnty*., 873 F.3d 699, (9th Cir. 2013).

The Supreme Court used a balancing test to assess the intrusive nature of the force

used against the governmental interests at stake. *Graham v. Connor*, 490 U.S. 386. Graham lists three factors to consider when evaluating the strength of the government's interest in the force used: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Id.

The first *Graham* factor, the severity of the crime at issue, turns in part on whether "a significant period of time had elapsed between the commission or attempted commission of these crimes and the point at which deadly force was used." *Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1061 (9th Cir. 2024). Lewis's suspected firearm crimes are serious, but they occurred weeks before Caudillo shot Lewis. *See id*. at 1052–54, 1061 (finding that a significant period of time had elapsed when officers used deadly force while responding to a crime committed approximately ten hours earlier).

As to the second Graham factor, Caudillo's testimony that he perceived Lewis as posing a threat to his life is undermined by evidence that Lewis was unarmed, well-illuminated, not charging, not making a threatening gesture, and falling to the ground when the fatal shot was fired.

Moreover, there are inconsistencies between Caudillo's testimony and the physical evidence. This may cast doubt on Caudillo's perception.

And for the third *Graham* factor, Lewis's attempt at evasion (driving to his grandparents' driveway) was brief, and Caudillo suggested that he did not perceive that to be a threat to public safety.

Defendants contend: Deputy Caudillo's conduct was objectively reasonable. Deputy Caudillo reasonably perceived that he was under attack by Lewis wielding a black handgun. In *Graham v. Connor*, 490 U.S. 386 (1989), the US Supreme Court held that the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation. Deputy Caudillo was faced with the imminent threat of death or serious injury, thereby justifying his use of deadly force.

Issue 17: Whether Deputy Caudillo's conduct was justified under ARS §§ 13-409 and 13-410.

Plaintiffs contend: This is a legal issue not a factual issue. Moreover, the state statutes cannot be used to justify a violation of the Fourth Amendment's prohibition against unreasonable seizures. The use of deadly force is a seizure unlike any other. Plaintiffs' contentions are the same as to their contentions regarding issues 8 and 16.

Defendants contend: Deputy Caudillo's use of force was justified under ARS § 13-409, which allows an officer to use physical force in making or assisting in making an arrest, or in preventing an escape if the officer reasonably believes that the person is resisting arrest, or is fleeing, and the force is necessary to effect the arrest or to prevent escape. Deputy Caudillo's use of deadly force was justified under ARS § 13-410, which allows an officer to

use deadly force when the officer reasonably believes it is necessary to defend himself or others from what he believes to be the use or imminent use of deadly physical force.

Issue 18: What were the relationships between Bradley M. Lewis and Lewis, and between Anna Lewis and Lewis.

Plaintiffs contend: The issue is irrelevant and Plaintiff will object at trial to the introduction of any evidence on the subject. The relationship was always one of parents and child.

Defendants contend: In text messages between Bradley M. Lewis and Lewis, Lewis complained bitterly and profanely about his mother Anna Lewis and about his father Bradley Lewis. Some examples include Lewis referring to his mother and his father as “bat shit crazy”; Lewis referred to his father Bradley Lewis as a drunk; Lewis referred to his mother Anna Lewis and her boyfriend Chad as drug users and drug dealers; Lewis told Bradley M. Lewis that he has never and will never consider Bradley Lewis to be a parent; Lewis threatened his father Bradley Lewis with brass knuckles; Lewis complained bitterly about his father Bradley Lewis owing Lewis money for marijuana that Lewis delivered to his father who never paid him for it; Lewis complained about the risks he had taken by bringing the marijuana from Arizona despite having multiple court cases against him at the time; Lewis stated in text messages to Bradley M. Lewis that his mother Anna Lewis is out of his life for good, that she is controlling and manipulative and deceptive. Relevant to familial relationships and damages.

Issue 19: Did Officer Caudillo reasonably believe that the Decedent posed an imminent threat?

Plaintiffs contend: It was unreasonable given the totality of the circumstances, in that Mr. Lewis was unarmed, did not charge at him, was falling or diving forward when Caudillo fired, and that Mr. Lewis had been trying to flee rather than attack prior to exiting his vehicle. Also Sergeant Moseley's not firing at Mr. Lewis indicates that he did not perceive Mr. Lewis as a dangerous threat. Plaintiffs' contentions are the same as their contentions regarding issues 8, 16, and 17.

Defendants contend: It was reasonable for Deputy Caudillo to believe that Lewis posed a threat of death or serious bodily harm based on what Caudillo knew about Lewis's past criminal behavior that included drugs and guns, that included Assault With A Deadly Weapon involving a black handgun, that included Lewis's conduct on the day of the shooting exhibiting dangerous and reckless driving, that included Lewis's charging at Caudillo with what Caudillo perceived as a black gun in his right hand, instead of Lewis fleeing away from Caudillo.

Issue 20: Was it reasonable for Officer Caudillo to believe that the key fob in Mr. Lewis' hand when he exited his vehicle was a handgun?

Plaintiffs contend: Given Officer Caudillo's extensive firearms training and the dissimilarity between a key fob and a handgun, it was unreasonable for him to make such a mistake. Plaintiffs' contention is the same as their contentions regarding issues 8, 16, 17, and 19.

Defendants contend: It was reasonable for Deputy Caudillo to believe that Lewis posed a threat of death or serious bodily harm and that Lewis was wielding a black handgun in his right hand based on what Caudillo knew about Lewis's past criminal behavior that included drugs and guns, that included Assault With A Deadly Weapon that involved a black handgun, that included Lewis's conduct on the day of the shooting exhibiting dangerous and reckless driving, that included Lewis's charging at Caudillo with what Caudillo perceived as a black gun in his right hand, instead of fleeing away from Caudillo.

Issue 21: Did Mr. Lewis see Officer Caudillo when he exited his vehicle?

Plaintiffs contend: According to analysis by Plaintiff's expert and Defendants' expert, Ijames, Mr. Lewis did not see Officer Caudillo when he exited his vehicle and started moving in Caudillo's direction. Mr. Lewis did not see Caudillo because Deputy Caudillo had his take-down lights trained on Mr. Lewis. There were other lights illuminating and blinding Mr. Lewis. The fact that Defendants claim that there is no evidence that the bright lights did not impair his vision or blind him, are self-serving statements as Mr. Bradley Alexander Lewis was killed by Deputy Caudillo and is not available to testify to the contrary. However, even Defendant's expert witness, Ijames, testified in his deposition that Mr. Lewis probably never saw Caudillo due to the take-down lights.

Defendants contend: Defense expert witness Steve Ijames said it was conceivable that Lewis did not see Caudillo. Lewis knew that he was being chased. Lewis had driven his truck in reverse and rammed Moseley's patrol unit in the driveway. Moseley had on his emergency flashing lights. Caudillo had moved around Moseley's vehicle and

positioned his patrol vehicle at an angle directly behind Lewis's truck with the emergency flashing lights engaged. Lewis rushed directly toward those flashing lights knowing that there would be a deputy there. Deputy Caudillo was plainly visible. There is no evidence that Lewis's vision was impaired by bright lights or flashing lights. There is no evidence that Lewis shielded his eyes or face from the lights. It defies common sense to suggest that Lewis did not know that he was rushing toward a deputy, while holding a black object in his right hand, after previously threatening two young men with a black handgun.

Issue 22: Did Mr. Lewis "charge" at Officer Caudillo?

Plaintiffs contend: The vehicles were positioned too close together for Mr. Lewis to "charge" at Deputy Caudillo, and Mr. Lewis was unaware of Caudillo's presence when he started moving toward the rear of his vehicle.

Defendants Contend: Lewis's body was thin and tall, making it easy for him to pass rapidly with ease through the gap between his truck and the Stricklen truck directly at Caudillo's position.

Issue 23: At the time Officer Caudillo fired his weapon, was Mr. Lewis falling or diving forward?

Plaintiffs contend: Yes. The bullet's trajectory into and through Lewis' torso indicated that Lewis was falling forward, diving, or otherwise moving toward the ground when the fatal bullet was fired.

Defendants contend: The fatal bullet trajectory indicates that Lewis was leaning forward while rapidly passing through the gap between the two trucks and that he

may have been ducking around the Stricklen F150 passenger door mounted rear view mirror.

Issue 24: At the time he exited the vehicle, was Mr. Lewis trying to flee?

Plaintiff contends: Yes. Mr. Lewis did not see Officer Caudillo, and Officer Moseley indicated that all of Mr. Lewis' actions prior to exiting the vehicle were consistent with an effort to flee, not attack, and it would be highly unusual for a suspect to change from fleeing to attacking.

Defendants contend: Plaintiffs don't know what Lewis saw. Only Lewis knows why he chose to rush at Caudillo instead of fleeing away from Caudillo and away from the emergency lights flashing at the rear of Lewis's truck, and into the desert darkness. Lewis chose to rush directly at a position and location that he knew contained deputies who were in pursuit of him. Lewis had many, many opportunities to surrender, including at the felony stop location, and when he exited his truck.

Issue 25: Do the neighbor doorbell Ring videos of the car burglar on Morning Jewel Street taken around 3 a.m. on January 20, 2021, depict Bradley Alexander Lewis as the suspect?

Plaintiffs contend: The videos are not of high enough quality to definitely prove that it was Bradley Alexander Lewis. Though of similar build to Bradley Alexander Lewis, there is no clear shot of the person's face in the video. The videos are in black and white not in color. The vehicle is a common make and model. There is no clear shot of the license plate. No items were taken from the cars so no burglary took place. The issue is irrelevant and Plaintiff will object at trial to the introduction of any evidence on the subject.

Defendants contend: The videos depict Bradley Alexander Lewis as the suspect and depict his new blue truck. The videos accurately depict the clothing that Lewis was wearing at the time of the shooting. The videos accurately depict Lewis's physical characteristics (tall, skinny) that enabled him to move through the gap between the two trucks with ease and with speed. PCSD Deputy David Baird will testify that he responded to the burglary call and investigated. He saw the blue color of the pickup truck on video, he had PCSD Communications put out an Attempt to Locate on the blue truck, he was contacted by Marana PD regarding they had been attempting to locate that vehicle in relation to another incident and provided Deputy Baird with the name Bradley Lewis. Baird saw a photo of Lewis on his Mobile Data Computer and read that Lewis was 19 years old, six feet tall, thin build, weighed 150 pounds. That photo and description closely matched the male subject on the videos of the Morning Jewel car burglar.

**II. Issues of law to be determined:**

Issue 1: Whether Sgt. Moseley has been dismissed from this lawsuit, along with the claim of failure to promptly provide medical care.

Plaintiffs contend: Sgt. Moseley has been dismissed from this lawsuit; however, Plaintiffs still reserve the right to call upon him as a witness.

Defendants contend: Sgt. Moseley has been dismissed from this lawsuit. (See Doc 85, p. 39.) That dismissal encompassed the claim of failure to promptly provide medical care. The Count Three wrongful death claim alleging that Sgt. Moseley caused a delay in medical treatment or somehow failed to promptly summon medical treatment is dismissed.

(See Doc 85, pp. 37-38.) On Defendants' Motion for Summary Judgment, the Court found that Sgt. Moseley's conduct in summoning medical care was objectively reasonable.

Issue 2: Whether the *Monell* - Municipal Liability (unconstitutional policy, custom, practice amounting to deliberate indifference, failure to train, failure to supervise, ratification etc.) claims have been dismissed.

Plaintiffs contend: Monell Claims against Pima County remain.

Defendants contend: The Court dismissed the *Monell* – Municipal Liability claims on summary judgment. (Doc 85, pp. 31-36). In the unlikely event the Court changes that ruling, Defendants reserves the right to list exhibits in addition to those listed in this proposed pretrial order.

Issue 3: Whether Pima County, Sheriff Nanos, and Sgt. Moseley have been dismissed from the Count One 4th Amendment excessive force claim.

Plaintiffs contend: Plaintiffs contend that Nanos and Moseley have been dismissed.

Defendants contend: Pima County, Sheriff Nanos, and Sgt. Moseley have been dismissed from the Count One 4th Amendment excessive force claim. (See Doc 85, p. 39.)

Issue 4: Whether Mr. Lewis's paternal grandparents Jerlene Jones and George Preston Lewis have been dismissed as plaintiffs in this lawsuit.

Plaintiffs contend: Plaintiffs Jerlene Jones and George Preston Lewis have been dismissed.

Defendants contend: Mr. Lewis's paternal grandparents Jerlene Jones and

George Preston Lewis have been dismissed as plaintiffs in this lawsuit. (See Doc 22, p. 9.)

Issue 5: Whether Mr. Lewis's maternal grandparents Ralph and Helen Stricklen have been dismissed as plaintiffs from all Counts of the Second Amended Complaint, except for their property damage claim in Count Five.

Plaintiffs contend: Plaintiffs contend that Ralph Strickland and Helen Strickland remain as Plaintiffs regarding their property damage.

Defendants contend: Mr. Lewis's maternal grandparents Ralph and Helen Stricklen have been dismissed as plaintiffs from all Counts of the Second Amended Complaint, except for their property damage claim in Count Five. (See Doc 22, p. 9.)

Issue 6: Whether the only remaining plaintiffs in Count One (4th Amendment excessive force) are Anna Christine Lewis and Bradley Marshall Lewis as Personal Representatives of The Estate of Bradley Alexander Lewis.

Plaintiffs contend: Plaintiffs contend that they remain as plaintiffs personally regarding the wrongful death claim.

Defendants contend: The only remaining plaintiffs in Count One (4th Amendment excessive force) are Anna Christine Lewis and Bradley M. Lewis as Personal Representatives of The Estate of Bradley Alexander Lewis. (See Doc 22, p. 9.)

Issue 7: Whether the only remaining defendant on Count One (4th Amendment excessive force) is Deputy Caudillo.

Plaintiffs contend: The County of Pima is a Defendant.

Defendants contend: The only remaining defendant on Count One (4th

Amendment excessive force) is Deputy Caudillo. (See Doc 85, p. 39.)

Issue 8: Whether the Count Two 14th Amendment substantive due process claim has been dismissed.

Plaintiffs contend: The Due Process Claim has been dismissed.

Defendants contend: the Count Two 14th Amendment substantive due process claim has been dismissed. (See Doc 85, p. 39.)

Issue 9: Whether Anna Christine Lewis and Bradley Lewis are the only plaintiffs on Count Three (wrongful death).

Plaintiffs contend: Anna Christine Lewis and Bradley Lewis are the Plaintiffs regarding Wrongful Death.

Defendants contend: Anna Christine Lewis and Bradley Lewis are the only plaintiffs on Count Three (wrongful death).

Issue 10: Whether the defendants on the state law wrongful death claim (Count Three) are Deputy Caudillo (substantive liability) and Sheriff Nanos (respondeat superior liability).

Plaintiffs contend: The defendants on the state law wrongful death claim are Deputy Caudillo, Sheriff Nanos, and Pima County.

Defendants contend: The defendants on the state law wrongful death claim (Count Three) are Deputy Caudillo (substantive liability) and Sheriff Nanos (respondeat superior liability). (See Doc 22, p. 9; Doc 85, p.39. Note the inconsistency on this subject between Doc 22 and Doc 85. Doc 22 recognizes that it is Sheriff Nanos, not Pima County,

that has respondeat superior liability for Deputy Caudillo on the state law claims. But Doc 85 mistakenly suggests that it is Pima County, not Sheriff Nanos, that has respondeat superior liability for Deputy Caudillo.)

Issue 11: Whether the Count Four Loss of Consortium claim is dismissed.

Plaintiffs contend: The Plaintiffs contend that Loss of Consortium was dismissed.

Defendants contend: The Count Four Loss of Consortium claim is dismissed. (See Doc 85, p. 39.)

Issue 12: Whether Plaintiffs Stricklen are entitled to compensation for bullet damage to their Ford F150. And if so, in what amount?

Plaintiffs contend: The Plaintiffs are entitled to damages as Defendants violated Mr. Stricklen's constitutional rights acting under color of state law, willfully or negligently causing damage to Mr. Stricklen's vehicle. The amount of damages will be determined by a jury.

Defendants contend: The damage is not compensable. The damage was caused and necessitated by the reasonable and legal justification for Deputy Caudillo to fire the bullets in self-defense.

Issue 13: Whether Deputy Caudillo is entitled to qualified immunity on the 4th Amendment excessive force claim.

Plaintiffs contend: Because he acted unreasonably and in violation of Mr. Lewis' constitutional rights of which Caudillo was aware, he is not entitled to qualified

immunity.

Defendants contend: Deputy Caudillo is entitled to qualified immunity on the 4th Amendment excessive force claim. Under the first prong analysis, Deputy Caudillo's conduct was objectively reasonable. Under the second prong analysis, there is no clearly established law with facts that fit the circumstances that Deputy Caudillo faced that holds Deputy Caudillo's conduct to be unconstitutional.

Issue 14: Whether Deputy Caudillo is entitled to Arizona's common law qualified immunity on the state law claims for wrongful death and property damage.

Plaintiffs contend: Because he acted unreasonably and in violation of Mr. Lewis' constitutional rights of which Caudillo was aware, he is not entitled to qualified immunity.

Defendants contend: Arizona common law affords qualified immunity to law enforcement officers who engage in discretionary acts involving "judgment and deliberation, however brief."

Issue 15: Whether the case caption needs to be amended to reflect that the remaining parties are "Anna Christine Lewis, Bradley Marshall Lewis, Estate of Bradley Alexander Lewis, Ralph Stricklen, and Helen Stricklen v. Gilberto Caudillo and Chris Nanos.

Plaintiffs contend: The caption should not be amended. This is not an issue to be tried before a jury.

Defendants contend: Anna Christine Lewis and Bradley Marshall Lewis have claims for state law wrongful death only. The Estate of Bradley Alexander Lewis has a claim

for federal 4th Amendment excessive force. Ralph and Helen Stricklen have a claim for property damage to their Ford F150. Deputy Gilberto Caudillo is a defendant on the state law wrongful death claim, the state law property damage claim, and the federal 4th Amendment excessive force claim. Sheriff Chris Nano is an employer/respondeat superior defendant on the state law wrongful death claim and the state law property damage claim only. There is no respondeat superior liability on a federal constitutional claim. See *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Issue 16: Whether probable cause existed to arrest Lewis on January 20, 2021.

Plaintiffs contend: The December 18, 2020 Probable Cause alert detailed that it was not an arrest warrant and that the subject [Lewis] may be detained for questioning.

Defendants contend: The December 4, 2020 AWDW event itself and the resulting December 18, 2020 probable cause alert based on the AWDW event contained detailed information about the December 4, 2020 AWDW event which supported probable cause to arrest Lewis. Additional probable cause for arrest arose via Lewis's failure to surrender, Lewis's dangerous and reckless vehicular flight, Lewis's resisting lawful arrest, Lewis's aggravated assault on Sgt. Moseley by ramming Sgt. Moseley's patrol unit.

Issue 17: Did Officer Caudillo use excessive force to stop Mr. Lewis, given the totality of the circumstances?

Plaintiff contends: Defendants' own expert, Mr. Ijames, stated in his deposition that it was entirely possible that Alex Lewis could not see Deputy Caudillo because Deputy

Caudillo had the patrol vehicle's takedown lights activated. Takedown lights can impede a person's ability to see.

Defendants Contend: Given the totality of the circumstances, it was reasonable for Deputy Caudillo to believe that Lewis posed a threat of death or serious bodily harm based on what Caudillo knew about Lewis's past criminal behavior that included drugs and guns, that included Assault With A Deadly Weapon that involved a black handgun, that included Lewis's conduct on the day of the shooting exhibiting dangerous and reckless driving, that included Lewis's charging at Caudillo with what Caudillo perceived as a black gun in his right hand, instead of fleeing away from Caudillo.

Issue 18: Are the plaintiffs entitled to an award of damages for wrongful death, and if so, in what amount?

Plaintiffs contend: The Plaintiffs are entitled to damages as Defendants violated Mr. Lewis' constitutional rights acting under color of state law, willfully or negligently causing Mr. Lewis' death. The amount of damages will be determined by a jury.

Defendants contend: Deputy Caudillo's conduct was objectively reasonable and justified under Arizona state law and federal constitutional law, which forecloses any award of damages.

Issue 19: Are the plaintiffs entitled to an award of damages for loss of consortium, and if so, in what amount?

Plaintiffs contend: The Plaintiffs are entitled to damages as Defendants violated Mr. Lewis' constitutional rights acting under color of state law, willfully or

negligently causing Mr. Lewis' death. The amount of damages will be determined by a jury.

Defendants contend: The "Loss of Consortium" Count was dismissed on summary judgment. The nature and extent of any damages that can be awarded by the jury will be covered in the instructions to the jury at the end of the presentation of evidence.

Issue 20: Whether Bradley Alexander Lewis had a right to due process and a right to be free from unreasonable search and seizure, including the unreasonable use of deadly force, at the time he was fatally shot.

Plaintiffs contend: Yes. Bradley Alexander Lewis had a right to due process and a right to be free from unreasonable search and seizure, including the unreasonable use of deadly force, at the time he was fatally shot.

Defendants contend: The reference to "due process" is not specified in the 4th Amendment. The 4th Amendment does not express a specific "due process" component. The phrase "due process" is contained in the 5th and 14th Amendments, but not the 4th Amendment. The Ninth Circuit Model Jury Instruction No. 9.25 regarding 4th Amendment excessive force does not reference "due process."

Issue 21: Whether Comparative Fault applies to the state law claims for wrongful death and property damage, and Lewis's comparative fault is imputed to the Plaintiffs?

Plaintiffs contend: Yes, under Arizona law, comparative fault generally applies to wrongful death and property damage claims, but whether one person's fault is imputed to the plaintiffs depends on the relationship between the parties and the legal theory

involved. Arizona follows a pure comparative fault system, codified primarily in Arizona Revised Statutes § 12-2506. The trier of fact allocates a percentage of fault to each person or entity that contributed to the injury or damage. A plaintiff's recovery is reduced by the percentage of fault attributable to that plaintiff. A plaintiff is not barred from recovery simply because they were mostly at fault. If the decedent was comparatively negligent, the damages recoverable in the wrongful death action are generally reduced by the decedent's percentage of fault because the claim derives from the decedent's right to recover had they survived. Comparative fault also applies to property damage claims arising from negligence. If the property owner was comparatively at fault, the owner's recovery is reduced according to that percentage of fault. One person's comparative fault is not automatically imputed to the plaintiffs. Imputation requires a recognized legal relationship or another legal doctrine that makes one person's negligence attributable to another.

Defendants contend: Comparative Fault applies to the state law claims for wrongful death and property damage and Lewis's comparative fault is imputed to Plaintiffs. (See Amended Answer to Second Amended Complaint, Doc. 36, ¶ 146.)

Issue 22: Whether ARS 12-712 applies to the state law claims for wrongful death and property damage?

Plaintiffs contend: Arizona Revised Statute § 12-712 does not apply to state law claims for wrongful death and property damage. Especially in the context of claims arising from police shootings. Applying the statute could be unconstitutional because it could effectively remove the jury’s role in determining contributory negligence. Arizona

Revised Statute § 12-712 could violate Article 18, § 5 of the Arizona Constitution, which provides: "The defense of contributory negligence or assumption of risk shall, in all cases whatsoever, be a question of fact and shall at all times be left to the jury." A statute that completely bars recovery because of the plaintiff's criminal conduct improperly removes that factual determination from the jury.

Furthermore, Article 18, §6 of the Arizona Constitution states that, "The right of action to recover damages for injuries shall never be abrogated." In addition, Article 2, §31 of the Arizona Constitution stands for the prohibition of statutory limitations on damages. Plaintiffs contend that the Arizona Constitution requires a jury to determine comparative fault. A statute that categorically bars recovery violates Article 18, § 5 of the Arizona Constitution. Whether the decedent's conduct justified the shooting remains a factual question for the jury.

Defendants contend: Lewis was engaged in attempting to commit, committing or immediately fleeing from a criminal act (felony flight, felony escape, aggravated vehicular assault on Sgt. Moseley, aggravated assault on Deputy Caudillo and was at least 50 percent responsible for the event that caused his death, therefore the jury has the option of finding in favor of Defendants on the state law claims for wrongful death and for property damage. (See Amended Answer to Second Amended Complaint, Doc. 36, ¶ 139.) The specific Arizona Criminal Statutes applicable are: Aggravated Assault (December 4, 2020), ARS 13-1204 – Class 3 Felony; Unlawful Flight, ARS 28-622.01 – Class 5 Felony; Resisting Arrest, ARS 13-2508 – Class 6 Felony; Aggravated Assault (January 20, 2021), ARS 13-1204 – Class 3 Felony.

Issue 23: Whether the theory of assumption of the risk applies to the state law claims for wrongful death and property damage?

Plaintiffs contend: Assumption of the risk does not apply to state law claims for wrongful death or property damage. Pursuant to Article 18, §5 of the Arizona Constitution, "The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury." Therefore, Courts generally cannot decide assumption of the risk as a matter of law when there is evidence supporting the claim. Especially in police shootings, the Court should closely consider whether the decedent actually appreciated and voluntarily accepted the specific risk of being shot, whether the officers' conduct constituted an independent superseding cause, and the comparative fault of all parties. All these factors are factual issues reserved for the jury under Article 18, § 5 of the Arizona Constitution. In the case at bar, the facts are disputed and there was no enforceable express waiver.

Regarding property damage, Article 18, § 5 of the Arizona constitution provides that the defense of assumption of the risk is a factual issue for the jury. Arizona's comparative fault statute, A.R.S. § 12-2505, also incorporates assumption of the risk into the comparative fault system rather than treating it as an absolute defense in most negligence actions.

Defendants contend: The legal theory of assumption of the risk applies to the state law claims for wrongful death and property damage and the jury is entitled to assign a percentage of fault to Lewis which is imputed to the Plaintiffs. (See Amended Answer to Second Amended Complaint, Doc. 36, ¶ 145.)

Issue 24: Whether ARS 14-3110 precludes damages to be awarded to the Estate of the decedent for pain and suffering?

Plaintiffs contend: Decedent's damages for pain and suffering may be precluded, however, if the decedent's statutory beneficiaries bring a wrongful death claim under Arizona's wrongful death statutes, § 14-3110 does not limit their damages because those damages belong to the beneficiaries, not to the estate.

The beneficiaries may seek damages for their own losses, including: loss of love, affection, companionship, care, protection, and guidance; loss of consortium; grief and sorrow; loss of financial support; and funeral expenses.

Defendants contend: ARS 14-3110 precludes awarding damages to the Estate for the decedent's pain and suffering. (See Amended Answer to Second Amended Complaint, Doc. 36, ¶ 138.)

Issue 25: Whether the doctrines of necessity and duress are applicable to this case and allow the defendants to damage or destroy property in certain circumstances without paying compensation, i.e., referring to the damage to the Stricklens' Ford F-150?

Plaintiffs contend: The doctrines of necessity and duress are not applicable in this case because here, the Defendants are state actors. Pursuant to Article 2, § 17 of the Arizona Constitution provides that private property shall not be taken or damaged for public or private use without just compensation. Arizona's Takings Clause is broad because it expressly includes property that is damaged, not merely taken. Therefore, even if public

necessity defeats a tort claim, it does not automatically defeat a constitutional claim for just compensation.

Defendants contend: The doctrines of necessity and duress are applicable to this case inasmuch as the bullets fired by Deputy Caudillo were the result of the necessity and duress imposed upon him to defend himself and others from what he reasonably perceived to be Lewis charging at him with a black handgun in his right hand. (See Amended Answer to Second Amended Complaint, Doc. 36, ¶¶ 150-151.)

**E. LISTS OF WITNESSES**

**I. Plaintiffs' Witnesses**

**Witnesses of Fact:**

1. Anna Christine Lewis, c/o Coronado Law Firm, PLLC, 4700 West White Mountain Boulevard, Lakeside, Arizona 85929. Anna Christine Lewis is Bradley Alexander Lewis' mother and the Co-Personal Representative of the Estate of Bradley Alexander Lewis. Ms. Lewis will testify regarding the incident that occurred on January 20, 2021, which resulted in the death of her son, Bradley Alexander Lewis. Mrs. Lewis will also testify regarding the events that lead up to her son's untimely death. She will further testify to all relevant matters in this case, including but not limited to her relationship with her son, Bradley Alexander Lewis.

2. Bradley Lewis, c/o Coronado Law Firm, PLLC, 4700 West White Mountain Boulevard, Lakeside, Arizona 85929. Bradley Lewis is Bradley Alexander Lewis' Father and the Co-personal Representative of the Estate of Bradley Alexander Lewis. Mr. Lewis

will testify regarding the incident that occurred on January 20, 2021, which resulted in the death of his son, Bradley Alexander Lewis. Mr. Lewis will also testify regarding the events that lead up to his son's untimely death. He will further testify to all relevant matters in this case, including but not limited to his relationship with his son, Bradley Alexander Lewis.

3. Helen Stricklen, c/o Coronado Law Firm, PLLC, 4700 West White Mountain Boulevard, Lakeside, Arizona 85929. Mrs. Stricklen is Bradley Alexander Lewis' maternal grandmother. Mrs. Stricklen will testify regarding the incident that occurred outside her home on January 20, 2021, which resulted in the death of her grandson, Bradley Alexander Lewis. Mrs. Stricklen will also testify regarding the events that lead up to his her grandson's untimely death. She will further testify to all relevant matters in this case, including but not limited to her relationship with her grandson, Bradley Alexander Lewis.

4. Ralph Rust Stricklen, c/o Coronado Law Firm, PLLC, 4700 West White Mountain Boulevard, Lakeside, Arizona 85929. Mr. Stricklen is Bradley Alexander Lewis' maternal grandfather. Mr. Stricklen will testify regarding the incident that occurred outside his home on January 20, 2021, which resulted in the death of his grandson, Bradley Alexander Lewis. Mr. Stricklen will also testify regarding the events that lead up to his grandson's untimely death. He will further testify to all relevant matters in this case, including but not limited to his relationship with his grandson, Bradley Alexander Lewis.

5. Jerlene Jones, c/o Coronado Law Firm, PLLC, 4700 West White Mountain Boulevard, Lakeside, Arizona 85929. Jerlene Jones is Bradley Alexander Lewis' paternal grandmother. Mrs. Jones will testify regarding the incident that occurred on January 20,

2021, which resulted in the untimely death of her grandson, Bradley Alexander Lewis. Mrs. Jones will also testify regarding the events that led up to the death of her grandson. She will further testify to all relevant matters in this case, including but not limited to her relationship with her grandson, Bradley Alexander Lewis.

6. George Preston Lewis, c/o Coronado Law Firm, PLLC, 4700 West White Mountain Boulevard, Lakeside, Arizona 85929. George Preston Lewis is Bradley Alexander Lewis' paternal grandfather. Mr. Lewis will testify regarding the incident that occurred on January 20, 2021, which resulted in the untimely death of his grandson, Bradley Alexander Lewis. Mr. Lewis will also testify regarding the events that led up to his grandson's death. He will further testify to all relevant matters in this case, including but not limited to her relationship with his grandson, Bradley Alexander Lewis.

7. Keith Lewis, c/o Coronado Law Firm, PLLC, 4700 West White Mountain Boulevard, Lakeside, Arizona 85929. Keith Lewis is Bradley Alexander Lewis' uncle. Mr. Lewis will testify regarding the incident that occurred on January 20, 2021, which resulted in the wrongful death of his nephew, Bradley Alexander Lewis. Mr. Lewis will also testify regarding the events that led up to his nephew's death and serve as a character witness. He will further testify to all relevant matters in this case, including but not limited to his relationship with his nephew, Bradley Alexander Lewis.

8. Gregory Lewis, c/o Coronado Law Firm, PLLC, 4700 West White Mountain Boulevard, Lakeside, Arizona 85929. Gregory Lewis is Bradley Alexander Lewis' Uncle. Mr. Lewis will testify regarding the incident that occurred on January 20, 2021, which

resulted in the wrongful death of his nephew, Bradley Alexander Lewis. Mr. Lewis will also testify regarding the events that led up to his nephew's death and serve as a character witness. He will further testify to all relevant matters in this case, including but not limited to his relationship with his nephew, Bradley Alexander Lewis.

9. Diane Lewis, c/o Coronado Law Firm, PLLC, 4700 West White Mountain Boulevard, Lakeside, Arizona 85929. Diana Lewis is married to Preston Lewis and is Bradley Alexander Lewis' step grandmother. Mrs. Lewis will testify regarding the incident that occurred on January 20, 2021, which resulted in the wrongful death of her grandson, Bradley Alexander Lewis. Mrs. Lewis will also testify regarding the events that led up to her grandson's death and serve as a character witness. She will further testify to all relevant matters in this case, including but not limited to his relationship with hergrandson, Bradley Alexander Lewis.

10. Madison Lewis, c/o Coronado Law Firm, PLLC, 4700 West White Mountain Boulevard, Lakeside, Arizona 85929. Madison Lewis is Bradley Alexander Lewis' cousin. Ms. Lewis will testify regarding the incident that occurred on January 20, 2021, which resulted in the wrongful death of her cousin, Bradley Alexander Lewis. Ms. Lewis will also testify regarding the events that led up to her cousin's death and serve as a character witness. He will further testify to all relevant matters in this case, including but not limited to his relationship with his cousin, Bradley Alexander Lewis.

11. Elisban Rodriguez, c/o Coronado Law Firm, PLLC, 4700 West White Mountain Boulevard, Lakeside, Arizona 85929. Elisban Rodriquez is a family friend to the

Lewis family. Mrs. Rodriquez will testify regarding the incident that occurred on January 20, 2021, which resulted in the wrongful death of Bradley Alexander Lewis. Mrs. Rodriguez will also serve as a character witness. She will further testify to her relationship with Bradley Alexander Lewis.

12. Crissel Rodriguez, c/o Coronado Law Firm, PLLC, 4700 West White Mountain Boulevard, Lakeside, Arizona 85929. Crissel Rodriquez is a family friend to the Lewis family. Mrs. Rodriquez will testify regarding the incident that occurred on January 20, 2021, which resulted in the wrongful death of Bradley Alexander Lewis. Mrs. Rodriguez will also serve as a character witness.

13. Kathy Stricklen, c/o Coronado Law Firm, PLLC, 4700 West White Mountain Boulevard, Lakeside, Arizona 85929. Kathy Stricklen is Bradley Alexander Lewis' aunt. Mrs. Stricklen will testify regarding the incident that occurred on January 20, 2021, which resulted in the wrongful death of Bradley Alexander Lewis. Mrs. Stricklen will also testify regarding the events and circumstances that led to the death of her nephew and will also serve as a character witness. She will testify to her relationship with her nephew, Bradley Alexander Lewis.

14. Defendant Deputy Gilbert Caudillo 1452, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, Arizona 85711-2636, 520-748-2440. Deputy Gilbert Caudillo is being sued in his individual and official capacity and will testify regarding the incident that occurred on January 20, 2021, as well as the events and circumstances that led up to the wrongful death of Bradley Alexander Lewis.

Additionally, Deputy Gilbert Caudillo will testify regarding the protocol and procedures of Defendant Pima County in an employee capacity, such as, but not limited to, failure to properly train, supervise, and discipline the individual police defendants and other officers within Pima County.

15. Defendant Sheriff Chris Nanos, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, Arizona 85711-2636, 520-748-2440. Sheriff Chris Nanos is being sued in his individual and official capacity and will testify regarding the incident that occurred on January 20, 2021, that resulted in the wrongful death of Bradley Alexander Lewis, as well as the events and circumstances that led up to the wrongful death of Bradley Alexander Lewis. Additionally, Sheriff Chris Nanos will testify regarding the protocol and procedures of Defendant Pima County in an employee capacity, such as, but not limited to, failure to properly train, supervise, and discipline the individual police defendants and other officers within Pima County.

16. Defendant Sergeant Michael Moseley 1227, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, Arizona 85711-2636, 520-748-2440. Sergeant Michael Mosely is being sued in his individual and official capacity and will testify regarding the incident that occurred on January 20, 2021, that resulted in the wrongful death of Bradley Alexander Lewis, as well as the events and circumstances that led up to the wrongful death of Bradley Alexander Lewis. Additionally, Sergeant Michael Moseley will testify regarding the protocol and procedures of Defendant Pima County in an employee capacity, such as, but not limited to, failure to

properly train, supervise, and discipline the individual police defendants and other officers within Pima County.

17. Defendant Pima County, Arizona, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, Arizona 85711-2636, 520-748-2440. Pima County, specifically the sheriff's department and other administrative agencies, which employs Defendants Nanos, Caudillo, and Moseley, will testify regarding the failure to property train, equip, and/or monitor. Though this is not an exhaustive list, Defendant Pima County will also testify regarding their policies and procedures manual, forms used by the Internal Affairs Division for recording and processing complaints, annual reports of the Internal Affairs Division (or internal reports to the police chief), listing of complaints by type and disposition, investigation case files, administrative complaints, firearm discharge and use of force reports, records of arrests by individual officers, reports regarding injuries received by the defendant police officers, reports regarding injuries to persons arrested by the defendant police officers, performance evaluations, and rules and regulations.

18. Deputy Theodore Robles 1342, Pima County Sheriff's Department, c/0 Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Deputy Theodore Robles will testify regarding the incident that occurred on January 20, 2021, that resulted in the wrongful death of Bradley Alexander Lewis, as well as the events and circumstances that led up to the incident. Particularly, but not limited to, Deputy Theodore Robles will testify regarding his assistance bringing ballistic shields to the scene of the incident after they were radio requested by Sergeant Michael Moseley and what

he witnessed once arriving to the scene. Additionally, Deputy Theodore Robles will testify regarding his interview with Detective Houston and Detective Davila that was recorded after the incident occurred on January 20, 2021.

19. Deputy Justin Berry 8951, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Deputy Justin Berry will testify regarding the events and circumstances that resulted in the wrongful death of Bradley Alexander Lewis on January 20, 2021. Particularly, but not limited to, Deputy Berry's recorded interview with Detective Siress and Detective Rodriguez that occurred the same day of the incident. Additionally, Deputy Theodore Robles will testify regarding his involvement on the scene once he arrived.

20. Deputy Anthony Pool, 3863, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Deputy Anthony Pool will testify regarding the events and circumstances that resulted in the wrongful death of Bradley Alexander Lewis on January 20, 2021. Particularly, but not limited to, Deputy Anthony Pool will testify regarding his involvement setting up spikes at the intersection and what he observed upon his arrival.

21. Deputy Matthew Gilbert, 5968, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Deputy Matthew Gilbert will testify regarding the events and circumstances that resulted in the wrongful death of Bradley Alexander Lewis on January 20, 2021. Particularly,

but not limited to, what Deputy Matthew Gilbert observed upon arrival to the scene after additional units were requested.

22. Deputy Michael Joseph, 6324, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 520-748-2440. Deputy Michael Joseph will testify regarding the events and circumstances that resulted in the wrongful death of Bradley Alexander Lewis on january 20, 2021. Particularly, but not limited to, his observation and involvement on the scene, his interaction with neighbors at 6661 Paseo de Angel, and video footage taken and logged as evidence.

23. Deputy M.D. Ruiz-Torres, 9017, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 520-748-2440. Deputy Ruiz-Torres will testify regarding the events and circumstances that resulted in the wrongful death of Bradley Alexander Lewis on January 20, 2021. Particularly, but not limited to, his observation and involvement on the scene, his interaction with neighbors at 6661 Paseo de Angel, and video footage taken and logged as evidence.

24. Detective J. Rodriguez 7529, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Detective Rodriguez will testify regarding the events and circumstances that resulted in the wrongful death of Bradley Alexander Lewis on January 20, 2021. Particularly, but not limited to, his observation and involvement on the scene and the recorded statements he took from Deputy Berry and Sergeant Moseley.

25. Deputy Timothy Robertson 5531, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Deputy Robertson will testify regarding the events and circumstances that resulted in the wrongful death of Bradley Alexander Lewis on January 20, 2021. Particularly, but not limited to, his observation and involvement on the scene.

26. Deputy Jared Ernest 6800, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Deputy Ernest will testify regarding the events and circumstances that resulted in the wrongful death of Bradley Alexander Lewis on January 20, 2021. Particularly, but not limited to, his observation and involvement on the scene and at the hospital.

27. Deputy Jose Velasco 5703, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Deputy Ernest will testify regarding the events and circumstances that resulted in the wrongful death of Bradley Alexander Lewis on January 20, 2021. Particularly, but not limited to, his observation and involvement on the scene.

28. Forensic Technician Heather Barnett 8296, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. While this is not an exhaustive list, Forensic Technician Barnett will testify regarding the photos she took at the hospital and the photos she took on the scene of the body and the projectile that were submitted into Evidence for autopsy analysis.

29. Forensic Technician M.D. Brooks 8421, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. While this is not an exhaustive list, Forensic Technician Brooks Barnett will testify regarding the photos, some of which were drone aerial photos, taken on the scene that were submitted into Evidence for analysis.

30. Forensic Technician K.J. Gruenwald 8160, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. While this is not an exhaustive list, Forensic Technician Gruenwald will testify regarding photos taken of Bradley Alexander Lewis' blue Toyota Tacoma after it was sealed and secured into impound.

31. Forensic Technician T. Kranz 8705, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. While this is not an exhaustive list, Forensic Technician Kranz will testify regarding the photos, some of which were drone aerial photos, taken on the scene that were submitted into Evidence for analysis.

32. Detective G.M. Houston 5976, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Detective Houston will testify regarding the events and circumstances that resulted in the wrongful death of Bradley Alexander Lewis on January 20, 2021. Particularly, but not limited to, her observation and involvement on the scene and the recorded statements she took.

33. Detective Justin Petersen 7730, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Detective Petersen will testify regarding his observation and involvement on the scene, hospital, and impound for autopsy analysis. Particularly, but not limited to, photos taken at Banner UMC and the collection of Bradley Alexander Lewis' personal items on his person and in his blue Toyota Tacoma truck that were logged into Evidence.

34. Detective M. A. Martinez 1358, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Detective Martinez will testify regarding his observation and involvement in the investigation that resulted in Bradley Alexander Lewis being targeted for reports of previous suspicious behavior. Particularly, but not limited to, Detective Martinez's statements he received from neighbors on 6661 N Paseo de Angel, his walk-through of the scene, and broad assistance in the investigation that ultimately resulted in the wrongful death of Bradley Alexander Lewis.

35. Detective B. A. Williams 7567, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Detective Williams will testify regarding his observation and involvement in the investigation that resulted in the wrongful death of Bradley Alexander Lewis. Particularly, but not limited to, the search warrant application he submitted.

36. Detective Eric Heath 1339, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-

748-2440. Detective Heath will testify regarding his observation and involvement in the incident that resulted in the wrongful death of Bradley Alexander Lewis. Particularly, but not limited to, neighborhood canvassing, items collected for evidence, interviews conducted, and assistance mapping out the scene for photographs.

37. Detective Lisa Johnson CMDC 5797, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Detective Johnson will testify regarding her observation, involvement, and investigation of the incident that resulted in the wrongful death of Bradley Alexander Lewis. Particularly, but not limited to, her assistance processing Deputy Caudillo's equipment, the collection of a taser, and contact with Bradley Alexander Lewis' grandparents, Helen and Ralph Stricklen.

38. Corrections/Training Sergeant Brian Hunt 5738, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Sergeant Brian Hunt will testify regarding his involvement in downloading the Taser used at the scene of the incident into evidence.

39. Deputy Robert R. Murray 1275, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Deputy Murray will testify regarding his involvement and observation assisting Deputy Jared Ernest at Banner UMC where Bradley Alexander Lewis was pronounced deceased.

40. Detective Jonathan Siress, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Though this is not an exhaustive list, Detective Siress will testify regarding his involvement and observation assisting with the investigation as a Detective that conducted interviews of officers involved on the scene of the incident.

41. Detective Jason R. Davila, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Though this is not an exhaustive list, Detective Davila will testify regarding his involvement and observation assisting with the investigation as a Detective that conducted interviews of officers involved on the scene of the incident.

42. Detective Miguel H. Flores, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Detective Flores will testify regarding his involvement and investigation of the incident that resulted in the wrongful death of Bradley Alexander Lewis as the Detective assigned as case officer. Particularly, but not limited to, his report, evidence gathered, and interviews he conducted and participated in.

43. Sergeant Hans W. Goritz 1202, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Sergeant Goritz will testify regarding his involvement and observation as an officer on the scene at the time the incident occurred that resulted in the wrongful death of Bradley Alexander Lewis.

44. Detective Shawn George 1101, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Detective George will testify regarding his involvement and observation as a detective that responded to the scene and as the detective who notified Bradley Alexander Lewis' mother, Anna Lewis.

45. Jacqueline Jimenez, Forensic Technician, Pima County Sheriff's Department, c/o Daryl Audilett, Audilett Law PC, 335 N. Wilmot Road Suite 500, Tucson, AZ 85711-2636, 520-748-2440. Forensic Technician Jimenez will testify regarding the photos she took of Deputy Caudillo and his weapon that was discharged.

46. Michelle D. Stewart, neighbor and civilian, 2133 W. Morning Jewel Place, Tucson, AZ 85742, 580-478-6860. Mrs. Stewart will testify as a witness regarding the report she made on January 20, 2021 of a suspect attempting to open her vehicle and why Bradley Alexander Lewis was suspected of this during her interview with Deputy Baird.

47. Joshua J. Stine, neighbor and civilian, 2143 W. Morning jewel Place, Tucson, AZ 85742, 720-490-5789. Mr. Stine will testify as a civilian and neighbor who was interviewed by Deputy Baird over a report of vehicle break-ins in the area.

48. Emelinda Altagraci Almon-De Senney, aka Emelinda Altagraci De Senney, 2202 W Morning jewel Place, Tucson, AZ 85742, 520-848-9632. Mrs. De Senney will testify as a civilian and neighbor who was interviewed by Deputy Baird. Mrs. De Senney will also testify regarding a video taken on her property of the subject suspected of vehicle break-ins.

49. Naomi R. Crist, neighbor and civilian, 2661 W. Positano Way, Tucson, AZ 85741, 520-406-0567. Mrs. Crist will testify as a civilian and neighbor who gave a statement.

50. Ambur D. Pitts, neighbor and civilian, 2661 W Positano Way, Tucson, AZ 85741, 520-820-2579. Mrs. Pitts will testify as a civilian and neighbor who gave a statement.

51. Jeffrey A. Garrett, neighbor and civilian, 2741 W. Positano Way, Tucson, AZ 85741, 520-869-1472. Mr. Garrett will testify as a civilian and neighbor who gave a statement.

52. Raymond Pacheco, Private Investigator, Arizona Undercover Private Investigations, Inc., 7739 East Broadway Blvd., #189, Tucson, Arizona 85710-3941, 520-370-8245. Mr. Pacheco will testify regarding what he has uncovered during his independent investigation of the incident that occurred on January 20, 2021, which ultimately resulted in the wrongful death of Bradley Alexander Lewis. Particularly, but not limited to, scene photos, neighborhood canvas report, a report regarding Sheriff Chris Nanos, a report regarding Ralph Stricklen, Northwest Fire District Hospital Report, and a Pima County Attorney's Office letter regarding the determination of their investigation.

53. Kevin Kubitskey, 520-358-3145, 974 N. Darlene Dr., Vail, AZ 85641. Mr. Kubitskey is Coronado Law Firm's private investigator. If applicable, Mr. Kubitskey will testify to all matters relevant to this case, including, but not limited to, his independent investigation of the incident that occurred on January 20, 2021. Mr. Kubitskey will further assist Plaintiffs' counsel during trial.

54. Traci Caruther, neighbor and civilian, 6661 N. Paseo De Angel, Tucson, AZ 85741, 520-869-1472 or 520-404-2509. Mrs. Caruthers will testify to all issues relevant to the matter, including but not limited to, the video recording from their camera and observations of the incident.

55. Aubree Dawn, neighbor and civilian. 6661 N. Paseo De Angel, Tucson, AZ 85741, 520-965-5379. Mrs. Dawn will testify to all issues relevant to the matter, including but not limited to, the video recording from their camera and observations of the incident.

56. Cristos Chuffe, 520-809-5461. Mr. Chuffe will testify regarding his participation in the reconstruction with Bio Rec.

57. Daniel Shur, Northwest Fire Station. Mr. Shur will testify regarding his observations and conversations regarding the January 20, 2021 incident.

58. James Bailey, Northwest Fire Station. Mr. Bailey will testify regarding his observations and conversations regarding the January 20, 2021 incident.

**Expert Witnesses**

59. Dr. William Harmening, Use of Force Expert, 7009 Lakota Drive, Spring Hill, TN 37174, 217-503-7288. Dr. Harmening will testify regarding his Use of Force Analysis/Expert Opinion Report. Particularly, but not limited to, the Detective Moseley and Detective Caudillo interviews, all investigative reports, scene pictures, witness statements, forensic reports, Pima County S.O. Policies, security videos from neighbor residence, prior activity reports, autopsy report, independent autopsy report.

60. Dr. Michael Iliescu, Autopsy & Forensic Services, Inc., 2276 W. Periwinkle Way, Chandler, AZ 85248, 480-452-3559. Dr Michael Iliescu will testify regarding his independent report of autopsy of Bradley Alexander Lewis. Particularly, but not limited to, the discrepancies between both autopsy reports and his findings on the cause of death of Bradley Alexander Lewis.

61. Dr. Joseph Peles, Accident Reconstructionist& Injury Biomechanics Consultant at BioRec, 602 S. Perry Lane, Tempe, AZ 85281, 480-966-0143. Dr. Joseph Peles will testify regarding his accident reconstruction report and scene animation. Particularly, but not limited to, scene animation utilizing simulation software, Crash Data Retrieval (CDR), & Injury Analysis through experimental testing and computer modeling.

62. Lucien Haag, Criminalist/Firearms Examiner/Independent Forensic Consultant, Haag Forensic Science Services, Inc., PO Box 5347, Carefree, AZ 85377, 480-488-4445. Mr. Haag will testify regarding his shooting incident reconstruction report. Particularly, but not limited to, exterior and terminal ballistic properties, effects and behavior of projectiles, and reconstruction of the shooting scene that caused the death of Bradley Alexander Lewis.

63. Samir Lyons and Damian Winterbottom, Animation Experts at Trial Ready Pro, 30941 Agoura Lane, Suite 206, West Lake Village, CA 91361, 1-800-741-0410. Mr. Lyons and Mr. Winterbottom will testify to the methods they used to create an animated simulation of Mr. Lewis' actions from the time he exited his vehicle until he landed on the

ground, and the source information that he relied upon in creating that animation. See Exhibits 59 and 106.

64. Conor McCourt, Video Expert McCourt Video Analysis and Investigations, Inc., 127 West 83 Street #5, NY, NY 10024, 914-393-9189. Mr. McCourt will testify to all matters relevant to the case, including, but not limited to, his expert video analysis and investigation of surveillance systems.

65. Daniel Christiano, PhD, Licensed Clinical Psychologist, 1630 E. White Mountain Boulevard-B, Pinetop, AZ 85935, 480-577-6367. Dr. Christiano will testify to all matters relevant to the case, including, but not limited to, adolescent and forensic psychology.

**II: Witnesses Defendants expect to call:**

1. Deputy Anthony Pool, 8963 – fact witness
Pima County Sheriff's Department
c/o Daryl Audilett
Audilett Law PC

Deputy Pool will testify regarding responding to call PCSD 201204090 on 12-04-2020, where Bradley Lewis had threatened two men with a black handgun, and regarding the statements he took about that incident, and regarding his prior knowledge of Bradley A. Lewis. (Defts' SDS 9.)

Deputy Pool also responded to Paseo de Angel and Positano Way on 1-20-2021 in response to the subject incident, and made contact with Sgt. Moseley, who briefed him. Deputy Pool set up spikes at the intersection in case the vehicle attempted to flee. He observed the blue Toyota Tacoma take off, deputies pursued the vehicle, and he overheard several shots from a handgun. Deputy Pool will testify according to his supplement at PCSD 2012 – 2013; and about what he did and observed, and regarding any items he may have placed into evidence.

Deputy Pool will testify according to his Declaration and attachments, produced at PCSD 9197 – 9233. (Defts' SDS 11.)The Declaration was also Defendants' SSOF (Doc. 65) Exhibit 1.

2. Detective Chamonix Valdez, Robbery/Assault – fact witness
Pima County Sheriff's Department
c/o Daryl Audilett
Audilett Law PC

Detective Valdez will testify about PCSD case 201204090, the case being assigned to her, and regarding generating the PC Alert on 12-18-20 for Bradley A. Lewis, *see* the PC Alert at PCSD 05660-05661. The Alert is as a result of the incident in PCSD Report 201204090, where Lewis threatened two young men with a gun.

Detective Valdez will also testify regarding her interview of Ralph Stricklen on December 16, 2020 at the Stricklen home. Audio of that interview is at PCSD 07614, the transcript is at PCSD 7973 – 7976. (Defts' SDS 9.)

Detective Valdez will also testify according to her Declaration, PCSD 9247 – 9261, produced with Defendants' 1-5-2024 Twelfth Supplemental Disclosure Statement, and attached as an exhibit to Defendants' Separate Statement of Facts (Doc. 65, Ex 2).

3. Deputy David Baird 5393 – fact witness
Pima County Sheriff's Department
c/o Daryl Audilett
Audilett Law PC

On 1-20-2021 at 0322 Deputy Baird responded to the initial call of a suspicious person from Michelle Stewart at 2133 W Morning Jewel Place. Deputy Baird talked to Emelinda De Senney from 2202 W. Morning Jewel Place, and to Joshua Stine at 2143 W Morning Jewel Place. He reviewed surveillance video from Ms. Stewart and Ms. De Senney's residence of the suspect with a blue pickup truck attempting to get into their vehicles, and placed the video into evidence.

Deputy Baird checked the area for the blue pickup truck, made contact with a security guard who advised he had not seen it, and contacted Communications and requested an attempt to locate be put out for the blue pickup truck. Deputy Baird was contacted by Marana PD, who advised they had been trying to locate the vehicle earlier in reference to an unrelated incident. MPD identified the suspect as Bradley Lewis, whose photo on Baird's MDC matched the individual he had observed in the two videos from Stewart and De Senney. In the MDC information Baird saw there was a Probable Cause Alert in reference to an Aggravated Assault with a Deadly Weapon with regard to Mr. Lewis.

Deputies responded to 6671 N Paseo de Angel in an attempt to locate the blue pickup truck, but it was not there.

Deputy Baird will testify regarding what he did and observed, and according to his supplement at PCSD 02005 – 02007, and regarding the videos and photos he placed into evidence.

Deputy Baird will testify consistently with his Declaration, PCSD 9234 – 9246, produced with Defendants' 1-5-24 Twelfth Supplemental Disclosure Statement, and submitted as Defendants' MSJ SSOF (Doc. 65) Exhibit 3.

4. Lieutenant Michael Moseley 1227 – fact witness
Pima County Sheriff's Department
c/o Daryl Audilett
Audilett Law PC

The following is not intended to be an exhaustive or all-inclusive description of Sgt. Moseley's anticipated testimony. For a more detailed description of Sgt. Moseley's anticipated testimony, see the January 20, 2021 taped interview of Sgt. Moseley and associated transcript taken by Detective Siress and Detective Rodriguez. (*See* PCSD 2491 – 2523 and PCSD 2524 – 2542 transcripts; and PCSD 2773 and 2774, audio.)

Sgt. Moseley details his extensive law enforcement training and experience. Sgt. Moseley was aware of Bradley Lewis's prior criminal activity and that there was a probable cause arrest alert out on Lewis. Sgt. Moseley was aware that Bradley Lewis may be armed and that Lewis posed a danger to law enforcement and to the public. Early in the morning of January 20, 2021, Sgt. Moseley learned about attempted car break-ins that may be related to Lewis. Sgt. Mosely had been looking for Lewis for several weeks. Sgt. Moseley drove towards Lewis's grandparents' house. He discovered Lewis's truck parked on the road near Lewis's grandparents' house. Sgt. Moseley called for assistance. Sgt. Moseley had Deputy Pool set up road spikes. Sgt. Moseley, Deputy Berry and Deputy Matthew Gilbert pulled up behind Lewis's truck to do a high risk stop. Deputy Robles brought protective ballistic shields to the scene. Deputy Caudillo arrived and a tactical plan was made for Deputy Caudillo to use his patrol unit to block the front of Lewis's truck. Deputy Robles with a ballistic shield went with Deputy Caudillo. Shortly after Deputy Caudillo positioned his patrol unit, Lewis started his truck, backed it up, and then drove forward around Deputy Caudillo's patrol unit. Sgt. Moseley pursued Lewis who began to drive onto his grandparents' driveway. Lewis began backing out and rammed the front of Sgt. Moseley's patrol unit approximately two, maybe three times. Lewis pulled forward. Sgt. Moseley got

out of his patrol unit and advanced forward on foot alongside the driver's side of the grandfather's truck. Sgt. Moseley say Lewis exit the truck and bolt towards the rear, towards Deputy Caudillo. Sgt. Moseley saw something black in Lewis's right hand that Sgt. Moseley perceived to be a gun. Sgt. Moseley feared for his life and for Deputy Caudillo's life. Sgt. Moseley heard gun shots. Sgt. Moseley arrived to where Lewis had fallen to the ground. Sgt. Moseley did what he could to render aid to Lewis, to no avail.

Sgt. (now Lieutenant) Moseley will testify consistently with his Declaration, produced at PCSD 7490 – 7609.

Lieutenant Moseley will testify consistently with his deposition, taken 11-16-23. He will testify regarding the timing of the incident, regarding the audio PCSD 6925 and his notes at PCSD 7965-7966. (Defts' SDS 9.)

Lt. Moseley will testify consistently with his second Declaration dated 4-18-24, PCSD 9300 – 9303, produced with Defendants' MSJ Reply Brief (Doc. 81), and with Defendants' 13th Supplemental Disclosure Statement.

5. Deputy Gilbert Caudillo 1452 – fact witness
Pima County Sheriff's Department
c/o Daryl Audilett
Audilett Law PC

The following is not intended to be an exhaustive or all-inclusive description of Deputy Caudillo's anticipated testimony. For a more detailed description of Deputy Caudillo's anticipated testimony, see the January 25, 2021 taped interview of Deputy Caudillo and associated transcript taken by Detective Siress and Detective Davila. Deputy Caudillo will testify consistent with the January 25, 2021 taped interview (and associated transcript) taken by Detective Siress and Detective Davila. (*See* PCSD 2648 – 2693 transcript; PCSD 2792 audio.)

In that interview, Deputy Caudillo discusses in detail his law enforcement training and experience. Deputy Caudillo will testify about the events of the day in question, beginning with prior to and when he began his patrol shift. He learned (heard) that Sgt. Moseley was on Paseo de Angel where Moseley had located a blue Tacoma truck believed to be associated with Bradley Lewis. There was a probable cause arrest alert out on Lewis. Deputy Caudillo was aware that Bradley Lewis had been or was suspected of being involved in crimes associated with drugs and/or guns. Deputy Caudillo was aware that Lewis may be armed, that Lewis posed a danger to law enforcement and to the public. Deputy Caudillo assisted in apprehending Lewis, first by positioning Deputy Caudillo's patrol unit head to head, at an angle with Lewis's truck. Lewis started his truck, put it in reverse and accelerated rapidly in

reverse away from Deputy Caudillo's patrol unit. Lewis then accelerated rapidly forward and around Deputy Caudillo's patrol unit, through desert brush, and toward Lewis's grandparents' home. Sgt. Moseley pursued Lewis. When Lewis and Sgt. Moseley reached the grandparents' driveway, Lewis put his truck in reverse and accelerated backwards rapidly, ramming into the front of Sgt. Moseley's patrol unit. Lewis then drove his truck forward and stopped it in close proximity to his grandfather's parked Ford F-150 truck. Deputy Caudillo had driven past Sgt. Moseley and stopped his patrol unit close to the rear of Lewis's truck to block Lewis from driving back down the driveway and into the street. Lewis exited his Tacoma truck and ran fast between his truck and his grandfather's truck towards Deputy Caudillo, who was still in his patrol unit. Deputy Caudillo heard Sgt. Moseley shout "Watch out, watch out!" While running very fast, directly at Deputy Caudillo, Lewis's right arm came up with a black object in his hand that Deputy Caudillo perceived to be a gun. Deputy Caudillo feared for his life and fired his handgun, with at least one bullet penetrating and resulting in fatal injury to Lewis. Deputy Caudillo did what he could to render aid to Lewis, to no avail.

Deputy (now Sergeant) Caudillo will testify consistently with his Declaration, produced at PCSD 7404-7489.

Sergeant Caudillo will testify consistently with his deposition, taken 11-15-23.

A transcript of Sgt. Caudillo's public safety statement was produced with Defendants' Response to Plaintiffs' Third Request for Production, and is produced with Defendants' 11-27-23 Ninth Supplemental Disclosure Statement. The audio was produced with Defendants' Initial Disclosure Statement.(Defts' SDS 9.)

Sgt. Caudillo will testify consistently with his second Declaration dated 4-15-24, PCSD 9297 – 9299, produced with Defendants' MSJ Reply Brief (Doc. 81), and with Defendants' 13th Supplemental Disclosure Statement.

6. Deputy Justin Berry 8951 – fact witness
Pima County Sheriff's Department
c/o Daryl Audilett
Audilett Law PC
335 N. Wilmot Road Suite 500
Tucson AZ 85711-2636
520-748-2440

The following is not intended to be an exhaustive or all-inclusive description of Deputy Berry's anticipated testimony. For a more detailed description of Deputy Berry's anticipated testimony, see the January 20, 2021 taped interview of Deputy Berry and

associated transcript taken by Detective Siress and Detective Rodriguez. (*See* PCSD 2585 – 2596 transcript; and PCSD 2781, audio.)

Deputy Berry will also testify consistently with his Declaration, PCSD 9024 – 9053. (Defts' SDS 10.)

Deputy Berry started his shift at approximately 6:00 am. He heard Sgt. Moseley request a couple units at his position on Paseo de Angel. Deputy Berry drove to that location, met with, and spoke to Sgt. Mosely. Sgt. Mosely and Deputy Berry cleared the parking areas and vehicles of an adjoining residence. Sgt. Moseley told Deputy Berry that the suspect's name was Bradley Lewis and that the suspect was known to carry a firearm. A white Jeep Cherokee approached and was allowed to pass through. The suspect pickup truck was a light blue Toyota. Sgt. Moseley decided to post up behind the truck and start challenging the suspect vehicle. A spotlight was turned onto the truck. Deputy Berry did "call outs" stating to the effect that "this is the Sheriff's Department. Bradley Lewis place your hands outside of the vehicle." Deputy Berry could not see anyone inside the truck. Deputy Caudillo drove his patrol unit up past the truck then u-turned to approach it at an angle. When Deputy Caudillo's patrol unit stopped, the truck engine started up, the back-up lights came on and then the truck went forward and ran over a tree. Deputy Berry called out that there was somebody inside the truck and that it had started. Deputy Berry heard tires popping when the suspect truck ran over the tree or brush, and Deputy Berry called out that tires are popped. Sgt. Mosely got into his vehicle and followed the truck. Deputy Berry got into his vehicle and followed. Deputy Berry pulled into the driveway and stopped. Deputy Berry saw an older white male standing nearby. Deputy Berry asked him to show his hands. The male wouldn't. The male was smoking a cigarette with one hand. As Deputy Berry was approaching the older male, Deputy Berry heard the challenges and then heard the gunshots. Deputy Berry patted down the male and told him to step away from the area. The male was reluctant, and Deputy Berry had to physically pull on his shirt to get him to step away from the area. Deputy Berry told him to walk towards the other responding units. The male disregarded those instructions and stayed where he was. Deputy Berry grabbed a tourniquet, asking where it should be placed. Deputy Berry saw a wound on the suspect's right shoulder and blood coming from his mouth. Deputy Berry observed the locations where the various vehicles were stopped. The suspect was saying that he's been shot and he needs help. Deputy Berry and another deputy cleared the pickup truck, finding no one else inside it.

Deputy Berry will also testify consistently with his deposition, taken December 20, 2023. (Defts' SDS 13.)

7. Deputy Matthew Gilbert, 5968 – fact witness
Pima County Sheriff's Department
c/o Daryl Audilett

Audilett Law PC

Deputy Matthew Gilbert, 5968, responded to the scene after hearing Sgt. Moseley request additional units to respond to Positano Way and Paseo de Angel. Deputy Gilbert will testify according to his supplemental at PCSD 02008 – 02009, and regarding what he did and what he observed.

Sgt. Matthew Gilbert will also testify according to his Declaration, PCSD 9262 – 9266, copy attached to Defendants' Separate Statement of Facts (Doc. 65, Ex 10), and attached to Defendants' Thirteenth Supplemental Disclosure Statement.

8. Deputy Michael Joseph 6324 – fact witness
Pima County Sheriff's Department
c/o Daryl Audilett
Audilett Law PC

Deputy Michael Joseph, 6324, had Ruiz-Torres grab his IFAK from his patrol vehicle, assisted Deputy Robles and Deputy Hudson with clearing the suspect's truck, began CPR until NWFD arrived. At request of Sgt. Goritz, he checked with neighbors Traci and Leslie Caruthers at 6661 N Paseo de Angel, who had video surveillance at their front door. Deputy Joseph spoke to neighbor Steven Richards, who also provided video footage of the pickup truck leaving the residence at 6671 N Paseo de Angel, and returning back to the residence with patrol vehicles following behind him.

Deputy Joseph will testify regarding what he did and observed, and regarding any video or other items he placed into evidence. He will testify according to his supplement at PCSD 02010 and 02011.

Deputy Joseph will also testify according to his Declaration, PCSD 9267 – 9272, copy attached to Defendants' Separate Statement of Facts (Doc. 65, Ex 11), and attached to Defendants' Thirteenth Supplemental Disclosure Statement.

9. Flores, Detective Miguel H. 1388 – fact witness
Pima County Sheriff's Department
c/o Daryl Audilett
Audilett Law PC

Detective Flores was the case officer and will testify regarding investigation he and others did, interviews he took and in which he participated. Detective Flores will testify according to his report at pp. PCSD 02095 – 02103. He will testify regarding the evidence

gathered and tested, including but not limited to that reflected in pp. PCSD 02104 – 02109, and on Evidence Sheets, pp. PCSD 2799-2854.

Detective Flores will also testify according to his Declaration dated January 10, 2024, PCSD 9318 – 9363, and regarding the attachments, produced with Defendants' Separate Statement of Facts (Doc. 65, Ex 12) and with Defendants' 13th Supplemental Disclosure Statement.

10. Jeffrey A. Garrett, neighbor – fact witness
2741 W Positano Way
Tucson AZ 85741
520-869-1472

Mr. Garrett's home is behind and to the northwest of the Stricklen home. Mr. Garrett will testify according to his statement, (PCSD 02740-02744) and that he heard a siren, and a command of "Show me your hands" prior to three gunshots. (Defts' SDS 9.)

Mr. Garrett will testify according to his deposition taken December 20, 2023, and regarding the photographs showing the view from his home to the Stricklen home, PCSD 8992 and PCSD 8993. (Defts' SDS 10.)

11. Helen J. Stricklen – fact witness
6671 N. Paseo de Angel
Tucson AZ 85741
520-297-0628

The Lewis family members will testify regarding Bradley Alexander Lewis's childhood, upbringing, relationships with others, including family members. They will testify regarding his employment history, military history, criminal history, and general personality traits.

Helen Stricklen will also presumably testify according to her statements, PCSD 02543 – 02563 and PCSD 02579 – 02584, and according to her deposition taken August 30, 2023. Helen Stricklen will testify regarding the texts, emails and other documents produced by Plaintiffs, and regarding the texts she exchanged with Alex on 1-19-21 and 1-20-21. Ms. Stricklen will testify regarding having heard a command given prior to the shooting.

12. Ralph R. Stricklen – fact witness
6671 N. Paseo de Angel
Tucson AZ 85741
520-297-0628

The Lewis family members will testify regarding Bradley Alexander Lewis's childhood, upbringing, relationships with others, including family members. They will testify regarding his employment history, military history, criminal history, and general personality traits.

Ralph Stricklen will also testify according to his statements, PCSD 02563 – 02578 and PCSD 02579 – 02584, and according to his deposition taken August 30, 2023.

13. Anna Christine Lewis – fact witness
c/o Eduardo Coronado

The Lewis family members will testify regarding Bradley Alexander Lewis's childhood, upbringing, relationships with others, including family members. They will testify regarding his employment history, military history, criminal history, and general personality traits. Ms. Lewis will also testify regarding texts, emails and other documents produced by Plaintiffs, and according to her deposition taken August 29, 2023.

14. Bradley Marshall Lewis – fact witness
c/o Eduardo Coronado

The Lewis family members will testify regarding Bradley Alexander Lewis's childhood, upbringing, relationships with others, including family members. They will testify regarding his employment history, military history, criminal history, and general personality traits. Mr. Lewis will also testify regarding texts, emails and other documents produced by Plaintiffs, and according to his deposition taken August 29, 2023.

15. Traci Carruthers – fact witness
Formerly of 6661 N. Paseo De Angel
Tucson AZ
Current address redacted upon request

Traci and her daughter Aubree Caruthers, neighbors, gave a statement at PCSD 02615-02625. Traci Caruthers will also testify according to her Declaration produced with Defendants' Reply Brief (Doc. 81), pp. PCSD 9304 – 9317, and with Defts' SDS 13. Traci Caruthers will testify about Anna Lewis telling Traci to keep her daughter away from Anna's son Alex, that Alex was bad news. Traci Caruthers will testify regarding what she observed on January 20, 2021, what she said and did not say.

16. Steve Ijames – Defendants' police procedures expert

1258 S. Rosemoor Drive
Nixa, Missouri 65714

Mr. Ijames will testify regarding his review of this incident and the materials related to it, and according to his expert report. Mr. Ijames' list of publications, CV, fee schedule and list of cases is at PCSD 7632 – 7712. Mr. Ijames will testify consistently with his deposition taken 12-15-23.

17. Matthew Noedel, Defendants' ballistics and forensic science reconstruction expert
P O Box 73808
Puyallup WA 98373

Mr. Noedel will testify regarding his review of this incident and the materials related to it, regarding inspections and testing he has done, and according to his expert report. Mr. Noedel's CV, fee schedule and list of cases is at PCSD 7878 - 7959. Mr. Noedel will testify consistently with his deposition taken 12-11-23.

18. Michael J. Kuzel – Defendants' reconstruction, biomechanics, human factors expert
4M Safety
3370 N Hayden Road No. 123-683
Scottsdale AZ 85251

Mr. Kuzel is Defendants' human factors, reconstruction, biomechanical engineering expert. Mr. Kuzel will testify regarding his review of this incident and the materials related to it, regarding inspections and testing he has done, and according to his expert report. Mr. Kuzel's CV, fee schedule and list of cases is at PCSD 7713 – 7877. Mr. Kuzel will testify consistently with his deposition taken 12-14-23.

**III. Witnesses Defendants may call if necessary:**

19. Deputy Theodore Robles 1342 – fact witness
Pima County Sheriff's Department
c/o Daryl Audilett
Audilett Law PC

The following is not intended to be an exhaustive or all-inclusive description of Deputy Robles's anticipated testimony. For a more detailed description of Deputy Robles's anticipated testimony, see the January 20, 2021 taped interview of Deputy Robles and

associated transcript taken by Detective Houston and Detective Davila. (*See* PCSD 2585 – 2596 transcript; and PCSD 2778, audio.)

Deputy Robles heard Sgt. Moseley come on the radio requesting assistance. Deputy Robles became aware that during the shift preceding his shift, there were calls about a white male breaking into or trying to break into parked cars. Deputy Robles heard a request for ballistic shields so he picked put two ballistic shields from the Foothills District Office and took them to the scene on Paseo de Angel. Since shields were being requested, Deputy Robles assumed that a suspect may be armed. When Deputy Robles arrived at the scene, there were patrol units stationed behind a blue pickup truck that was lit up with patrol unit lights and commands were being given to anyone who may be occupying the truck. Deputy Robles contacted the neighbor to get permission to check her front and back yards. After Deputy Caudillo arrived, Deputy Robles with a ballistic shield got into the rear driver's side passenger seat of Deputy Caudillo's patrol unit. Deputy Caudillo drove the patrol unit past the truck and then u-turned to pull up to the front of the truck at an angle to block it. During that maneuver, the suspect's grandfather drove his truck towards them and was ordered to go back, to leave. Around the time that Deputy Caudillo stopped his patrol unit, Deputy Caudillo immediately started giving commands "show me your hands" and Deputy Caudillo stated words to the effect of, "he's in the vehicle". Deputy Robles was in the process of getting out of the patrol vehicle with the shield. He saw a white male sitting behind the steering wheel of the truck. The driver started the truck and drove through the brush around Deputy Caudillo's patrol unit. Deputy Caudillo drove after the truck. Deputy Robles ran back to his patrol unit, got in, and followed. At some point, Deputy Robles heard on the radio indicating an officer involved shooting (998). When Deputy Robles arrived at the scene of the shooting, the shooting had already occurred. Sgt. Moseley requested an IFAK (Individual First Aid Kit) which I obtained from my patrol unit and handed it over. Sgt. Moseley asked me to go talk to the grandfather. Deputy Robles made contact with the grandfather and eventually went to the front of the residence and met up with the wife (grandmother). Deputy Robles stood by with them until detectives arrived to interview them. Deputy Robles spoke briefly to the grandfather and learned that the suspect had called the grandfather earlier that morning. During the incident described above, it was dark.

20. Detective G. M. Houston, 5976 – fact witness
Pima County Sheriff's Department
c/o Daryl Audilett
Audilett Law PC

Houston, Detective G. M. 5976, supplement at PCSD 02050 – 02055. Detective Houston will testify according to her supplement and regarding what she did and what she observed, regarding interviews and investigation she did.

Detective Houston was also present during Detective Chamonix Valdez's interview of Ralph Stricklen on 12-16-20 at the Stricklen home at 6671 N Paseo de Angel when Detective Valdez was investigating and trying to contact Bradley Alexander Lewis regarding the incident on 12-04-20 where Lewis pointed a handgun at Chip Frank, PCSD Report No. 201204090, and will testify regarding same. (Defts' SDS 9.)

21. Detective Jason R. Davila – fact witness
Pima County Sheriff's Department
c/o Daryl Audilett
Audilett Law PC

Detective Davila will testify regarding investigation he did, interviews he took and in which he participated. Detective Davila will testify according to his reports, at pp. PCSD 02082 – 02083 and at PCSD 02091 – 02094.

22. Pima County Medical Examiner David C. Winston,
Ph.D. Forensic Pathologist – fact witness
Pima County Office of the Medical Examiner
2825 E. District Street
Tucson AZ 85714
520-724-8600

Dr. Winston will testify about the autopsy he performed, and his findings. He will testify regarding the file of the Pima County OME, x-rays and photographs**.**

23. Daniel Schur (Paramedic) – fact witness
Northwest Fire District

Paramedic Schur will testify consistently with his statement (PCSD 02707 – 02710; audio PCSD 02786)and with his deposition taken January 5, 2024. (Defts' SDS 13.)

24. James Bailey (Paramedic) – fact witness
Northwest Fire District

Paramedic Bailey will testify consistently with his statement (PCSD 02711 – 02716; audio PCSD 02787) and with his deposition, taken January 5, 2024. (Defts' SDS 13.)

25. Eyewitnesses and PCSD deputies and detectives involved in PCSD No. 201204090, on 12-04-2020 where Lewis threatened two young men with a gun, Perry and Frank, witnessed by off-duty TPD Officer Williams. Robert Zucker provided a surveillance

video from his residence, showing the encounter between Lewis, Perry and Frank. *See* the PC Alert atPCSD 05660-05661; the report is at PCSD 6625 – 6640. These are fact witnesses.

Off-duty Tucson Police Department Officer Darren Williams
Jeremy Perry
Chip Frank
Deputy Anthony Pool
Deputy David Obral
Robert Zucker
PCSD Detective Chamonix Valdez
PCSD Detective G. Houston
Ralph Stricklen was also interviewed by Detectives in this case.

Audio of interviews, and the video produced by Robert Zucker are listed below and in exhibits.

PCSD 07611 Audio of Interview Darren Williams, off-duty TPD
PCSD 07612 Audio of Interview Chip Frank
PCSD 07613 Audio of Interview Jeremy Perry
PCSD 07614 Audio of Interview Ralph Stricklen
PCSD 07615 Surveillance Video from Robert Zucker

Transcripts of the interviews were provided with Defendants' Ninth Supplemental Disclosure Statement:

PCSD 7967 – 7970 201204090 Frank, Chip, Interview Transcript, audio previously provided with Defendants' Eighth Supplemental Disclosure Statement at PCSD 7611.

PCSD 7971 – 7972 201204090, Perry, Jeremy, Interview Transcript, audio previously provided with Defendants' Eighth Supplemental Disclosure Statement at PCSD 7612.

PCSD 7973 – 7976 201204090, Stricklen, Ralph, Interview Transcript, audio previously provided with Defendants' Eighth Supplemental Disclosure Statement atPCSD 7613.

PCSD 7977 – 7978 201204090 TPD Williams, Darren, Interview Transcript, audio previously provided with Defendants' Eighth Supplemental Disclosure Statement at PCSD 7610.

26. Custodians of Records, if necessary, including but not limited to: (fact witnesses)

Tucson Police Department

Pima County Sheriff's Department
Oro Valley Police Department
Marana Police Department
Gilbert Police Department
Northwest Fire District
United States Army
Banner University Medical Center, main
AXIS Toxicology
Pima County Medical Examiners' Office
Any and all records concerning Bradley A. Lewis or the Plaintiffs

Tiffany Smetak, Pima County Sheriff's Department, assistant in Robbery/Homicide, will testify regarding the Probable Cause Alert on Bradley A. Lewis, inputting it into the system, and periodically confirming it should remain active. (See Probable Cause Alert, PCSD 5660 – 5661, witnesses listed in No. 23 above, and PCSD Report 201204090, pp. PCSD 6625 – 6640.)

Custodian of Records, Pima County Attorney's Office, County Attorney Ellen Brown, and appropriate witnesses to testify regarding the documents produced with Defendants' Tenth Supplemental Disclosure, documents at the County Attorney's Office regarding Bradley A. Lewis. These documents were the subject of a request for production by Plaintiffs.

Kathryn M. Parker, PSSS Communications, will testify regarding the recording at PCSD 9196 Real Time Radio Excerpt 210120022.wma that she produced in email to Detective Miguel Flores on Thursday, April 8, 2021, and the fact that it is a real-time recording. (Defts' SDS 11.)

27. Forensic Technician Heather Barnett 8296 – fact witness
Pima County Sheriff's Department
c/o Daryl Audilett
Audilett Law PC
335 N. Wilmot Road Suite 500
Tucson AZ 85711-2636
520-748-2440

Barnett, Forensic Technician Heather 8296. Technician Barnett took photos of the decedent in the UMC trauma room. She also assisted Technician Brooks 8421 at 6671 N Paseo de Angel with scanning the scene, started registration process for the scans, and uploaded raw data into the DIMS system (Digital Imaging Management System). Technician Barnett's supplements are at PCSD 02017 – 02018; and PCSD 02032 regarding the autopsy

and photographing the body and the projectile. She will testify according to her supplements, about what she did and about what she observed and submitted into Evidence.

28. Forensic Technician M. D. Brooks, 8421 – fact witness
Pima County Sheriff's Department
c/o Daryl Audilett
Audilett Law PC
335 N. Wilmot Road Suite 500
Tucson AZ 85711-2636
520-748-2440

Brooks, Forensic Technician M. D. Technician Brooks' supplement is at PCSD 02029 – 02031. *See* supplement. Technician Brooks took many photographs, including using a drone to photograph the scene.

29. Forensic Technician K. J. Gruenwald, 8160 – fact witness
Pima County Sheriff's Department
c/o Daryl Audilett
Audilett Law PC
335 N. Wilmot Road Suite 500
Tucson AZ 85711-2636
520-748-2440

Gruenwald, Forensic Technician K. J. 8160, his supplement is at PCSD 02026, put the blue Toyota Tacoma truck into the PCSD Impound at 1650 E. Benson Highway, Suite B, assisted Det. Heath in placing the truck into a secured impound, sealing the truck, and photographing the truck.

30. Forensic Technician T. Kranz 8705 – fact witness
Pima County Sheriff's Department
c/o Daryl Audilett
Audilett Law PC
335 N. Wilmot Road Suite 500
Tucson AZ 85711-2636
520-748-2440

Kranz, T. 8705, took photos of the incident scene using a drone. His supplement is at PCSD 02046. He created an incident scene using the photos and PIX4d software. *See* supplement.

31. Lucien Haag, Criminalist/Firearms Examiner, Independent Forensic Consultant – expert witness

Haag Forensic Science services, Inc.
PO Box 5347
Carefree AZ 85377
480-488-4445

Mr. Haag will testify according to his initial report and according to his rebuttal report concerning the opinions of Matthew Noedel, defense ballistics expert.

32. Defendants list Samir Lyons, Animation Experts at Trial Ready Pro, 30941 Agoura Lane, Suite 206, West Lake Village, CA 91361, 1-800-741-0410, as a may call witness, to provide foundation for his animation stills and videos if those are allowed, Plaintiffs' Exhibits 60 and 79 through 86.

33. Defendants reserve the right to call any witness listed by Plaintiffs to whom Defendants do not object.

**F. LISTS OF EXHIBITS**

**I. Exhibits Plaintiffs expect to offer:**

Plaintiff plans to use all exhibits listed at trial unless otherwise noted. Defendants' objections are noted next to each exhibit to which Defendants object.

1. 000001-000018 Dr. William Harmening's Use of Force Analysis/Expert Opinion Report, attached hereto and incorporated herein as "Exhibit 1."

Defendants' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.May be used to refresh recollection or for impeachment.

2. 000019-000023 Independent Report of Autopsy by Dr. Michael Iliescu, attached hereto and incorporated herein as "Exhibit 2."

Defendants' Objections: Expert reports are not admissible. Hearsay, foundation,relevance, cumulative, Rule of Evidence 403. May be used to refresh recollection or for impeachment.

3. 000024-000034 Pima County Autopsy Report, Agency Case #210120022, attached hereto and incorporated herein as "Exhibit 3."

Defendants' Objections: No Objection.

4. 000035-000063 Scene Photos taken by Private Investigator, Raymond Pacheco, attached hereto and incorporated herein as "Exhibit 4."

Defendants' Objections: Foundation, relevance, cumulative, duplicative.

5. 000064-000067Neighborhood Canvas Report by Private Investigator, Raymond Pacheco, attached hereto and incorporated herein as "Exhibit 5."

Defendants' Objections: Hearsay, relevance, foundation, Rule of Evidence 403. Signer is Victor Lugo, Private Investigator.

6. 000068-000069Report regarding Sheriff Chris Nanos by Private Investigator, Raymond Pacheco, attached hereto and incorporated herein as "Exhibit 6."

Defendants' Objections: Hearsay, relevance, foundation, Rule of Evidence 403. This purports to be a letter report on a conversation between Sheriff Nanos and Investigator Raymond Pacheco.

7. 000070-000072Report regarding Ralph Stricklen by Private Investigator, Raymond Pacheco, attached hereto and incorporated herein as "Exhibit 7."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403. This purports to be a letter report on a conversation between Ralph Stricklen and Investigator Raymond Pacheco.

8. 000073-000107Northwest Fire District Hospital Report, attached hereto and incorporated herein as "Exhibit 8."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.These are records of Northwest Fire District first responders and will be cumulative if those personnel are called to testify. Defendants contend the Plaintiffs' claim for inadequate medical treatment was dismissed. No objection to the extent that time entries are used to demonstrate prompt notice time, dispatch time, and arrival time. No objection to the extent the records are used to show that first aid and CPR being done was in progress as observed by medics.

9. 000108-000111Pima County Attorney's Office Investigation letter regarding determination, attached hereto and incorporated herein as "Exhibit 9."

Defendants' Objections: No objection.

10. 000112-000124Article by Electronic Frontier Foundation, titled: *Surveillance Tech in Pima County, Arizona*, attached hereto and incorporated herein as "Exhibit 10."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

11. 000125-000129Article by Patrick McNamara, Arizona Daily Star, titled: *AZ Bills Require Police to Wear Body Cameras*, attached hereto and incorporated herein as "Exhibit 11."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

12. 000130-000131Bradley Alexander Lewis' Certificate of Death, attached hereto and incorporated herein as "Exhibit 12."

Defendants' Objections: Hearsay, foundation, duplicative, relevance, Rule of Evidence 403.This copy is marked with heavily marked with "Void".

13. 000132-000134Law Enforcement Code of Ethics for State of Arizona, County of Pima, attached hereto and incorporated herein as "Exhibit 13."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

14. 000135-000153Chapter 3, Major Policies, from *Pima County Sheriff's Department General Order*, attached hereto and incorporated herein as "Exhibit 14."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

15. 000154-000155Pima County Sheriff's Department Memorandum of Sheriff Chris Nanos, attached hereto and incorporated herein as "Exhibit 15."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.This is a memo from Sgt. Erin Gibson to Sheriff Nanos regarding Caudillo's administrative leave after the shooting extending for two extra days.

16. 000156-000159Tweets by Deputy Gilbert Caudillo from his personal Twitter page, attached hereto and incorporated herein as "Exhibit 16."

Defendants' Objections: Hearsay, relevance, foundation, Rule of Evidence 403.

17. 000160-000162Letter by Jason McGowan regarding his friendship and acquaintance with Bradley Alexander Lewis, attached hereto and incorporated herein as "Exhibit 17."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403. Mr. McGowan has not been disclosed or listed as a witness.

18. 000163-000164Letter by Kathy Stricklen, aunt, regarding her memories of Bradley Alexander Lewis, attached hereto and incorporated herein as "Exhibit 18."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.Kathy Stricklen is listed by Plaintiffs as a trial witness.

19. 000165-000166Letter by Ralph Stricklen, maternal grandfather, regarding Bradley Alexander Lewis through his eyes, attached hereto and incorporated herein as "Exhibit 19."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.Mr. Stricklen is listed as a trial witness.

20. 000167-000168Letter from the Rodriguez Family, aka godparents of Bradley Alexander Lewis, attached hereto and incorporated herein as "Exhibit 20."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.This is a handwritten letter signed "The Rodriguez Family."

21. 000169-000170Letter from Crissel Rodriguez regarding his acquaintance of Bradley Alexander Lewis, attached hereto and incorporated herein as "Exhibit 21."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.Crissel Rodriguez is listed by Plaintiffs as a trial witness.

22. 000171-000172Letter by Elisban Rodriquez who has known Bradley Alexander Lewis since he was a kid, attached hereto and incorporated herein as "Exhibit 22."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.Elisban Rodriguez is listed by Plaintiffs as a witness.

23. 000173-000174Letter by Anna Lewis, Bradley Alexander Lewis' Mother, attached hereto and incorporated herein as "Exhibit 23."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

24. 000175-000176Letter by Madison Lewis, Bradley Alexander Lewis' cousin, attached hereto and incorporated herein as "Exhibit 24."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403. Madison Lewis is listed by Plaintiffs as a trial witness.

25. 000177-000178Letter by Jacinda and Gas Light Theater Staff, Bradley Alexander Lewis' place of employment, attached hereto and incorporated herein as "Exhibit 25."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403. No one from the Gas Light Theater listed as a witness.

26. 000179-000180Letter by Preston and Diane Lewis, Bradley Alexander Lewis' grandparents, attached hereto and incorporated herein as "Exhibit 26."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403. Preston and Diane Lewis are listed as trial witnesses.

27. 000181-000182Letter by Helen Stricklen, Bradley Alexander Lewis' maternal grandmother, attached hereto and incorporated herein as "Exhibit 27."

<u>Defendants' Objections:</u> Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.Helen Stricklen is listed as a trial witness.

28. 000183-000187Letter by Preston Lewis, Judy Light Ayyildiz, and Bradley Lewis regarding their memories of Alexander Bradley Lewis, attached hereto and incorporated herein as "Exhibit 28."

<u>Defendants' Objections:</u> Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.Judy Light Ayyildiz was not disclosed or listed by Plaintiffs as a witness. Preston and Diane Lewis are listed as trial witnesses.

29. 000188-000190Nine entries of memories and condolences of Bradley Alexander Lewis and his family, attached hereto and incorporated herein as "Exhibit 29."

<u>Defendants' Objections:</u> Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.There are two entries by Gregory Preston Lewis, who is listed as a trial witness, and one entry by a "Madison" (McCormick Hash) who may be trial witness Madison Lewis. The other entries are by unknown persons.

30. 000191-000192Letter by Gregory Lewis, Bradley Alexander Lewis' Uncle, attached hereto and incorporated herein as "Exhibit 30."

<u>Defendants' Objections:</u> Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.Gregory Lewis is listed by Plaintiffs as a trial witness.

31. 000193-000194Letter by Keith Lewis, Bradley Alexander Lewis' Uncle, attached hereto and incorporated herein as "Exhibit 31."

Defendants' Objections: Hearsay, relevance, foundation, cumulative, Rule of Evidence 403.Keith Lewis is listed by Plaintiffs as a trial witness.

32. 000195-000197Bradley Alexander Lewis Toxicology Report, attached hereto and incorporated herein as "Exhibit 32."

Defendants' Objections: No Objection.

33. 000198-000208Bradley Alexander Lewis Medical Marijuana Card, attached hereto and incorporated herein as "Exhibit 33."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

34. 000209-000209Security Footage from Rob Theditor, neighbor of Ralph and Helen Stricklen, attached hereto and incorporated herein as "Exhibit 34."

Defendants' Objections: This blurry video shows the shooting scene after the shooting, and shows some officers going to the Lewis truck to clear it. Foundation, relevance, Rule of Evidence 403.

35. 000210-000214Security Photos from Rob Theditor, neighbor of Ralph and Helen Stricklen, attached hereto and incorporated herein as "Exhibit 35."

Defendants' Objections: Foundation, relevance, photos/images are too blurry, out of focus and pixelated to be of use, Rule of Evidence 403.

36. 000215-000252Biographical Information & CV for Ballistics Expert, Mr. Lucien Haag, attached hereto and incorporated herein as "Exhibit 36."

<u>Defendants' Objections:</u> Hearsay, foundation, cumulative, Rule of Evidence 403.

37. 000253-000257Biographical Information & CV for Accident Reconstructionist Expert, Dr. Joseph Peles, attached hereto and incorporated herein as "Exhibit 37."

<u>Defendants' Objections:</u> Hearsay, foundation, cumulative, Rule of Evidence 403.

38. 000258-000263Dr. Jospeh Peles' Inspection Protocol Letter, attached hereto and incorporated herein as "Exhibit 38."

<u>Defendants' Objections:</u> Hearsay, foundation, cumulative, Rule of Evidence 403.

39. 000264-000265Birth Certificate for Bradley Alexander Lewis, attached hereto and incorporated herein as "Exhibit 39."

<u>Defendants' Objections:</u> Hearsay, foundation, cumulative, Rule of Evidence 403.

40. 000266-000267DD-214 for Bradley Alexander Lewis, attached hereto and incorporated herein as "Exhibit 40."

<u>Defendants' Objections:</u> No Objection.

41. 000268-000540School Records for Bradley Alexander Lewis, attached hereto and incorporated herein as "Exhibit 41."

<u>Defendants' Objections:</u> Hearsay, foundation, relevance, cumulative, this exhibit contains 273 pages of various types of documents without explanation of what the documents are, what the documents depict, what the documents are meant to prove, Rule of Evidence 403.

42. 000541-000561Federal Income Tax Returns for Bradley Alexander Lewis, attached hereto and incorporated herein as "Exhibit 42."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

43. 000562-000574State Income Tax Returns for Bradley Alexander Lewis, attached hereto and incorporated herein as "Exhibit 43."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

44. 000575-000641Medical and Mental Health Records for Bradley Alexander Lewis, attached hereto and incorporated herein as "Exhibit 44."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

45. 000642-001883Text Message Communications between Plaintiffs and Decedent, Bradley Alexander Lewis, attached hereto and incorporated herein as "Exhibit 45."

Defendants' Objections: This exhibit contains 1242 pages of sms text exchanges. Defendants object on the basis of hearsay, foundation, relevance, Rule of Evidence 403.

46. 001884-001936All Legal Charges, Infractions, Citations, and Investigations Related to Bradley Alexander Lewis, attached hereto and incorporated herein as "Exhibit 46."

Defendants' Objections: No Objection.

47. 001937-001937All Known Images of Decedent, Bradley Alexander Lewis, attached hereto and incorporated herein as "Exhibit 47."

Defendants' Objections: If this is the material produced in response to request for production, the folder contains approximately 6,761 files,consisting of photos and videos in various formats. Foundation, relevance, cumulative, Rule of Evidence 403. Approximately 3000 file names appear to be duplicates, and some files are in formats that can't be opened.

48. 001938-001942All Known Banking Records of Decedent, Bradley Alexander Lewis, attached hereto and incorporated herein as "Exhibit 48."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

49. 001943-002004All Writings and Drawings Ever Created by Bradley Alexander Lewis, attached hereto and incorporated herein as "Exhibit 49."

Defendants' Objections: This exhibit contains miscellaneous letters, many of which are written to persons other than Anna Lewis and Bradley Lewis and are hearsay, lack foundation, not relevant, cumulative, precluded by Rule of Evidence 403.

50. 002005-002010Copies of Surveillance Videos Provided by Neighbors in Paseo de Angel Area at the Time of the Incident, attached hereto and incorporated herein as "Exhibit 50."

Defendants' Objections: This exhibit/video is not viewable in the format provided in disclosure.

51. 002011-002013Video(s) of Bradley Alexander Lewis' Toyota Tacoma Taken on April 16th, 2021, attached hereto and incorporated herein as "Exhibit 51."

Defendants' Objections: This exhibit/video is not viewable in the format provided in disclosure.

52. 002014-002214Bradley Alexander Lewis' Emails Received and Sent, attached hereto and incorporated herein as "Exhibit 52."

Defendants' Objections: This exhibit contains 201 pages of miscellaneous emails related to Lewis and unrelated to any issue in this lawsuit. Defendants' objections are:

Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

53. 002215-002230Luke Haag Illustrated Report, attached hereto and incorporated herein as "Exhibit 53."

Defendants' Objections: Written expert reports are not admissible. Hearsay, foundation, relevance, Rule of Evidence 403. May be used to refresh recollection or for impeachment.

54. 002231-002254Selected PCSO Scene Photos, Slides Assembled and Annotated by Luke Haag, attached hereto and incorporated herein as "Exhibit 54."

Defendants' Objections: No Objection.

55. 002255-002266Selected PCSO Aerial Views of Scene, Slides Assembled and Annotated by Luke Haag, attached hereto and incorporated herein as "Exhibit 55."

Defendants' Objections: No Objection.

56. 002267-002271Conor McCourt 2023 CV/Biographical Information, attached hereto and incorporated herein as "Exhibit 56."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

57. 002272-002283Conor McCourt Forensic Video Analysis Report, attached hereto and incorporated herein as "Exhibit 57."

Defendants' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.May be used to refresh recollection or for impeachment.

58. 002284-002285Conor McCourt 2023 Full List of Cases for a 4 Year Period, attached hereto and incorporated herein as "Exhibit 58."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

59. 002286-002289Samir Lyons/Trial Ready Pro CV/Biographical Information, attached hereto and incorporated herein as "Exhibit 59."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

60. 002290-002303Decedent, Bradley Alexander Lewis, Trajectory Stills from Trial Ready Pro, attached hereto and incorporated herein as "Exhibit 60."

Defendants' Objections: Foundation, relevance, Rule of Evidence 403. To the extent that the photos contained herein can be accepted into evidence, either stipulated or with proper foundation, and shown to be "substantially similar" to the events depicted, then Defendants may use these photos as substantive exhibits to go to the jury room and/or as demonstrative exhibits.

61. 002304-002307Dr. Daniel Christiano CV/Biographical Information, attached hereto and incorporated herein as "Exhibit 61."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

62. 002308-002310Dr. Daniel Christiano Expert Report/Letter, attached hereto and incorporated herein as "Exhibit 62."

Defendants' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403. May be used to refresh recollection or for impeachment.

63. 002311-002373Dr. Joseph D. Peles' Accident Reconstruction Expert Report with Appendices A & B, Affidavit, CV/Biographical Information, and Trial Testimony List for the Past Four (4) years, attached hereto and incorporated herein as "Exhibit 63."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403. May be used to refresh recollection or for impeachment.

64. 002374-002392 Dr. William Harmening's Amended Use of Force Analysis/Expert Opinion Report, attached hereto and incorporated herein as "Exhibit 64."

Defendants' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403. May be used to refresh recollection or for impeachment.

65. 002393-002398 Dr. William Harmening's CV/ Biographical Information, attached hereto and incorporated herein as "Exhibit 65."

Defendants' Objections: Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

66. 002399-002405 Bill Harmening's Expert Rebuttal of the Analysis and Report of Defense Expert Steve Ijames, attached hereto and incorporated herein as Exhibit 66."

Defendants'Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.May be used to refresh recollection or for

impeachment.

67. 002406-002412Luke Haag's Illustrated Expert Rebuttal Report, attached hereto and incorporated herein as "Exhibit 67."

Defendants' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403. May be used to refresh recollection or for impeachment.

68. 002413-002422 Joe Peles Rebuttal Accident Reconstruction and Bio Mechanical Analysis Report, attached hereto and incorporated herein as "Exhibit 68."

Defendants' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403. May be used to refresh recollection or for impeachment. May be used to refresh recollection or for impeachment.

69. 002423-002671 Contents of "Exemplar Toyota Inspection and Recreation 112123" Directory Cam 1, attached hereto and incorporated herein as "Exhibit 69."

Defendants' Objections: The recreation is not substantially similar to the facts and circumstances of the event in question. Foundation, relevance, Rule of Evidence 403.

70. 002672-002722 Contents of "Exemplar Toyota Inspection and Recreation 112123" Directory Cam 2, attached hereto and incorporated herein as "Exhibit 70."

Defendants' Objections: The recreation is not substantially similar to the facts and circumstances of the event in question. Foundation, relevance, Rule of Evidence 403.

71. 002723-002723Contents of "Exemplar Toyota Inspection and Recreation 112123" Recon 3D, attached hereto and incorporated herein as "Exhibit 71."

Defendants' Objections: The recreation is not substantially similar to the facts and circumstances of the event in question. Foundation, relevance, Rule of Evidence 403.

72. 002724-002724Contents of "Exemplar Toyota Inspection and Recreation 112123" Recreation Videos, Subfolders Cam 1, Cam 2, Go Pro, attached hereto and incorporated herein as "Exhibit 72."

Defendants' Objections: The recreation is not substantially similar to the facts and circumstances of the event in question. Foundation, relevance, Rule of Evidence 403. This is a folder of videos, the subfolder Cam 1 contains nine .MOV files; the subfolder Cam 2 contains 12 MP4 files; the subfolder Go Pro contains four LRV files, four MP4 files and four THM files.

73. 002725-002725 Contents of "Surveillance Frames" Directory attached hereto and incorporated herein as "Exhibit 73."

Defendants' Objections: There are 337 individual frames extracted from video.The individual frames do not depict the event as it was occurring, and so they are not an accurate depiction of the moving vehicles. Foundation, relevance, cumulative, Rule of Evidence 403.

74. 002726-003023Deposition Transcript of Gilberto Caudillo, taken on November 15, 2023, attached hereto and incorporated herein as "Exhibit 74."

Defendants' Objections: No objection, provided that the specific pages and lines are provided to defense counsel well in advance of their intended use, so that defense counsel has an opportunity where appropriate to object to inadmissible hearsay, irrelevance, lack of foundation, and Rules of Evidence 403, and 404(b). Also, so that defense counsel is allowed

to expand the designated portion to be read, in order to provide proper context, and also provided that defense counsel also has an opportunity to identify specific pages and lines to read to the jury.

75. 003024-003294Deposition Transcript of Michael Moseley, taken on November 15, 2023, attached hereto and incorporated herein as "Exhibit 75."

Defendants' Objections: Moseley is no longer a defendant/opposing party. The deposition may be used for impeachment or to refresh recollection. Beyond that, the reading of his deposition to the jury is governed by Rule 32 F.R.Civ.P.

76. 003295-003443 Deposition Transcript of Matt Noedel, taken on December 11, 2023, attached hereto and incorporated herein as "Exhibit 76."

Defendants' Objections: The deposition may be used for impeachment or to refresh recollection. Beyond that, Rule 32, F.R.Civ.P. governs the reading of this deposition to the jury.

77. 003444-003622 Deposition Transcript of Mike Kuzel, taken on December 14, 2023, attached hereto and incorporated herein as "Exhibit 77."

Defendants' Objections: The deposition may be used for impeachment or to refresh recollection. Beyond that, the reading of the deposition to the jury is governed by Rule 32, F.R.Civ.P.

78. 003623-003789 Deposition Transcript of Steve Ijames, taken on December 15, 2023, attached hereto and incorporated herein as "Exhibit 78."

Defendants' Objections: The deposition may be used for impeachment or to refresh recollection. Beyond that, the reading of his deposition to the jury is governed by Rule 32F.R.Civ.P.

79. 003790-003790 Lewis_DptyCaudillo_Animation_Trailing, attached hereto and incorporated herein as "Exhibit 79."

Defendants' Objections: Foundation. Relevance. Lack of substantial similarity to the conditions present at the shooting event. The Lewis character is not dressed the same way as the event in question. The Lewis character's body type, height, weight, and physique do not accurately depict those physical attributes of Lewis. The animation does not accurately depict the speed and timing of the events. The lanyard is not accurately depicted. The animation does not accurately depict Deputy Caudillo's point of view (i.e., through his eyes) while sitting in the patrol car, or while exiting the car, or while shooting. The animation does not accurately depict the lighting which consisted of red and blue flashing strobe-like patrol vehicle emergency lights from both Deputy Caudillo's and Sgt. Moseley's patrol cars.

To the extent that the animation listed here can be accepted into evidence, either stipulated or with proper foundation, and shown to be "substantially similar" to the events depicted, then Defendants may use this animation as a substantive exhibit to go to the jury room and/or as a demonstrative exhibit.

80. 003791-003791 Lewis_DptyCaudillo_Animation_Trailing_NoShirt, attached hereto and incorporated herein as "Exhibit 80."

Defendants' Objections: Foundation. Relevance. Lack of substantial similarity to the conditions present at the shooting event. The Lewis character is not dressed the same way as the event in question. The Lewis character's body type, height, weight, and physique do not accurately depict those physical attributes of Lewis. The animation does not accurately depict the speed and timing of the events. The lanyard is not accurately depicted. The animation does not accurately depict Deputy Caudillo's point of view (i.e., through his eyes) while sitting in the patrol car, or while exiting the car, or while shooting. The animation does not accurately depict the lighting which consisted of red and blue flashing strobe-like patrol vehicle emergency lights from both Deputy Caudillo's and Sgt. Moseley's patrol cars.

To the extent that the animation listed here can be accepted into evidence, either stipulated or with proper foundation, and shown to be "substantially similar" to the events depicted, then Defendants may use this animation as a substantive exhibit to go to the jury room and/or as a demonstrative exhibit.

81. 003792-003792 Lewis_MrLewis_Trailing_Animation_NoShirt_NoSideLight, attached hereto and incorporated herein as "Exhibit 81."

Defendants' Objections: Foundation. Relevance. Lack of substantial similarity to the conditions present at the shooting event. The Lewis character is not dressed the same way as the event in question. The Lewis character's body type, height, weight, and physique do not accurately depict those physical attributes of Lewis. The animation does not accurately depict the speed and timing of the events. The lanyard is not accurately depicted. The animation does not accurately depict Deputy Caudillo's point of view (i.e., through his eyes) while

sitting in the patrol car, or while exiting the car, or while shooting. The animation does not accurately depict the lighting which consisted of red and blue flashing strobe-like patrol vehicle emergency lights from both Deputy Caudillo's and Sgt. Moseley's patrol cars.

To the extent that the animation listed here can be accepted into evidence, either stipulated or with proper foundation, and shown to be "substantially similar" to the events depicted, then Defendants may use this animation as a substantive exhibit to go to the jury room and/or as a demonstrative exhibit.

82. 003793-003793 Lewis_MrLewis_Trailing_Animation_NoShirt_SideLight, attached hereto and incorporated herein as "Exhibit 82."

Defendants' Objections: Foundation. Relevance. Lack of substantial similarity to the conditions present at the shooting event. The Lewis character is not dressed the same way as the event in question. The Lewis character's body type, height, weight, and physique do not accurately depict those physical attributes of Lewis. The animation does not accurately depict the speed and timing of the events. The lanyard is not accurately depicted. The animation does not accurately depict Deputy Caudillo's point of view (i.e., through his eyes) while sitting in the patrol car, or while exiting the car, or while shooting. The animation does not accurately depict the lighting which consisted of red and blue flashing strobe-like patrol vehicle emergency lights from both Deputy Caudillo's and Sgt. Moseley's patrol cars.

To the extent that the animation listed here can be accepted into evidence, either stipulated or with proper foundation, and shown to be "substantially similar" to the events

depicted, then Defendants may use this animation as a substantive exhibit to go to the jury room and/or as a demonstrative exhibit.

83. 003794-003794 Lewis_MrLewis_Trailing_Animation_NoSideLight, attached hereto and incorporated herein as "Exhibit 83."

Defendants' Objections: Foundation. Relevance. Lack of substantial similarity to the conditions present at the shooting event. The Lewis character is not dressed the same way as the event in question. The Lewis character's body type, height, weight, and physique do not accurately depict those physical attributes of Lewis. The animation does not accurately depict the speed and timing of the events. The lanyard is not accurately depicted. The animation does not accurately depict Deputy Caudillo's point of view (i.e., through his eyes) while sitting in the patrol car, or while exiting the car, or while shooting. The animation does not accurately depict the lighting which consisted of red and blue flashing strobe-like patrol vehicle emergency lights from both Deputy Caudillo's and Sgt. Moseley's patrol cars.

To the extent that the animation listed here can be accepted into evidence, either stipulated or with proper foundation, and shown to be "substantially similar" to the events depicted, then Defendants may use this animation as a substantive exhibit to go to the jury room and/or as a demonstrative exhibit.

84. 003795-003795 Lewis_MrLewis_Trailing_Animation_SideLight, attached hereto and incorporated herein as "Exhibit 84.

Defendants' Objections: Foundation. Relevance. Lack of substantial similarity to the conditions present at the shooting event. The Lewis character is not dressed the same way as

the event in question. The Lewis character's body type, height, weight, and physique do not accurately depict those physical attributes of Lewis. The animation does not accurately depict the speed and timing of the events. The lanyard is not accurately depicted. The animation does not accurately depict Deputy Caudillo's point of view (i.e., through his eyes) while sitting in the patrol car, or while exiting the car, or while shooting. The animation does not accurately depict the lighting which consisted of red and blue flashing strobe-like patrol vehicle emergency lights from both Deputy Caudillo's and Sgt. Moseley's patrol cars.

To the extent that the animation listed here can be accepted into evidence, either stipulated or with proper foundation, and shown to be "substantially similar" to the events depicted, then Defendants may use this animation as a substantive exhibit to go to the jury room and/or as a demonstrative exhibit.

85. 003796-003796 Lewis_TopDown_Animation, attached hereto and incorporated herein as "Exhibit 85."

<u>Defendants' Objections</u>: Foundation. Relevance. Lack of substantial similarity to the conditions present at the shooting event. The Lewis character is not dressed the same way as the event in question. The Lewis character's body type, height, weight, and physique do not accurately depict those physical attributes of Lewis. The animation does not accurately depict the speed and timing of the events. The lanyard is not accurately depicted. The animation does not accurately depict Deputy Caudillo's point of view (i.e., through his eyes) while sitting in the patrol car, or while exiting the car, or while shooting. The animation does not

accurately depict the lighting which consisted of red and blue flashing strobe-like patrol vehicle emergency lights from both Deputy Caudillo's and Sgt. Moseley's patrol cars.

To the extent that the animation listed here can be accepted into evidence, either stipulated or with proper foundation, and shown to be "substantially similar" to the events depicted, then Defendants may use this animation as a substantive exhibit to go to the jury room and/or as a demonstrative exhibit.

86. 003797-003797 Lewis_TopDown_Animation_NoShirt, attached hereto and incorporated herein as "Exhibit 86."

<u>Defendants' Objections</u>: Foundation. Relevance. Lack of substantial similarity to the conditions present at the shooting event. The Lewis character is not dressed the same way as the event in question. The Lewis character's body type, height, weight, and physique do not accurately depict those physical attributes of Lewis. The animation does not accurately depict the speed and timing of the events. The lanyard is not accurately depicted. The animation does not accurately depict Deputy Caudillo's point of view (i.e., through his eyes) while sitting in the patrol car, or while exiting the car, or while shooting. The animation does not accurately depict the lighting which consisted of red and blue flashing strobe-like patrol vehicle emergency lights from both Deputy Caudillo's and Sgt. Moseley's patrol cars.

To the extent that the animation listed here can be accepted into evidence, either stipulated or with proper foundation, and shown to be "substantially similar" to the events depicted, then Defendants may use this animation as a substantive exhibit to go to the jury room and/or as a demonstrative exhibit.

87. 003798-003798 Caruthers Zoomed Footage from Surveillance System, attached hereto and incorporated herein as "Exhibit 87."

Defendants' Objections: Foundation, relevance, Rule of Evidence 403. This video footage is after the shooting, not before or during the shooting.

88. 003799-003799 Caruthers Un-Zoomed Footage from Surveillance System, attached hereto and incorporated herein as "Exhibit 88."

Defendants' Objections: Foundation, relevance, Rule of Evidence 403. This video footage is after the shooting, not before or during the shooting.

89. 003790-003791 A Statement from Sheriff Chris Nanos: Nanos' Approach to Police Reform, attached hereto and incorporated herein as "Exhibit 89."

Defendants' Objections: This undated statement is hearsay, lacks relevance, lacks foundation, is precluded by Rule of Evidence 403. Sheriff Nanos is not a defendant with independent substantive liability. Sheriff Nanos's liability is limited to his status as employer of Deputy Caudillo, as such Sheriff Nanos is a defendant with potential vicarious liability, respondeat superior liability as the employer of Deputy Caudillo, and that liability exists only for the state law claims of wrongful death and property damage. There is no vicarious liability, respondeat superior liability on the federal 4th Amendment excessive force claim.

90. 003792-003793 Pictures of Stricklen's Driveway without Vehicle Lights, attached hereto and incorporated herein as "Exhibit 90."

Defendants' Objections: Foundation, relevance, Rule of Evidence 403. The photo is blurry and does not accurately depict the scene of the shooting immediately before, during or immediately after the shooting.

91. 003794-003795 Pictures of Stricklen's Driveway with Vehicle Lights, attached hereto and incorporated herein as "Exhibit 91."

Defendants' Objections: Foundation, relevance, Rule of Evidence 403. The photo is blurry and does not accurately depict the scene of the shooting immediately before, during or immediately after the shooting.

92. 003796-003801 Board of Supervisors Votes to Investigate Sheriff Nanos. He Threatens to Pull Security From Meetings. Attached hereto and incorporated herein as "Exhibit 92."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

93. 003802-003805 Nanos Puts Internal Review in Deputy's Sex Assault Case on Hold, Union Says, attached hereto and incorporated herein as "Exhibit 93."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

94. 003806-003810 Pima County Board of Supervisors Votes to Investigate Sheriff Nanos, attached hereto and incorporated herein as "Exhibit 94."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

95. 003811-002813 Man Fatally Shot by Pima County Deputy had Key Fob in his Hand, Agency Says, attached hereto and incorporated herein as "Exhibit 95."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

96. 003814-003821 Pima County Sheriff Illegally Withholding Public Records, Experts Say, attached hereto and incorporated herein as "Exhibit 96."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

97. 003822-003829 State-Level Investigators to Look into Pima County Sheriff's Department Following Sexual Assault, attached hereto and incorporated herein as "Exhibit 97."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

98. 003830-003830 Gilbert Caudillo Video Taped Deposition, taken on November 15, 2023, attached hereto and incorporated herein as "Exhibit 98."

Defendants' Objections: Plaintiffs' counsel is required to designate from the written transcript the page and number portions of a video deposition that is intended to be shown to the jury and defense counsel is entitled to make any appropriate objections to those designated portions. Plaintiffs' counsel has failed to properly comply with that process. There are portions of the Caudillo video deposition that contain information that lacks foundation, is irrelevant, is hearsay, is precluded by Rules of Evidence 403 and 404(b). Moreover, compliance with Rule 32, F.R.Civ.P. is required.

99. 003831-003831 Michael Moseley Video Taped Deposition, taken on November 15, 2023, attached hereto and incorporated herein as "Exhibit 99."

Defendants' Objections: Plaintiffs' counsel is required to designate from the written transcript the page and number portions of a video deposition that is intended to be shown to the jury and defense counsel is entitled to make any appropriate objections to those

designated portions. Plaintiffs' counsel has failed to properly comply with that process. There are portions of the Moseley video deposition that contain information that lacks foundation, is irrelevant, is hearsay, is precluded by Rules of Evidence 403 and 404(b).Moreover, compliance with Rule 32 F.R.Civ.P. is required.

100. 003832-003833Pima County Sheriff's Department Brady List, attached hereto and incorporated herein as "Exhibit 100."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

101. 003834-003838 Nanos Lashes Out Amid RICO Abuse Scandal, Dates to 2011, attached hereto and incorporated herein as "Exhibit 101."

Defendants' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

102. 003839-003886 Jeffrey Garrett Deposition, taken on December 20th, 2023, attached hereto and incorporated herein as "Exhibit 102."

Defendants' Objections: Plaintiffs' counsel is required to designate from the written transcript the page and number portions of a video deposition that is intended to be shown to the jury and defense counsel is entitled to make any appropriate objections to those designated portions. Plaintiffs' counsel has failed to properly comply with that process. There are portions of the Jeffrey Garrett video deposition that contain information that lacks foundation, is irrelevant, is hearsay, is precluded by Rules of Evidence 403 and 404(b). Moreover, compliance with Rule 32 F.R.Civ.P. is required.

103. Jeffrey Garrett Video Taped Deposition, taken on December 20th, 2023. To be disclosed upon receipt as "Exhibit 103."

Defendants' Objections: Plaintiffs' counsel is required to designate from the written transcript the page and number portions of a video deposition that is intended to be shown to the jury and defense counsel is entitled to make any appropriate objections to those designated portions. Plaintiffs' counsel has failed to properly comply with that process. There are portions of the Jeffrey Garrett video deposition that contain information that lacks foundation, is irrelevant, is hearsay, is precluded by Rules of Evidence 403 and 404(b).Moreover, compliance with Rule 32 F.R.Civ.P. is required.

104. 003887003987 Deposition of James Bailey, Northwest Fire Station. Attached hereto and incorporated herein as "Exhibit 104."

Defendants' Objections: Plaintiffs' counsel is required to designate from the written transcript the page and number portions of a deposition transcript that is intended to be read to the jury and defense counsel is entitled to make any appropriate objections to those designated portions. Plaintiffs' counsel has failed to properly comply with that process. There are portions of the James Bailey deposition that contain information that lacks foundation, is irrelevant, is hearsay, is precluded by Rules of Evidence 403 and 404(b).Moreover, compliance with Rule 32 F.R.Civ.P. is required.

105. 003888-004090Deposition of Daniel Schur, Northwest Fire Station. Attached hereto and incorporated herein as "Exhibit 105."

Defendants' Objections: Plaintiffs' counsel is required to designate from the written transcript the page and number portions of a deposition that is intended to be read to the jury and defense counsel is entitled to make any appropriate objections to those designated

portions. Plaintiffs' counsel has failed to properly comply with that process. There are portions of the Daniel Schur deposition that contain information that lacks foundation, is irrelevant, is hearsay, is precluded by Rules of Evidence 403 and 404(b).Moreover, compliance with Rule 32 F.R.Civ.P. is required.

106. 004091-004101Samir Lyons Rule 26 Report. Attached hereto and incorporated herein as "Exhibit 106." Will be used at trial if the need arises.

Defendants' Objections: Expert reports are not admissible. Untimely disclosure of expert report on 4-23-26 per Rule 26, Federal Rules of Civil Procedure. Hearsay, foundation, relevance, Rule of Evidence 403. If allowed, may be used to refresh recollection or for impeachment.

**II. Exhibits Plaintiffs may offer: Plaintiffs will offer all of the exhibits listed above, except where noted.**

**III.Exhibits Defendants Expect to Offer:**

200. PCSD 5660 – 5661 Probable Cause Alert 12-18-20

**Photographs 1-20-2021**

201. Photo, PCSD 00026 Desert brush run over by Lewis truck

202. Photo, PCSD 00027 Closeup of desert brush run over by Lewis truck

203. Photo, PCSD 00053 Stricklen driveway with collision debris at driveway bottom

204. Photo, PCSD 00064 Rear view of vehicles in Stricklen driveway

205. Photo, PCSD 00076 Ground view, position of patrol vehicles and F150

206. Photo, PCSD 00111 Trailer on corner lot in area searched by Moseley

207. Photo, PCSD 00143 Closeup of collision debris at bottom of driveway

208. Photo, PCSD 00145 Closeup of collision debris, bottom of driveway and mailbox

209. Photo, PCSD 00153 View from bottom of driveway showing Berry patrol vehicle

210. Photo, PCSD 00167 Front passenger side view, Moseley patrol vehicle, with Toyota taillight debris

211. Photo, PCSD 00170 Location and bloodstain where Lewis was dragged to for medical treatment

212. Photo, PCSD 00171 Additional closeup view of location and bloodstain where Lewis was dragged to for medical treatment

213. Photo, PCSD 00176 Additional closeup view of location and bloodstain where Lewis was dragged to for medical treatment

214. Photo, PCSD 00177 Closeup of damage to Moseley patrol vehicle including broken taillight debris from Lewis truck

215. Photo, PCSD 00183 Location of Caudillo patrol vehicle at angle behind Lewis truck

216. Photo, PCSD 00185 Location Caudillo patrol vehicle, Moseley patrol vehicle, showing gap between Lewis truck and Stricklen F150

217. Photo, PCSD 00189 Location blood spot where Lewis collapsed between left rear corner of Lewis truckbed and Caudillo vehicle

218. Photo, PCSD 00192 Lewis truck proximity to left front corner of Stricklen garage

219. Photo, PCSD 00193 Closeup location where Lewis collapsed past rear bumper of Lewis truck, bloodstain

220. Photo, PCSD 00197 Closeup of Lewis collapse location, bloodstain

221. Photo, PCSD 00198 Location of Stricklen F150 in relation to Lewis truck, Caudillo patrol vehicle, and gap between Lewis truck and Stricklen F150

222. Photo, PCSD 00199 9mm casing on ground by Caudillo vehicle

223. Photo, PCSD 00200 Closeup 9mm spent casing on ground by Caudillo vehicle

224. Photo, PCSD 00201 Closer, 9mm spent casing on ground by Caudillo vehicle

225. Photo, PCSD 00202 Position of vehicles showing gap, bloodstain, collapse location, keyfob and lanyard

226. Photo, PCSD 00207 Additional closeup of vehicles, gap and bloodstain

227. Photo, PCSD 00210 Front and driver side Stricklen F150 relative to Lewis truck

228. Photo, PCSD 00213 Passenger side Stricklen F150, passenger side rearview mirror

229. Photo, PCSD 00214 Flattened left rear tire of Lewis truck, driver side of truck

230. Photo, PCSD 00227 Front of Lewis truck's stopped location

231. Photo, PCSD 00230 Front passenger side Lewis truck, proximity to garage

232. Photo, PCSD 00231 Two 9mm spent casings on windshield

233. Photo, PCSD 00232 Two 9mm spent casings on windshield

234. Photo, PCSD 00233 Two 9mm spent casings on windshield

235. Photo, PCSD 00238 Ballistic shield on ground at felony stop location

236. Photo, PCSD 00275 Closeup of desert brush Lewis drove truck through at felony stop location

237. Photo, PCSD 00277 Closeup of desert brush Lewis drove truck through at felony stop location

238. Photo, PCSD 00319 Relative locations of vehicles and site of medical treatment

239. Photo, PCSD 00322 Left rear fender fascia part from Lewis truck

240. Photo, PCSD 00323 Closeup of left rear fender fascia part from Lewis truck

241. Photo, PCSD 00327 Additional photo of Lewis collapse location and bloodstain, keyfob and lanyard

242. Photo, PCSD 00328 Closeup of keyfob and lanyard on the ground

243. Photo, PCSD 00332 Closeup of Moseley patrol vehicle pushbumper damage and taillight debris from Lewis truck

244. Photo, PCSD 00358 Evidence markers, vehicles, bloodstain collapse location

245. Photo, PCSD 00373 Driveway tire marks

246. Photo, PCSD 00374 Driveway tire marks

247. Photo, PCSD 00386 Blue truck part from left rear corner Lewis truck on ground near left rear tire Caudillo vehicle

248. Photo, PCSD 00387 Blue truck part from left rear corner Lewis truck

249. Photo, PCSD 00388 Depicts where blue truck part became detached from left rear corner Lewis truck

250. Photo, PCSD 00421 Closeup of right front pushbar, Moseley patrol vehicle

251. Photo, PCSD 00458 Lewis driver’s license

252. Photo, PCSD 00461 Proximity of Lewis truck to corner of garage, paint transfer from garage to fender

253. Photo, PCSD 00517 Gap between Lewis truck and Stricklen F150 from Lewis approach position including Stricklen F150 passenger side rearview mirror

254. Photo, PCSD 00529 Closeup of paint transfer from corner of garage onto right rear fender, Lewis truck

255. Photo, PCSD 00536 Bullet strike to Stricklen F150 passenger door, left rear corner damage Lewis truck, and gap between the two vehicles

256. Photo, PCSD 00537 Closer view, bullet strike to Stricklen F150 passenger door, left rear corner damage Lewis truck, and gap between the two vehicles

257. Photo, PCSD 00538 Closer view of gap between the Stricklen F150 and Lewis truck

258. Photo, PCSD 000587 Angled view of driver's side Lewis truckbed, flat tire and damage to left rear truckbed

259. Photo, PCSD 00588 Closer view, Lewis truckbed, damage to left rear, and intact part on right rear of truckbed

260. Photo, PCSD 00640 Intersection of Paseo De Angel Caudillo turned back Ralph Stricklen and u-turned to approach Lewis truck head-on

261. Photo, PCSD 00759 Aerial of bottom half of Stricklen driveway

262. Photo, PCSD 00789 Aerial of driveway showing all vehicles (6302 shows vehicles labeled)

263. Photo, PCSD 00790 Aerial top half of Stricklen driveway and vehicles

264. Photo, PCSD 00804 Side yard area of Stricklen property

265. Photo, PCSD 00822 Desert area past side yard area of Stricklen property

266. Photo, PCSD 00828 Desert area further beyond side yard of Stricklen property

267. Photo, PCSD 01012 Caudillo in uniform on date of incident

268. Photo, PCSD 01151 Moseley in uniform on date of incident

269. Photo, PCSD 01293 Berry in uniform on date of incident

270. Photo, PCSD 01364 Robles in uniform on date of incident

271. Photo, PCSD 01930 Lewis's shorts

**<u>Key Fob Photographs</u>**

On the ground:

272. Photo, PCSD 00183 L1L20844.jpg Key fob and lanyard on ground

273. Photo, PCSD 00199 L1L20860.jpg Key fob and lanyard on ground

274. Photo, PCSD 00202 L1L20863.jpg Key fob and lanyard on ground

275. Photo, PCSD 00203 L1L20864.jpg Key fob and lanyard on ground

276. Photo, PCSD 00204 L1L20865.jpg Key fob and lanyard on ground

277. Photo, PCSD 00327 L1L20988.jpg Key fob and lanyard on ground

278. Photo, PCSD 00328 L1l20989.jpg Key fob and lanyard on ground

279. Photo, PCSD 00393 L1L21054.jpg Key fob and lanyard on ground

280. Photo, PCSD 00394 L1L21055.jpg Key fob and lanyard on ground

At Evidence Processing:

281. Photo, PCSD 01454 L2A30099.jpg Key fob and lanyard

282. Photo, PCSD 01462 L2A30107.jpg Key fob and lanyard

283. Photo, PCSD 01463 L2A30108.jpg Key fob and lanyard

284. Photo, PCSD 01464 L2A30109.jpg Key fob and lanyard

285. Photo, PCSD 01465 L2A30110.jpg Key fob and lanyard with ruler

286. Photo, PCSD 01466 L2A30111.jpg Key fob and lanyard

287. Photo, PCSD 01467 L2A30112.jpg Key fob and lanyard with ruler

288. Photo, PCSD 01468 L2A30113.jpg Key fob and lanyard

**Radio Log Summary Reports**

289. PCSD 2465-2473 210120022 Radio Log Summary Report 3:23 to 20:33

290. PCSD 2474 – 2477 210120022.2 Radio Log Summary Report by Day and Time, 8:15 to 20:33

**Morning Jewel Videos**

291. PCSD 7394 ClipPreview 2 from **2133 W Morning Jewel,** Michelle Stewart, 50 seconds.

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

292. PCSD 7395 ClipPreview 3 from **2202 W Morning Jewel**, Emelinda De Senney, 13 seconds.

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

293. PCSD 2863 L1K70084 from 2202 W Morning Jewel, Emelinda De Senney, 26 seconds.

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

**Neighbor Camera Videos**

294. PCSD 7388 02_20210120063544 21 min 6 sec, same video as PCSD 2479.mp4 998MBMP4 Video1/20/2021 11:33 AM**6641 N Paseo de Angel**, northeast camera to traffic stop 21:06 in length, Play from start to 3:30 minute mark

295. PCSD 7390 04_20210120063352 3 min 23 sec, same video as PCSD 2481.mp4 190MB MP4 Video1/20/2021 11:33 AM**6641 N Paseo de Angel**, northwest camera, to 6671 03:24 in length

296. PCSD 7391 04_20210120063738, 22 min 15 sec, same video as PCSD 2482.mp4 1,343MBMP4 Video1/20/2021 11:35 AM, **6641 N Paseo de Angel**, northwest camera, to 6671, 22:15 in length, Play from start to 01:40 minute mark.

297. PCSD 7397 IMG_4816 same as PCSD 2484 6661.MOV 5,097KB QuickTime Video File2/8/2021 3:14 PM**6661 N Paseo de Angel**, next door to 6671 to west, 54 seconds

298. PCSD 2489 L2850726.MP4 **6661 N Paseo de Angel** cell phone video, facing W side Stricklen property, including driveway, 29 seconds in length

299. PCSD 7402 **2661 W. Positano**, same as PCSD 2490, video 1 min 5 seconds

**<u>Various</u>**

300. PCSD 5432 Aerial Neighborhood

301. Aerial of Neighborhood, house numbers and streets labeled

302. Labeled Aerial photo of location of initial traffic stop and subsequent officer-involved shooting in the Stricklens' driveway, PCSD 6298 with added text

303. PCSD 5433 - 5434 Diagram by Deputy Berry

304. PCSD 5435 - 5436 Diagram by Deputy Caudillo Location of Incident

305. PCSD 5437 - 5438 Diagram by Deputy Caudillo traffic stop

306. PCSD 5439 - 5440 Diagram by Ralph Stricklen

307. PCSD 5441 - 5442 Diagram by Sergeant Moseley

308. PCSD 8992 Photo from J Garrett House to Stricklen house

309. PCSD 8993 Photo from J Garrett House to Stricklen house

310. PCSD 5443 - 5448 Banner UMC Record from SO

311. PCSD 5449 - 5482 NW Fire District PR Response to Plaintiff

312. PCSD 8956 - 8991 PRR 23-310 Northwest Fire District File, subpoenaed, received 12-01-2023

313. PCSD 5662 Caudillo Investigation Power Point

314. PCSD 6202 – 6219 Chapter 3, Major Policies, in effect at the time of incident

315. PCSD 6295 General Area Overview, aerial Morning Jewel to Paseo de Angel

<u>Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.</u>

316. PCSD 6296-6297 Initial Report Location Aerial View, Morning Jewel

<u>Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.</u>

317. PCSD 6298 OIS Scene Overview w labels, Traffic Stop, OIS scene

318. PCSD 6300 Traffic Stop Aerial View, street, bushes

319. PCSD 6302 OIS Scene Aerial View with Vehicles labeled

320. PCSD 3596 – 3598 Caudillo 1452 Training History

321. PCSD 3599 – 3602 Moseley 1227 Training History

322. PCSD 5486 - 5580 B Lewis Army Records, obtained by PCSD Det. Flores via FOIA request

<u>Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.</u>

323. PCSD 6863 IMG 2835 Texts, Bradley A. Lewis Jan 19, 20 of 2021, on H. Stricklen's phone, photo taken at H. Stricklen deposition

324. PCSD 6864 PDF of IMG 2835, Texts, H Stricklen Phone, Bradley A. Lewis, photo taken at H. Stricklen deposition

325. PCSD 6890 – 6894 News 4 Tucson Article, w Helen Stricklen quote, we all failed Alex.

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

326. PCSD 6925 C998 210120022 Radio Excerpt.mp3 – real time radio excerpt, originally saved by Lt. Moseley

327. PCSD 7965 – 7966 Moseley Notes on Timing of Audio (PCSD 6925), notes previously produced at Moseley deposition, and attached as an exhibit 17; audio produced in Defendants' Seventh Supplemental Disclosure Statement.

328. PCSD 9196 Real Time Radio Excerpt 210120022.wma, real time recording of incident, 36 minutes, 22 seconds, attachment to email from PSSS Communications Kathryn Parker to Detective Flores, p. PCSD EM Response 00003.

329. Chronology Exhibit, chronology used in Defendants' Separate Statement of Facts in Support of MSJ (Doc. 65, ¶ 406, pp. 98 - 105.)

330. Deposition of Pima County Sheriff's Department Lt. Michael Moseley, excerpted, regarding audio recording of radio transmissions, pp 150 – 161

331. Excerpt Moseley deposition transcript, pp 121 – 122, "Boom, gone"

332. Video excerpt of Moseley deposition, Moseley demonstrates, “Boom, gone.” (pp. 121 – 122 in transcript.)

333. Deposition of Pima County Sheriff’s Department Sgt. Gilberto Caudillo, excerpted, with corrections, p. 72:4 to 73:22, “hands, see a gun, fear for my life”

334. Deposition of Pima County Sheriff’s Department Sgt. Gilberto Caudillo, excerpted, with corrections, p. 152:4 to 154:5, “what makes black mass deadly”

335. Deposition of Helen Stricklen, excerpted, and Deposition Exhibit 7, excerpted, depo and statement transcript regarding hearing command before shooting.

336. Deposition of Ralph Stricklen, excerpted, and Deposition Exhibit 7, excerpted, depo and statement transcript regarding hearing command before shooting.

337. PCSD 7979-8002 Notice of Forfeiture Documents from Pima County Attorney’s Office, regarding PCSD 6331 – 6529200406304 PCSD Report and Files, Bradley Lewis – Big Wash Overlook

**Foamboards, various – will offer**

338. Foamboard, 35 by 47, OIS Scene Aerial View, with vehicles labeled, PCSD 06302

339. Foamboard, 35 by 47, General Area Overview, PCSD 06295, streets, Initial Report area, OIS scene labeled. Approximate Driving distance from the Area of Initial Report to OIS scene is 4.2 miles.

340. Foamboard, 35 by 47, Initial Report Location, Morning Jewel, Aerial View, PCSD 6296, 6297

Plaintiffs’ Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

341. Foamboard, 35 by 47, Aerial, Shannon Road, Paseo de Angel, Positano Way, with streets and house numbers labeled

342. Foamboard, 35 by 47, Aerial, streets and house numbers labeled, shows area of traffic stop, intersection and Stricklen cul-de-sac

343. Foamboard, 35 by 47, texts between Bradley Alexander Lewis and Helen Stricklen, January 19, 2021 and January 20, 2021.

344. Foamboard, 35 by 47, Aerial View, shows relationship between Stricklen and Caruthers home, house numbers labeled.

345. Foamboard, 35 by 47, Diagram drawn by Deputy Caudillo of traffic stop area, at statement 1-25-2021, PCSD 05438

346. Foamboard, 35 by 47, Diagram drawn by Deputy Caudillo of Location of Incident in Stricklen driveway, PCSD 05436

347. Foamboard, 35 by 47, Diagram drawn by Sergeant Moseley of incident location in Stricklen driveway, 1-20-2021, PCSD 05442

348. Foamboard, 35 by 47, Diagram drawn by Deputy Justin Berry of incident location in Stricklen driveway, PCSD 05434

349. Foamboard, 35 by 47, Diagram drawn by Ralph Stricklen 1-20-2021 9:09 am

350. Foamboard, 35 by 47, “The determination of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.”

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

351. Foamboard, 35 by 47, "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

**Plaintiffs' Discovery Responses**

352. Plaintiffs' Response to Defendants' Request for Production of Documents, Updated, 5-18-2023

353. Exhibit 2 from Plaintiffs' Response to Defendants' Request for Production of Documents, 5-18-2023, Certificate of Release or Discharge from Active Duty, p. PLTF RRFP 00002, produced by Plaintiffs.

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

354. Defendants' First Request for Admissions to Bradley M. Lewis, 11-29-2023

355. Defendants' First Request for Admissions to Anna Christine Lewis, 11-29-2023

356. Defendants' First Request for Admissions to Helen Stricklen, 11-29-2023

357. Defendants' First Request for Admissions to Ralph Stricklen, 11-29-2023

358. Defendants' First Request for Admissions to the Estate of Bradley Alexander Lewis, 11-29-2023

359. Index of Exhibits to Defendants' First Request for Admissions, attached to requests for admissions to each plaintiff above, Exhibits 338 – 342.

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

360. Exhibit A to Defendants' First Request for Admissions to each Plaintiff, PCSD 06864, photo of texts on phone

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

361. Exhibit B to Defendants' First Request for Admissions to each Plaintiff, PCSD 5486 – 5580 Records, Department of the US Army

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

362. Exhibit C to Defendants' First Request for Admissions to each Plaintiff, PLTF RRFP 01349 – 01359 Text messages

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

363. Exhibit D to Defendants' First Request for Admissions to each Plaintiff, Pima County Sheriff's Department Report 200406304, 4-6-20, excerpted

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

364. Exhibit E to Defendants' First Request for Admissions to each Plaintiff, Certificate of Notice of Forfeiture, PCSD 07979 - 08002

365. Exhibit F to Defendants' First Request for Admissions to each Plaintiff, PLTF RRFP 01519 – 01529 Text messages

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

366. Exhibit G to Defendants' First Request for Admissions to each Plaintiff, PLTF RRFP 01468 – 01472 Text messages

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

367. Exhibit H to Defendants' First Request for Admissions to each Plaintiff, PLTF RRFP 01563 – 01564 Text messages

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

368. Exhibit I to Defendants' First Request for Admissions to each Plaintiff, PCSD 7613 Audio recording, Interview of Ralph Stricklen by Det. Valdez

369. Exhibit J to Defendants' First Request for Admissions to each Plaintiff, PCSD 7973 – 7976 Transcript, Interview of Ralph Stricklen by Det. Valdez

370. Exhibit K to Defendants' First Request for Admissions to each Plaintiff, NW Fire District records, PCSD 05449 – 05482, requested by Plaintiffs.

371. Exhibit L to Defendants' First Request for Admissions to each Plaintiff, PCSD 7394 Surveillance video from residence at 2133 W. Morning Jewel from 1-20-2021

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

372. Exhibit M to Defendants' First Request for Admissions to each Plaintiff PCSD 7395 Surveillance video clip from residence at 2202 W. Morning Jewel from 1-20-2021

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

373. Exhibit N to Defendants' First Request for Admissions to each Plaintiff, PCSD 2863

Surveillance video from residence at 2202 W. Morning Jewel from 1-20-2021

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

**Expert Steve Ijames Exhibits – will offer**

374. Photo of Steve Ijames holding key fob and lanyard, at PCSD impound lot, PCSD 6895

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

375. Photo of Steve Ijames holding key fob and lanyard, at PCSD impound lot, PCSD 6896

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

376. Photo of Steve Ijames holding key fob and lanyard, at PCSD impound lot, PCSD 6897

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

**Expert Michael Kuzel Exhibits – will offer**

377. Space Between the Toyota Tacoma and ford F150, Figure 6 from Kuzel Report, p. 9

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

378. PowerPoint exhibit for demonstrative purposes - Vehicle interaction in Driveway Summary

Kuzel report Figure 1, Aerial, Involved Vehicle Points of Rest
Kuzel report Figure 2, Vehicle Contact Evidence Locations

Kuzel report Figure 5, Spacing between the Toyota and Ford F-150, Toyota Vehicle Damage

Toyota Vehicle Damage, PCSD Photos 386, 387
Kuzel report Figure 3, photo of Tacoma damage
Kuzel report Figure 3, photo of Tacoma damage
Kuzel report Figure 3, photo of Tacoma damage
Moseley Patrol Vehicle Damage, photo
Moseley Patrol Vehicle Damage, photo
Moseley Patrol Vehicle Damage, Figure 4 Kuzel report
Moseley Patrol Vehicle Damage, Figure 4 Kuzel report
Moseley Patrol Vehicle Damage, Figure 4 Kuzel report
Moseley Patrol Vehicle Damage, Figure 4 Kuzel report
Toyota EDR Vehicle control History Summary
Toyota Techstream Vehicle Control History Trigger Conditions
Subject Toyota Vehicle Control History Triggers – January 20, 2021
Subject Toyota Vehicle Control History Triggers – January 20, 2021
Subject Tacoma Techstream Events on January 20, 2021- Focus of Examination Files

Continuous Data History file Construction – Vehicle Speed v Time
Relevant Continuous Data History Plots – Veh Speed v time, Accelerator Opening Ratio v Time, Shift Position v Time

Relevant Continuous Data History Plots Speed, Steering, Yaw Rate v Time
Relevant Continuous Data History Plots, Speed, Longitudinal Acceleration v Time, Lateral Acceleration v Time

Subject Tacoma Vehicle Control History Triggers – January 20, 2021
Shift-Lever-Position-Related Triggers
Relevant Continuous Data History Plots – Speed, Accelerator Opening, Shift Position v Time

Relevant Continuous Data History Plots – Speed, Steering, Yaw Rate v Time
Relevant Continuous Data History Plots – Speed, Longitudinal Acceleration, Lateral Acceleration v time

Video Excerpt from Home Security Camera of OIS Incident
Sergeant Moseley Statements Regarding Pursuit of Bradley Lewis, Kuzel report p. 16
Vehicle Control History Data During Flight from PCSO Deputies

Vehicle Control History Data During Flight from PCSO Deputies
Vehicle Control History Data During Flight from PCSO Deputies
Calculating Distances from Speed Data
Calculating Distances from Speed Data
Calculating Distances from Speed Data
Calculating Distances from Speed Data
Calculating Distances from Speed Data
Calculating Distances from Speed Data – Distance from Rest Position
Calculating Distances from Speed Data – 3 photos, Moseley vehicle at rest, PCSD laser scan, plastic fragment debris field

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

379. Powerpoint exhibit for demonstrative purposes – Review of Peles Opinions, 10 slides

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

380. Kuzel Report Appendix 3, Photographs taken at inspection of Toyota Tacoma on February 2, 2023 (PCSD 7753 – 7801)

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

381. Kuzel Report Appendix 4, Photographs and records, including event data recorder records and Vehicle Control History, from Inspections of the Toyota Tacoma and PCSD Unit 140, the Moseley patrol Explorer, taken at inspection on June 26, 2023. (PCSD 7802 – 7855)

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

382. Kuzel Report Appendix 5, Photographs taken during the inspection of the Stricklen driveway and the Stricklen Ford F-150 on September 11, 2023. (PCSD 7856 – 7873)

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

**Ballistics Expert Matt Noedel Exhibits – will offer**

383. PCSD 7631 2023-10-20 Video of Live Fire Testing at PCSD Range (tests 01-04), videotaped by David Boyan

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

384. Noedel Report Image Menu, 3 pages

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

385. Noedel Report Figure 1

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

386. Noedel Report Figure 2

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

387. Noedel Report Figure 3

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

388. Noedel Report Figure 4

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

389. Noedel Report Figure 5

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

390. Noedel Report Figure 6

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

391. Noedel Report Figure 6a

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

392. Noedel Report Figure 7

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

393. Noedel Report Figure 7a

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

394. Noedel Report Figure 8

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

395. Noedel Report Figure 9

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

396. Noedel Report Figure 10

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

397. Noedel Report Figure 11

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

398. Noedel Report Figure 12

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

399. Noedel Report Figure 13

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

400. Noedel Report Figure 14

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

401. Number not used, numbering error

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

402. Noedel Report Figure 15

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

403. Noedel Report Figure 16

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

404. Noedel Report Figure 17

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

405. Noedel Report Figure 18

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

406. Noedel Report Figure 19

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

407. Noedel Report Figure 20

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

408. Noedel Report Figure 21

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

409. Noedel Report Figure 22

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

410. Noedel Report Figure 23

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

411. Noedel Report Figure 1, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

412. Noedel Report Figure 2, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

413. Noedel Report Figure 3, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

414. Noedel Report Figure 4, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

415. Noedel Report Figure 5, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

416. Noedel Report Figure 6, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

417. Noedel Report Figure 6a, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

418. Noedel Report Figure 7, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

419. Noedel Report Figure 7a, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

420. Noedel Report Figure 8, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

421. Noedel Report Figure 9, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

422. Noedel Report Figure 10, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

423. Noedel Report Figure 11, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

424. Noedel Report Figure 12, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

425. Noedel Report Figure 13, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

426. Noedel Report Figure 14, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

427. Noedel Report Figure 15, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

428. Noedel Report Figure 16, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

429. Noedel Report Figure 17, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

430. Noedel Report Figure 18, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

431. Noedel Report Figure 19, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

432. Noedel Report Figure 20, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

433. Noedel Report Figure 21, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

434. Noedel Report Figure 22, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

435. Noedel Report Figure 23, enlarged on foamboard

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

**IV. Exhibits Defendants May Offer if the Need Arises:**

436. PCSD 1976 - 2109 Report 210120022, dated 6-30-2021

437. Pool Supplement in PCSD 210120022, incident of 01-20-2021, PCSD 2012, 2013

438. Baird Supplemental Narrative Incident Report in PCSD 210120022, regarding call to W. Morning Jewel Place in early morning hours of 01/20/2021, PCSD 9240 – 9242, also at PCSD 2005 - 2007.

439. PCSD 2110 – PCSD 2122 Shooting Review Board, Case 210120022

440. PCSD 2123 - 2185 Transcript 911 Calls and Radio, Case 210120022, 63 pages

441. PCSD 2186 - 2188 PCAO Declination Letter 210120022, 2-24-21 PCAO Chief Trial Counsel Rick Unklesbay

442. PCSD 2189 - 2190 210120022_County Attorney Addendum, Declination, 4-7-21, Pima County Attorney Laura Conover

443. PCSD 2417 - 2424 210120022OME Report and Toxicology_BLewis

444. PCSD 2425 – 2427210120022Amended toxicology Report B Lewis

445. PCSD 2440 – 2447 Deputy Phone Logs

446. PCSD 2448 – 2454 210120022.1 CAD Call 210120022.2 Radio Log

447. PCSD 2455 – 2456 210120022 CAD Master Call Table – Call Narrative

448. PCSD 2464 L1L10006 Radio, 1 hour 23 minutes.MP3, Recording from Morning Jewel

**Transcripts of Statements**

449. PCSD 2491 – 2523 Statement Transcript, Michael Moseley 1-20-2021 0757

450. PCSD 2524- 2542 Statement Transcript, Michael Moseley 1-20-2021 1111 walkthrough

451. PCSD 2543 – 2578 Statement Transcript, Helen and Ralph Stricklen 1-20-2021, 0823

452. PCSD 2579 – 2584 Statement Transcript, Helen and Ralph Stricklen 1-20-2021, 0945

453. PCSD 2585 – 2596 Statement Transcript, Deputy Theodore Robles 1-20-2021 101

454. PCSD 2597 – 2614 Statement Transcript, Deputy Justin Berry 1-20-21

455. PCSD 2615 – 2625 Statement Transcript, Neighborhood Canvass, Caruthers

456. PCSD 2626 – 2639 Statement Transcript, Neighborhood Canvass Crist, Pitts

457. PCSD 2640 – 2647 Statement Transcript, Mike Nunez

458. PCSD 2648 – 2693 Statement Transcript, Gilberto Caudillo 1-25-2021 1035

459. PCSD 2694 – 2699 Statement Transcript, Garrison Smith 2-11-2021

460. PCSD 2700 – 2703 Statement Transcript NW Fire Caption J Webb 1-21-2021 1608

461. PCSD 2704 – 2706 Statement Transcript NW Fire Chief D Bollinger 1-21-2021

462. PCSD 2707 – 2710 Statement Transcript NW Fire Paramedic D Schur 1-21-2021

463. PCSD 2711 – 2716 Statement Transcript NW Fire Paramedic J Bailey 1-21-2021

464. PCSD 2717 – 2722 Statement Transcript NW Fire EMT Engineer J Kati 1-21-2021

465. PCSD 2723 – 2727 Statement Transcript NW Fire EMT_A Bernal 1-21-2021

466. PCSD 2728 – 2733 Statement Transcript NW Fire EMT K Bamford 1-21-2021

467. PCSD 2734 – 2737 Statement Transcript NW Fire EMT R Kopecki 1-21-2021

468. PCSD 2738 – 2739 Statement Transcript Traci Caruthers, Flores got videos, 2-9-2021

469. PCSD 2740 – 2744 Statement Transcript Jeffrey Garrett 1-20-2021 0852

470. PCSD 2745 – 2752 Statement Transcript K Parks, 1-20-2021

471. PCSD 2753 – 2762 Statement Transcript S Smalley 1-20-2021 0842

472. PCSD 2763 – 2768 Statement Transcript G Smalley 1-20-2021 0900

473. PCSD 2769 – 2772 Statement Transcript Ambur Pitts by phone 5-3-2021

474. PCSD 7960 – 7961 Deputy Caudillo Public Safety Statement Transcript (Defts' Resp to Pltfs' RFP 3, audio produced Defts' IDS).

475. PCSD 7967 – 7970 201204090 Frank, Chip, Interview Transcript 12-4-2020 (Defts' SDS 9; audio previously provided with Defendants' SDS 8 at PCSD 7611.)

476. PCSD 7971 – 7972 201204090, Perry, Jeremy, Interview Transcript 12-4-2020 (Defts' SDS 9, audio previously provided with Defendants' SDS 8 at PCSD 7612.)

477. PCSD 7973 – 7976 201204090, Stricklen, Ralph, Interview Transcript 12-16-2020 by Det. Valdez, (Defts' SDS 9, audio previously provided with Defendants' SDS 8 atPCSD 7613.)

478. PCSD 7977 – 7978 201204090 TPD Williams, Darren, Interview Transcript 12-4-2020, (Defts' SDS 9, audio previously provided with Defendants' SDS 8 at PCSD 7610.)

**<u>Audio of Statements</u>**

479. PCSD 2773 L1K41536 ST Audio Michael Moseley 1

480. PCSD 2774 L1K41537 ST Audio Michael Moseley 2

481. PCSD 2775 L1K70019 ST Audio Gilberto Caudillo Public Safety Statement

482. PCSD 2776 L1L40306 ST Audio Helen and Ralph Stricklen

483. PCSD 2777 L1L40307 ST Audio Helen and Ralph Stricklen
484. PCSD 2778 L1L40308 ST Audio Theodore Robles
485. PCSD 2779 L1L41072 ST Audio Jeffrey Garrett
486. PCSD 2780 L1L41073 ST Audio Kelli Parks
487. PCSD 2781 L1L50117 ST Audio Justin Berry
488. PCSD 2782 L1M40014 ST Audio Stephanie Smalley
489. PCSD 2783 L1M40015 ST Audio Gregory Smalley
490. PCSD 2784 L1M40070 ST Audio J Webb
491. PCSD 2785 L1M40072 ST Audio Chief D. Bollinger
492. PCSD 2786 L1M40076 ST Audio Paramedic Daniel Schur
493. PCSD 2787 L1M40251 ST Audio Paramedic James Bailey
494. PCSD 2788 L1M40253 ST Audio EMT J. Kati
495. PCSD 2789 L1M50012 ST Audio Tracey Caruthers
496. PCSD 2790 L1M50013 ST Audio Naomi Crist
497. PCSD 2791 L1M50014 ST Audio M Nunez
498. PCSD 2792 L1P40410 ST Audio Gilberto Caudillo 01252021 w Portell
499. PCSD 2793 L2B40004 ST Audio Phone Call, Smith, Garrison
500. PCSD 2794 L2C50034 ST Audio A Bernal
501. PCSD 2795 L2C50038 ST Audio K Bamford
502. PCSD 2796 L2C50039 ST Audio R. Kopecki
503. PCSD 2797 L2M40205 ST Audio Traci Caruthers phone call

504. PCSD 2798 L5340141 ST Audio Phone call, Ambur Pitts

505. PCSD 07610 Audio of Interview Darren Williams, off-duty TPD

506. PCSD 07611 Audio of Interview Chip Frank

507. PCSD 07612 Audio of Interview Jeremy Perry

508. PCSD 07613 Audio of Interview Ralph Stricklen

509. PCSD 07614 Surveillance Video from Robert Zucker re AWDW

510. PCSD Evidence Sheets Combined PCSD 2799 – 2854

511. PCSD 5643 – 5646 Det. Flores Case Notes

512. PCSD 5647 – 5649 Evidence List – Complete

513. PCSD 5650 PCSD Radio Designators Date of Incident

514. PCSD 6128 – 6169 File from Pima County Medical Examiner's Office

515. PCSD 6170 Disk with x-rays from Medical Examiner's Office, with x-rays and player

516. PCSD 6171 – 6198 pdf prints of Pima County Medical Examiner photographs

517. PCSD 6200 – 6201 Work Order, Pima County Fleet Services, repairs to Moseley Explorer G648HY

518. PCSD 6282 – 6285 Photos Fleet Services sent for estimates

519. PCSD 6286 – 6288 Holmes Tuttle Estimate

520. PCSD 6289 – 6290 Jim Click Nissan Invoice

521. PCSD 6291 – 6294 Murray's Appraisal Estimate

522. PCSD 6695 – 6836Vehicle Collision Review report, Moseley vehicle

523. PCSD 9054 – 9195 Vehicle Collision Review, Moseley, 210120022, our incident, found non-preventable, no violation of State statute.

**Declarations**

524. PCSD 7404 – 7489 Declaration of Sergeant Gilbert Caudillo, with attachments

525. PCSD 7490 – 7609 Declaration of Lt. Michael Moseley, with exhibits

526. PCSD 9024 – 9053 Declaration of Deputy Justin Berry, with attachments

527. PCSD 9197 – 9233 Declaration of Deputy Anthony Pool, with attachments.

528. PCSD 9234 – 9246 Declaration of Deputy David Baird, with attachments

529. PCSD 9247 - 9261 Declaration of Detective Chamonix Valdez, with attachments

530. PCSD 9262 - 9266 Declaration of Sgt. Matthew Gilbert, with attachment, previously submitted as Defendants' MSJ SSOF Exhibit 10.

531. PCSD 9267 - 9272 Declaration of Deputy Michael Joseph, with attachment, previously submitted as Defendants' MSJ SSOF Exhibit 11.

532. PCSD 9273 - 9296 Declaration of Sheriff Nanos, with attachments, previously sent to Plaintiffs' counsel on 10-3-23, and submitted without attachments as Defendants' MSJ SSOF Exhibit 31.

533. PCSD 9297- 9299 Second Declaration of Sgt. Gilbert Caudillo, Second, 4-15-24, previously submitted to Plaintiffs as Defendants' Reply Exhibit 3.

534. PCSD 9300 - 9303 Second Declaration of Lt. Michael Moseley, Second, 4-18-24, previously submitted to Plaintiffs as Defendants' Reply Exhibit 4.

535. PCSD 9304 - 9317 Declaration of Traci Caruthers, 4-15-24, with attachment, previously submitted to Plaintiffs as Defendants' Reply Exhibit 6.

536. PCSD 9318 – 9363 Declaration of Det. Miguel Flores with attachments, previously submitted to Plaintiffs as Defendants' MSJ SSOF Exhibit 12.

**Depositions**

537. Deposition transcript with exhibits, Paramedic James Bailey

538. Deposition transcript with exhibits, Deputy Justin Berry

539. Deposition transcript with exhibits, Deputy Gilberto Caudillo

540. Deposition transcript with exhibits, Jeffrey Garrett

541. Deposition transcript with exhibits, Steve Ijames

542. Deposition transcript with exhibits, Michael Kuzel

543. Deposition transcript with exhibits, Anna Christine Lewis

544. Deposition transcript with exhibits, Bradley Marshall Lewis

545. Deposition transcript with exhibits, Michael Moseley

546. Deposition transcript with exhibits, Matthew Noedel

547. Deposition transcript with exhibits, Daniel Schur

548. Deposition transcript with exhibits, Helen Stricklen

549. Deposition transcript with exhibits, Ralph Stricklen

550. Video of James Bailey deposition

551. Video of Justin Berry deposition

552. Video of Gilberto Caudillo deposition

553. Video of Jeffrey Garrett deposition

554. Video of Steve Ijames deposition

555. Video of Mike Kuzel deposition

556. Video of Anna Christine Lewis deposition

557. Video of Bradley Marshall Lewis deposition

558. Video of Michael Moseley deposition

559. Video of Matthew Noedel deposition

560. Video of Daniel Schur deposition

561. Video of Helen Stricklen deposition

562. Video of Ralph Stricklen deposition

**Expert Reports, CV, fee schedule**

563. PCSD 7632 - 7712 Initial Expert Report of Steve Ijames, Defendants' police procedures expert, list of material reviewed, publications, list of cases, fee schedule and CV. Portions may be used for demonstrative purposes and to refresh recollection.

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

564. PCSD 7713 - 7741 Initial Expert Report and videos of Michael J. Kuzel, Defendants' expert, human factors, biomechanical engineering, reconstruction. Portions may be used for demonstrative purposes and to refresh recollection.

Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

565. Kuzel Report Appendix 1, list of materials provided for review (PCSD 7742- 7743).

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

566. Kuzel Report Appendix 2, Curriculum Vitae, four-year testimony list, rate sheet (PCSD 7744 – 7752).

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

567. PCSD 7878 – 7913 CV and case list of Matthew Noedel, Defendants' ballistics and forensic science reconstruction expert.

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

568. PCSD 7914 Fee Schedule, Matthew Noedel, Defendants' ballistics and forensic reconstruction expert

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

569. PCSD 7915 - 7959 Report of Defendants' ballistics and forensic science reconstruction expert Matthew Noedel. Portions may be used for demonstrative purposes and to refresh recollection.

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.
Plaintiffs' Objections: Expert reports are not admissible. Hearsay, foundation, relevance, cumulative, Rule of Evidence 403.

**Other Law Enforcement Contacts of Bradley Alexander Lewis, reports**

570. PCSD 5671-5680 08-17-2016 Phoenix PD 2016-00001845246 2-16

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

571. PCSD 5681-5689 06-26-2017 Tucson Police 1706250378

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

572. PCSD 5690-5705 09-15-2017 Phoenix PD 2017-00001689354 2-18

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

573. PCSD 5706-5721 11-28-2017 Phoenix PD 2017-00002096377 2-16

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

574. PCSD 5722-5735 09-11-2018 Phoenix PD 2018-00001616348 2-17

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

575. PCSD 5736-5753 11-10-2018 Phoenix PD 201800002003912 2-16

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

576. PCSD 5754-5761 04-16-2019 Phoenix PD 201900000645293 2-16

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

577. PCSD 5762-5765 07-20-2019 Phoenix PD 2019-00001242704 2-16

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

578. PCSD 6314 – 6330200310286 PCSD Report and File, Bradley Lewis
Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

579. PCSD 5788-5793 04-02-2020 Maricopa City PD 200402049

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

580. PCSD 5794-5800 04-03-2020 Tucson Police 2003290147

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

581. PCSD 6331 – 6529200406304 PCSD Report and Files, Bradley Lewis – Big Wash Overlook
Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

582. PCSD 6346 – 6377 Excerpt of PCSD Report 200406304 – Big Wash Overlook from Moseley Declaration

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

583. PCSD 5880-5931 04-25-2020 Gilbert PD No. 20-000007236

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

584. PCSD 5932-5939 07-21-2020 PCSD No. 2007-0927

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

585. PCSD 6530 – 6546200727020 PCSD Report and Files, Bradley Lewis

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

586. PCSD 5961-5969 08-06-2020 PCSD No. v20080216

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

587. PCSD 5970-5977 08-11-2020 PCSD No. 2008-0480

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

588. PCSD 5978-5994 08-14-2020 PCSD No. 2008-0645

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

589. PCSD 5995-6002 08-17-2020 PCSD No. 2008-0795

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

590. PCSD 6003-6005 10-06-2020 Tempe Police 2020101243

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

591. PCSD 6846 – 6847 10-11-20 Tempe Police Department Report 2020-102986

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

592. PCSD 6006-6023 10-13-2020 Tucson Police 201006005

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

593. PCSD 6848 – 6862 10-25-20 TPD Report 2010250115

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

594. PCSD 6641 – 6660201102154 PCSD Report and Files, shots fired near LA Fitness on Ina

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

595. PCSD Report 201102154, excerpted, from Moseley Declaration

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

596. PCSD 6547 – 6624201120073 PCSD Report and Files, Bradley Lewis

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

597. PCSD 6625 – 6640201204090 PCSD Report, No Files, Bradley Lewis

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

598. Report 201204090, Pool supplements at pp. 8-10 and p. 13, PCSD 6632-6634, 6637

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

599. Report 201204090, Valdez Supplement, PCSD 6639 – 6640.

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

600. PCSD 6865 – 6886 PCSD Report 210103235 Report Shots fired at 6661 N Paseo de Angel, next door to the Stricklen residence on 01-03-2021.

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

601. PCSD Report 210103235, excerpted, from Moseley Declaration

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

602. PCSD 6661 – 6694Bradley A. Lewis Pima County Jail Records

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

603. 024 PCSD 6124 02-10-2021 Tempe PD Request to Custodian of Records

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

604. PCSD 6125 02-11-2021 Phoenix PD Custodian Letter re reports

Plaintiffs' Objections: Hearsay, foundation, relevance, Rule of Evidence 403.

605. Luke Haag Initial Report, 002215-002230, may use for impeachment or refresh recollection, Plaintiffs' Exhibit 53.

606. Luke Haag Illustrated Expert Rebuttal Report regarding Noedel opinions, 002406-002412, may use for impeachment or refresh recollection, Plaintiffs' Exhibit 67.

**V. ADDITIONAL DEFENDANTS' EXHIBITS FOR WILL OFFER:**

607. Video deposition clip for Caudillo depo excerpt, pp. 152:4 through 154:5.

608. Still photo 1 from video at Morning Jewel, PCSD 7395

609. Still photo 2 from video at Morning Jewel, PCSD 7395

610. Still photo 3 from video at Morning Jewel, PCSD 7395

611. Foamboard of Still photo 1 from video at Morning Jewel, PCSD 7395

612. Foamboard Still photo 2 from video at Morning Jewel, PCSD 7395

613. Foamboard Still photo 3 from video at Morning Jewel, PCSD 7395

614. Foamboard Illustration and text, bottom of p. 4 of Luke Haag Rebuttal report concerning opinions of Matthew Noedel, Plaintiffs' Bates No. 002410.

615. Photo, PCSD 01920, Lewis's shirt from OME.

~~616. Defendants reserve the right to use any exhibit listed by Plaintiffs to which Defendants do not object.~~

616. The incident key fob and lanyard in evidence

617. Lewis's shorts in evidence

618. Lewis's shirt in evidence

619. Photo, PCSD 01931, back of Lewis shorts from OME

620. Photo, PCSD 01941, small key pocket, inner waistband, Lewis shorts from OME

621. Photo, PCSD 01942, opening to small key pocket, Lewis shorts from OME

622. Photo, PCSD 01943, small key pocket, Lewis shorts from OME

623. Estimate for repair of the Stricklens' Ford F150, Tuttle-Click Collision Center, in the amount of $4538.18, Doc. 75-26, Exhibit 31 to Plaintiffs' Separate Statement of Facts in Support of Plaintiffs' Response to Defendants' Motion for Summary Judgment, Doc. 75-1.

624. Bradley M. Lewis's Responses to Defendants' First Request for Admissions, December 27, 2023.

625. Anna C. Lewis's Responses to Defendants' First Request for Admissions, 12-27-23

626. Helen Stricklen's Responses to Defendants' First Request for Admissions, 12-27-23

627. Ralph Stricklen's Responses to Defendants' First Request for Admissions, 12-27-23

628. Responses by the Estate to Defendants' First Request for Admissions, 12-27-23

629. Video clip, Gilbert Caudillo deposition, pp. 72:4 to 73:22, "hands, see a gun, fear for my life" (transcript is Exhibit 333)

630. Video excerpt from Gilbert Caudillo video deposition, pp. 78:10 to 82:7 in the transcript, demonstrating how the key fob was positioned and looked like a gun.

631. Exemplar Ballistic Shield

632. Defendants reserve the right to use any exhibit listed by Plaintiffs to which Defendants do not object.

**G. DEPOSITIONS TO BE OFFERED**

Plaintiffs: Plaintiffs intend to call witnesses in person or by real time video if they are out of reach or unable to come to the courthouse. To the extent that trial witnesses are determined to be unavailable, Plaintiffs intend to take a video trial deposition of that witness.

Defendants: Defendants intend to call witnesses in person or by real time video if they are out of reach or unable to come to the courthouse. To the extent that trial witnesses

are determined to be unavailable, Defendants intend to take a video trial deposition of that witness.

The following deposition excerpts were previously listed as Trial Exhibits, and are reproduced in this section.

Exhibit 330: Deposition of Pima County Sheriff's Department Lt. Michael Moseley, excerpted, regarding audio recording of radio transmissions, pp 150 – 161.

Exhibit 331: Excerpt Moseley deposition transcript, pp 121 – 122, "Boom, gone".

Exhibit 332: Video excerpt of Moseley deposition, Moseley demonstrates, "Boom, gone." (pp. 121 – 122 in transcript.)

Exhibit 333: Deposition of Pima County Sheriff's Department Sgt. Gilberto Caudillo, excerpted, with corrections, p. 72:4 to 73:22, "hands, see a gun, fear for my life".

Exhibit 334: Deposition of Pima County Sheriff's Department Sgt. Gilberto Caudillo, excerpted, with corrections, p. 152:4 to 154:5, "what makes black mass deadly".

Exhibit 335: Deposition of Helen Stricklen, excerpted, and Deposition Exhibit 7, excerpted, depo and statement transcript regarding hearing command before shooting.

Exhibit 336: Deposition of Ralph Stricklen, excerpted, and Deposition Exhibit 7, excerpted, depo and statement transcript regarding hearing command before shooting.

Exhibit 607: Video deposition clip for Caudillo depo excerpt, pp. 152:4 through 154:5.

Exhibit 629: Video clip, Gilbert Caudillo deposition, pp. 72:4 to 73:22, "hands, see a gun, fear for my life" (transcript is Exhibit 333).

Exhibit 630: Video excerpt from Gilbert Caudillo video deposition, pp. 78:10 to 82:7 in the transcript, demonstrating how the key fob was positioned and looked like a gun.

**H MOTIONS *IN LIMINE* AND *DAUBERT* MOTIONS**

Motions in limine and Daubert motions shall be filed separately in accordance with the instructions contained in the Order Setting Pretrial Conference.

**I. LIST OF ANY PENDING MOTIONS**

There are no pending motions.

**J. ESTIMATED LENGTH OF TRIAL**

____4__hours for opening statements

___30___hours for Plaintiffs' case

__30___hours for Defendants' case

___4___hours for rebuttal

___4___hours for closing arguments

**K. FOR A JURY TRIAL:**

A stipulated description of the case, proposed voir dire questions, proposed jury instructions, and proposed forms of verdict shall be filed in accordance with the instructions contained in the Order Setting Pretrial Conference.

**L. CERTIFICATION**

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

1. All discovery has been completed.

2. The identity of each witness has been disclosed to opposing counsel.

3. Each exhibit listed herein: (a) is in existence; (b) is numbered, and (c) has been disclosed and shown to opposing counsel.

4. The parties have made all of the disclosures required by the Federal Rules of Civil Procedure (unless otherwise previously ordered to the contrary).

5. The parties acknowledge that once this Joint Proposed Final Pretrial Order has been signed and lodged by the parties, no amendments to this Order can be made without leave of Court.

**M. ADOPTION**

The Court may adopt this Proposed Joint final Pretrial Order at the Pretrial Conference or subsequent hearing.

///

DATED this ~~5th~~ ______day of ~~June,~~ August, 2026.

APPROVED AS TO FORM AND CONTENT

______________________________
Eduardo H. Coronado
Attorney for Plaintiffs

______________________________
Daryl Audilett
Attorney for Defendants

______________________________
Andrew J. Petersen
Attorney for Defendants