*AUDILETT LAW PC*
P O Box 12308
Tucson, AZ 85732-2308
(520) 349-5468
Email: daa@audilettlaw.com
Daryl A. Audilett, Esq.
State Bar No. 009007; PCC No. 2036
Attorney for Defendants Nanos, Caudillo, and Pima County

HUMPHREY & PETERSEN, P.C.
6063 E. Grant Road
Tucson AZ 85712
(520) 795-1900
Email: apetersen@humphreyandpetersen.com
Andrew J. Petersen, Esq.
State Bar No. 016699
Co-counsel for Defendants Nanos, Caudillo, and Pima County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anna Christine Lewis, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>Chris Nanos, et al.,<br><br>Defendants. | NO. CV 21-00557-TUC-RM<br><br>DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE AN AMENDED JOINT PROPOSED FINAL PRETRIAL ORDER (DOC. 211)<br><br>(Oral Argument Requested)<br><br>(The Honorable Rosemary Márquez) |

The additional contested legal issues sought to be amended are the subject of jury instructions and not arguments over a party's submissions in a proposed pretrial order. We are not yet at the jury instruction phase. The final pretrial order identifies the claims and defenses that will be presented at trial. *Hoffman v. Tonnemacher*, 593 F.3d 908, 913 (9th Cir.

2010); *Ruiz v. Magellan Fin. & Ins. Servs.*, 2026 U.S. Dist. LEXIS 109009 (D.Ariz. May 18, 2026). Modifying the final pretrial order after it is entered is constrained. But we are not there yet. The parties submitted a proposed order, and the defendants are entitled to request changes to this to conform with what they are entitled to present to the jury.

Defense counsel does not see in the Federal Rules of Civil Procedure a rule that specifically addresses amending a Joint Proposed Final Pretrial Order that has not yet been adopted by the Court at a Pretrial Conference. Rule 16(b)(4) appears to address seeking relief from or amending a time-sensitive scheduling order. Rule 16(e) addresses the Final Pretrial Order adopted after a final pretrial conference which may be modified "only to prevent manifest injustice." If in fact Defendants' current motion falls under the rubric of F.R.Civ.P. 16(b)(4), requiring good cause and the judge's consent, Defendants have good cause and seek the judge's consent.

Although the Court has not yet adopted the previously filed Joint Proposed Final Pretrial Order ("JPFPTO," Doc. 102), and the Rule 16(e) heightened "manifest injustice" requirement to amend is not at issue here, there is Ninth Circuit caselaw addressing the amending of Pretrial Orders that is instructive. "(A) pre-trial order 'is not an inexorable decree and may, under proper circumstances, be modified.'" *Jeffries v. United States*, 477 F.2d 52, 55 (9th Cir. 1973); see *Globe Indemnity Company v. Capital Insurance & Surety Co.*, 352 F.2d 236, 239 (9th Cir. 1965). In *Angle v. Sky Chef, Inc.*, 535 F.2d 492, 495 (9th Cir. 1976) the court cited a 5th Circuit case for the following:

> In the exercise of sound judicial administration and the interest of justice, "an amendment of a pre-trial order should be permitted where no substantial injury

> will be occasioned to the opposing party, the refusal to allow the amendment might result in injustice to the movant and the inconvenience to the court is slight. *Sherman v. United States*, 462 F.2d 577, 579 (5th Cir. 1972).

There is no prejudice to Plaintiffs. The refusal to allow the amendment will result in injustice to the Defendants. There is no inconvenience to the court. The amendment will neither delay the trial nor lengthen it.

Defendants diligently sought to file a stipulated motion to amend the JPFPTO, and to obtain the judge's consent. Plaintiffs' counsel initially agreed to that, and participated in drafting the amended JPFPTO by sending his Plaintiffs' contentions to the additional contested legal issues, but subsequently reneged on that agreement to stipulate and so Defendants filed the Motion for Leave to Amend. There is good cause to amend the JPFPTO. The amendment adds substantive state law applicable to the state law claims of wrongful death and property damage, which the Federal Court is obligated to apply to the state law claims. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

Plaintiffs mischaracterize as "new fault-allocation defenses" the State of Arizona substantive law on Comparative Fault, on ARS § 12-712, and on Assumption of Risk which are applicable to Plaintiffs' state law claims for wrongful death and property damage. These are not new theories. They were raised in the Defendants' Answer (Doc. 16) and Amended Answer to Plaintiffs' Second Amended Complaint. (Doc. 36.) They have been in the case from the beginning and present during the entire discovery period.

The Arizona comparative fault statutory scheme mandates its application to state law claims for personal injury, including wrongful death. A claim for personal injury or wrongful

death automatically, inherently, and implicitly triggers Arizona's comparative fault statutory scheme as a matter of law. Arizona Revised Statute § 12-2506 mandates apportionment of degrees of fault related to personal injury, wrongful death, and property damage:

> Section B. "In assessing percentages of fault the trier of fact **shall** consider the fault of all persons who contributed to the alleged injury, death or damage to property…". (Emphasis added.)

> Section C: "The relative degree of fault of the claimant, and the relative degree of fault of all defendants and nonparties, **shall** be determined and apportioned as a whole at one time by the trier of fact." (Emphasis added.)

> Section F(2): "Fault means an actionable breach of legal duty, act or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all of its degrees, contributory negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability and misuse, modification or abuse of a product."

Plaintiffs misread ARS § 12-2505(A) to say that since the shooting was intentional, the officer cannot have a jury assess fault against the decedent. That is not what the statute says. Section A says:

> The defense of contributory negligence or of assumption of risk is in all cases a question of fact and shall at all times be left to the jury. If the jury applies either defense, the **claimant's** action is not barred, but the full damages shall be reduced in proportion to the relative degree of the **claimant's** fault which is a proximate cause of the injury or death, if any. There is no right to comparative negligence in favor of any **claimant** who has intentionally, willfully or wantonly caused or contributed to the injury or wrongful death." (Emphasis added.)

The "claimants" are the plaintiffs (or plaintiffs' decedent), not the defendants. There is no right to comparative fault in favor of any claimant (plaintiff) who has intentionally, willfully or wantonly caused or contributed to their own injury or wrongful death. The claimant (plaintiff) who purposely injures themself, cannot assess fault against others.

Comparative fault does apply in a case with a purported intentional tortfeasor. *Natseway v. City of Tempe*, 184 Ariz. 374 (App. 1995). *Hutcherson v. City of Phoenix*, 192 Ariz. 51 (1998).

Notably, ARS § 12-2505 (B) states: "In this section, 'claimant's fault' includes the fault imputed or attributed to a claimant by operation of law, if any." The fault of decedent Lewis is imputed to the plaintiffs in this case.

Defense counsel acted diligently in seeking to amend the JPFPTO. The parties filed the JPFPTO with the Court on June 5, 2026. In preparing for a June 30, 2026 settlement conference, defense counsel became aware that there were certain substantive state law issues that were not expressly stated in the legal issues portion of the JPFPTO. Within three days after the settlement conference, on July 3, defense counsel contacted Mr. Coronado via email seeking a stipulation to amend the JPFPTO. Attached to that email was a list of the five state law issues; Comparative Fault, ARS § 12-712, Assumption of Risk, ARS § 14-3110, Necessity and Duress. The attached list also included eight additional exhibits. Mr. Coronado agreed to stipulate to amend the JPFPTO and on July 14 provided his "Plaintiffs contend" portions addressing each of those legal issues. Those "Plaintiffs contend" portions were incorporated into the proposed draft of the amended JPFPTO. For the Court's convenience, attached as Exhibit A are the proposed amended JPFPTO pages 39-44 wherein Mr. Coronado's "Plaintiffs contend" sections appear.

The first two weeks of July involved the preparation of extensive motions in limine, which were due on July 16. The second two weeks in July involved the preparation of

responses to opposing counsel's motions in limine, which were due on July 30. Plaintiffs requested and received an extension to August 13, 2026 to file their responses. In preparing and responding to motions in limine, defense counsel realized certain key exhibits had not been listed in the JPFPTO (Doc. 102).

During the work on motions in limine, defense counsel Audilett contacted Mr. Coronado 14 times during July and early August regarding amending the JPFPTO. *(See* Exhibit B, a chronology and copies of emails and texts, and noting a phone conference during that period of time on the subject of amending the proposed Order.) On August 11, defense counsel's office emailed to Mr. Coronado the final changes to the Stipulated Motion to Amend the JPFPTO. On August 12, defense counsel texted to Mr. Coronado advising we emailed him the final changes, to please take a look at it, and let us know so we can get it filed well before the September 15 Pretrial Conference. Mr. Coronado responded by text "Daryl, I did not see it. I'll look for it." On August 18, defense counsel again texted to Mr. Coronado reminding him that we had sent him the final draft on August 11, that he said he would look for it, and that we are forwarding it to him again, to please let us know today whether we can file, well before the Pretrial Conference on September 15. Mr. Coronado did not respond. On August 20, defense counsel advised Mr. Coronado via text that since he had chosen to ignore our two most recent attempts to finalize the Motion, we would go ahead and file it. It was filed the following day, on August 21, 2026.

The bottom line is that after the June 30 settlement conference and further settlement discussions in the following days failed, defense counsel diligently sought to work with Mr.

Coronado to file a Stipulated Motion to Amend the JPFPTO and to file it well before the Pretrial Conference. Up until July 14, Mr. Coronado was fully on board with doing that and even provided his "Plaintiffs contend" sections. Thereafter both counsel were very busy with motions in limine. Nevertheless, defense counsel continued corresponding with Mr. Coronado regarding amending the JPFPTO. On August 12, when defense counsel was able to email Mr. Coronado a final draft to review and approve, he said he did not see it, and he would look for it, leading defense counsel to believe he was still on board with finalizing and filing a stipulated motion to amend the JPFPTO. Plaintiffs had completed filing their responses to Defendants' motions in limine on August 13. Mr. Coronado never responded after receiving the email with the final draft on August 12. He never said that he had changed his mind and was no longer in agreement with stipulating to amend the JPFPTO or not in agreement with anything contained in the draft. After waiting eight days to hear from him about the final draft, defense counsel filed the motion to amend the JPFPTO on August 21.

There is good cause to insert substantive state law regarding comparative fault, assumption of risk, ARS § 12-712, ARS § 14-3110, necessity and duress. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) mandates application of these laws. These substantive state laws apply only to the state law claims of wrongful death and property damage, and not to the Estate's 4th Amendment claim for excessive force. Defense counsel acted diligently to provide the Court a stipulated motion to amend, and when that failed, filed a motion to amend well before the September 15 Pretrial Conference.

Plaintiffs have complained that Defendants delayed in filing for leave to amend the

Joint Proposed Final Pretrial Order. Exhibit B sets forth defense counsel's attempts to correspond with Mr. Coronado and to get the motion for leave to amend filed. Plaintiffs also complain that Defendants opposed their requests for extensions for additional time to complete their portions of the JPFPTO. One has only to review Defendants' responses (Doc. 98; Doc. 101) to those requests for extensions to see the difficulty defense counsel had to get Plaintiffs' counsel to participate in the back and forth necessary to complete the JPFPTO. Plaintiffs' first request was granted for a two-week extension. The second request for an additional two weeks was not ruled on by the Court until well after that additional two weeks expired. Plaintiffs received four weeks of additional time. Plaintiffs filed a third request for a short extension to file two additional motions in limine beyond the deadline and that was granted as well. Plaintiffs requested an extension to file their responses to Defendants' motions in limine, and that was also granted, the Court extending the response deadline for all parties.

To the extent that Mr. Coronado claims he is prejudiced because he made no objections to the additional amended exhibits, defense counsel stipulates that Mr. Coronado can raise any trial objection he wishes, preferably before trial and with time for the Court to rule on those objections before trial. Defendants' counsel doesn't understand why there would be an objection to some of the exhibits. For example, in a phone conference both counsel agreed it was odd that neither side had thought to list the evidence key fob and lanyard as an exhibit in the original pretrial order. It's an important piece of evidence that both sides should want, in order to have a fair trial.

In their Response, Plaintiffs make new attempts to reopen extensive discovery. They attach as exhibits four letters to defense counsel as well as a public records request to Northwest Fire District in Tucson. Discovery in this case was closed on January 5, 2024, over two years and eight months ago. (Doc. 49.) This effort to reopen discovery has nothing to do with the current issue involving amending the JPFPTO. It appears that Plaintiffs are trying to use the current issue as a springboard to reopen extensive, voluminous discovery and to further delay the trial in this case. If Plaintiffs want to reopen discovery, they should file and brief a proper motion to request that, and Defendants should have an opportunity to file and brief a proper response. However, in an abundance of caution, and to not be thought to have waived argument on those issues, Defendants briefly submit the following.

Plaintiffs' Exhibit 1 is a letter relating to the radio and dispatch records (written and audio) produced by Defendants. Plaintiffs now request seven different groups of items that appear to be related to meta data information, native CAD export data, native Excel data, system audits, native dispatch audio, system identification, authentication data, certified transcripts, computer meta data and additional certified and corrected documents from the investigation five years ago. A list of the items Defendants produced with regard to the radio logs and designators, transcripts and recordings, and the 911 call recordings, is attached here in Exhibit C, Defendants' Response to Plaintiffs' Second Request for Production dated April 28, 2023, at pp. 2-3. Two real-time radio recordings were supplemented in Defendants' Seventh and Eleventh Disclosure Statements. If Plaintiffs were dissatisfied, they could have raised that before discovery closed on January 5, 2024.

Plaintiffs' letter Exhibit 2 relates to Sheriff's Department policies. In their Third Supplemental Disclosure Statement on July 12, 2023, Defendants produced Major Policies Chapter 3, Use of Force; and Chapter 6, Review Boards, Disciplinary Actions and Grievance Procedures, which contains the Shooting Review Board policy. Plaintiffs had requested procedures related to the use of force, including deadly force, and any modifications to the policies related to the use of deadly force up to ten years prior to this incident. Defendants objected to the ten-years request and produced the current policy and the policy in effect at the time of the incident on 1-20-21. (See Exhibit C, Defendants' Response to Plaintiffs' Second Request for Production dated April 28, 2023, p. 2.) Plaintiffs now demand a certified copy of the complete department policy manual, all chapters, from January 20, 2021, and what is currently in effect. In their letter Plaintiffs also state they have reconstructed the policies themselves and want to compare them to what the Defendants will produce. There are no *Monell* claims remaining. This is make-work and gamesmanship.

Plaintiffs' letter Exhibit 3 relates to the December 4, 2020 event wherein Bradley Alexander Lewis wielded a black handgun and threatened two young men, telling them "I've dropped ten bodies, you're just a number to me. I'll do it again." Defendants provided all the written reports, recordings, a video, transcripts of interviews of the victims and an off-duty Tucson Police Department officer witness, and of Ralph Stricklen, the decedent's grandfather, when detectives went looking for the decedent. Plaintiffs now demand all sorts of electronic data: related to that event, related to the Probable Cause Alert, related to periodic checks looking for Lewis, related to all department records associated with Lewis. They

demand a 30(b)(6) deposition of the County's Spillman records custodian or system administrator. Discovery ended January 5, 2024.

Plaintiffs' letter Exhibit 4 relates to a monumental new request for all sorts of electronic data associated with the neighborhood surveillance camera videos that recorded some of the events associated with Lewis in the general location of the shooting. Substantial information was produced in disclosure and in response to request for production about these videos. If Plaintiffs were not satisfied with the information, they should have pursued more information, maybe from the neighbors, prior to the close of discovery on January 5, 2024. A list of and detailed discussion of what Defendants produced with regard to the videos is set forth in Defendants' Response to Plaintiffs' Third Request for Production. (*See* Exhibit D, Defendants' Response to Plaintiffs' Third Request for Production dated October 19, 2023, pp. 2 – 11.) The Plaintiffs cite a report by "video expert" Conor McCourt, which states that the videos are from different devices, have different resolutions, at different settings, that they should not have been copied, up or downloaded, texted, emailed or compressed for any reason. The fact that they were different would seem to make sense since they were videos recorded by the neighbors' camera systems, and under the neighbors' control. The videos contain images that are easily recognizable given the environmental and lighting conditions under which they were recorded. (See Exhibit D, pp. 2 – 11 for further discussion.)

Plaintiffs' letter Exhibit 5 is a public records request to Northwest Fire District for records related to their response, for statistical data on response times, standards regarding operating and response procedures, documentation, accreditation, etc. The NW Fire District

records were previously obtained by Plaintiffs' private investigator in February of 2021 via public records request and disclosed in Plaintiffs' Initial Disclosure Statement in February of 2023. Defense counsel subpoenaed the NW Fire District records in November of 2023 and produced them in their 12-18-23 10th Supplemental Disclosure Statement. Defendants took the depositions of the primary responders, two paramedics. Much of the information requested is already found in the disclosed records, and was or could have been discussed at the depositions. Statistical data and performance standards, could have been requested during the discovery period which ended January 5, 2024. Northwest Fire District is not a defendant and Plaintiffs have not shown the relevance.

If Plaintiffs are trying to imply that the various radio and 911 records, neighbor videos, policies, and law enforcement records have been manufactured or altered, they are mistaken and there is no evidence of that.

CONCLUSION

Defendants worked diligently to get the original JPFPTO filed, and now work diligently in getting an amended JPFPTO filed. Having realized after the June 30 settlement conference that the five contested legal issues and the additional Defendants' exhibits had not been included in the original Order, Defendants are seeking to remedy that, with good cause. Defendants' Motion for Leave to Amend should be granted.

///

DATED this 4th of September, 2026.

*AUDILETT LAW PC*

/s/ Daryl Audilett

______________________________

Daryl A. Audilett
Attorney for Defendants Nanos, Caudillo, and Pima County

HUMPHREY & PETERSEN, P.C.

/s/ Andrew Petersen

______________________________

Andrew J. Petersen
Attorney for Defendants Nanos, Caudillo and Pima County

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Eduardo H. Coronado, Esq.
Coronado Law Firm, P.L.L.C.
4700 W. White Mountain Boulevard, Suite A
Lakeside, AZ 85929
Attorney for Plaintiffs

Andrew J. Petersen, Esq.
Humphrey & Petersen, P.C.
6063 E. Grant Road
Tucson, AZ 85712
Co-counsel for Defendants

By /s/ Karen Audilett